## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1644 (RMC)** |
| | ) | |
| **FEDERAL COMMUNICATIONS** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Federal Communications Commission, by undersigned counsel, respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting defendant summary judgment on the grounds that no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law. In support of this Motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities, Statement of Material Facts Not in Genuine Dispute, Declaration of Alan I. Feldman, Acting Chief, Industry Analysis and Technology Division, Wireline Competition Bureau, Federal Communications Commission and Exhibits. A proposed order is also attached.

Respectfully submitted,


\_\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Assistant United States Attorney


\_\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


\_\_\_\_/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 514-7224


OF COUNSEL:
Michael Krasnow
Attorney
Office of General Counsel
Federal Communications Commission

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1644 (RMC)** |
| | ) | |
| **FEDERAL COMMUNICATIONS** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION  FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff filed this civil action pursuant to "the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to compel the production of certain agency records related to local telephone competition and broadband reporting." Complaint, ¶ 1. Plaintiff had previously filed an administrative FOIA request with defendant Federal Communications Commission ("FCC") for copies of the following records:

> • A database or other similar electronic copy of all records collected with FCC form 477 ("Local Telephone Competition and Broadband Reporting"). The form is published on the agency's website at http://www.fcc.gov/broadband/data.html.
> • All documentation associated with the database.

Complaint, ¶ 8.

Plaintiff seeks release of approximately 35,000 records that providers of telecommunications and related services submitted to the FCC during the past approximately seven years. The FCC previously denied plaintiff's FOIA request for these records pursuant to 5 U.S.C. § 552(b)(4) because the Form 477 information in its

company-specific form contains commercially sensitive information. The release of this Form 477 information would cause the service providers substantial competitive harm.

The Declaration of Alan I. Feldman, Acting Chief, Industry Analysis and Technology Division, Wireline Competition Bureau, Federal Communications Commission ("Feldman Decl.") sets forth the FCC's processing of Plaintiff's administrative FOIA request and the basis for Defendant's invocation of Exemption 4 of the FOIA for its non-disclosure of the Form 477 information.

The FCC moves for summary judgment because the records that plaintiff seeks are protected from disclosure under FOIA Exemption 4, there is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law.

## II.    STATEMENT OF MATERIAL FACTS

The Statement of Material Facts Not in Genuine Dispute is incorporated herein.

## III.    PLAINTIFF'S FOIA REQUEST

By letter dated August 24, 2006, plaintiff submitted a FOIA request to the FCC seeking (1) "[a] database or other similar electronic copy of all records collected with FCC Form 477," and (2) "[a]ll documentation associated with that database." See letter from Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of Managing Director, FCC, Attachment A to Feldman Decl.  Plaintiff's FOIA request was addressed to the incorrect FCC official. Thus, Plaintiff's FOIA request was not received in the FCC's FOIA Control office and forwarded to WCB until August 29, 2006.  Under the statute, the FCC's response was

2

due 20 working days from that date, or by September 27, 2006.[1]  See 5 U.S.C. §

552(a)(6)(A).

On September 26, 2006, the FCC's WCB issued a decision denying plaintiff's

FOIA request under Exemption 4 because "the requested records contain commercially

sensitive, competitive information and…release would cause harm to the entities that

submitted the information."  See letter from Kirk S. Burgee, Associate Bureau Chief,

WCB, to Drew Clark, Senior Fellow and Project Manager, The Center For Public

Integrity, Attachment B to Feldman Decl.  Specifically, WCB concluded that:

> the requested database and associated documentation constitute
> commercially sensitive, competitive information.  Filers customarily
> guard this data from their competitors, and release would harm their
> competitive interests by revealing to competitors their market strategies,
> their customer identities and counts and where they have deployed their
> services.  For example, competitors could use this data to decide where to
> target their service offerings, facilities construction, and marketing, all to
> the detriment of Form 477 filers.  For these reasons, we conclude that the
> requested data is protected against disclosure pursuant to FOIA exemption
> 4.

Id. (footnote in original omitted).  WCB stated further that:

> Once the Commission determines that records fall within exemption 4, as
> we find here, the requester bears the burden of making a "persuasive
> showing" that its public interest argument outweighs the arguments for

---

[1] The FCC's rules require FOIA requests to be addressed to its Managing Director.  See 47 C.F.R. §
0.461(d)(1); FCC's website at http://www.fcc.gov/foia/; see also Church of Scientology of Cal. v. IRS, 792
F.2d 146, 150 (D.C. Cir. 1986) (FOIA requests must be filed in accordance with the agency's rules), citing 5
U.S.C. § 552(a)(3)(B).  When a FOIA request is received, it is assigned to the FCC's FOIA Control Office,
where it is date-stamped and forwarded to the FCC bureau or office that is the custodian of the records
requested.  See 47 C.F.R. § 0.461(e).  The bureau or office has 20 working days from that date to respond.
See 47 C.F.R. § 0.461(g).  Plaintiff's FOIA request was addressed to Shoko Hair, FOIA Public Liaison,
rather than the FCC's Managing Director.  Even though plaintiff's FOIA request did not comply with the
FCC's rules, it was forwarded to the FCC's FOIA Control Office, where it was received, date-stamped and
assigned to WCB on August 29, 2006.

> withholding the records.[2]  In balancing the public interest argument
> against the interests underlying protecting the information, the
> Commission generally has exercised its discretion to release publicly
> information falling within FOIA Exemption 4 only in very limited
> circumstances, such as . . . where the Commission has *identified a
> compelling public interest in disclosure*."[3]  The Center makes no public
> interest argument in favor of disclosing the requested documents, and we
> find no such argument in our precedent; thus, we find that there exists no
> compelling public interest sufficient to override the interests underlying
> exemption 4.

Id. (footnote in original).  Finally, WCB explained that, consistent with the FCC's FOIA

rules, plaintiff could file an administrative appeal with the FCC within 30 days.  Id.,

citing 47 C.F.R. § 0.461(j) (requester may seek review of initial FOIA decision by filing

an application for review with the Office of General Counsel within 30 days of the date

of the decision).

On October 19, 2006, plaintiff filed an administrative appeal with the FCC of

WCB's September 26, 2006 decision. That appeal remains pending.  See letter from Peter

Newbatt Smith, Research Editor and Counsel, Center for Public Integrity, to General

Counsel, FCC, dated October 19, 2006, Attachment C to Feldman Decl.  More than 20

working days have elapsed since October 19, 2006.

This Court now has subject-matter jurisdiction because plaintiff has

constructively exhausted its administrative remedies.  See 5 U.S.C. § 552(a)(6)(A)

(setting forth deadlines for agency responses to FOIA requests and appeals); Oglesby,

---

[2] See *In re Examination of Current Policy Concerning the Treatment of Confidential Information Submitted
to the Commission*, 13 FCC Rcd 24816 at paras. 19-20 (1998).

[3] Id. at para. 8 (emphasis added) ( T]he Commission has been sensitive to ensuring that the fulfillment of its
regulatory responsibilities does not result in the unnecessary disclosure of information that might put its
regulatees at a competitive disadvantage.).

920 F.2d at 62 ("[i]f the agency has not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit").

On December 12, 2006, WCB released a Public Notice to service providers that submitted Forms 477 to the FCC notifying them that plaintiff seeks public release of their company-specific Form 477 information in this litigation.  <u>See</u> Attachment D to Feldman Decl.  The Public Notice was the first notification that service providers received regarding this matter.  Thus, the service providers had no opportunity to submit statements to the FCC regarding competitive harm until after plaintiff initiated this lawsuit.

WCB previously received in other FCC proceedings numerous submissions from service providers regarding the competitive harm that they would suffer if their company-specific Form 477 information was released.  <u>See</u> Feldman Decl. at ¶¶ 24-25.

IV.    **<u>BACKGROUND</u>**

The Telecommunications Act of 1996 ("1996 Act") directs the FCC to take action to open all telecommunications markets to competition, and seeks to promote innovation and investment in those markets by all participants, including new entrants.  <u>See</u> <u>Local Competition and Broadband Reporting</u>, CC Docket No. 99-301, Report and Order, 15 FCC Rcd 7717 (2000) ("<u>2000 Data Gathering Order</u>"), at ¶ 2 (2000 WL 426145), citing 47 U.S.C. §§ 151 <u>et</u> <u>seq.</u>, Joint Statement of Managers, S. Conf. Rep. No. 104-230, 104th Cong., 2d Sess., at 1 (1996).  In March 2000, to "implement the pro-competitive, deregulatory provisions of the…1996 Act," the FCC adopted rules and a standardized form -- FCC Form 477 -- to collect from service providers information regarding two

5

critical areas of the communications industry: development of local telephone service competition and the deployment of broadband services.[4]  See 2000 Data Gathering Order at ¶¶ 1-2.  The FCC concluded that collecting the Form 477 information would significantly improve its ability to (1) "develop, evaluate, and revise policy in these rapidly changing areas and provide valuable benchmarks for Congress, the Commission, other policy makers, and consumers;" (2) evaluate the Commission's and states' efforts "to reduce economic and operational barriers to entry" into previously monopolized local telecommunications markets; (3) "assess the availability of broadband services such as high-speed Internet access" while encouraging "the deployment of advanced telecommunications capability as [directed by] section 706 of the 1996 Act;" and (4) achieve "the complementary goal reflected in the 1996 Act of reducing government regulation whenever possible."[5]  See 2000 Data Gathering Order at ¶¶ 1-5.  The FCC requires service providers to submit Forms 477 twice per year.[6]  See Feldman Decl. at ¶ 8.  The Form 477 collects information about broadband connections to end user

---

[4] Service providers include wireline telephone companies, cable system operators, fixed wireless service providers, terrestrial and satellite wireless service providers, terrestrial and satellite mobile wireless service providers, incumbent local exchange carriers, competitive local exchange carriers, and other entities.  See FCC Form 477, Instructions for September 1, 2006 Filing (of data as of 6/30/06), Attachment E to Feldman Decl., at 1.

[5] In November 2004, the FCC adopted improvements to the Form 477 to ensure that the FCC could continue to evaluate effectively these matters and minimize the administrative burdens imposed on filers.  See Local Competition and Broadband Reporting, WC Docket No. 04-141, Report and Order, 19 FCC Rcd 22340 ("2004 Data Gathering Order"), at ¶¶ 1-2 (2004 WL 2601193).

[6] If a service provider fails to timely file a Form 477, it may be subject to penalties under sections 502 and 503(b) of the 1996 Act.  See FCC Form 477, Instructions for September 1, 2006 Filing (of data as of 6/30/06), Attachment E to Feldman Decl., at 17.

locations, and about wireline and wireless local telephone services, for individual states.[7]
Id. Providers must complete a separate Form 477 for each state in which they conduct
business. Id. The filings contain detailed and proprietary company-specific data
regarding providers' business holdings, practices, strategies and operations in individual
state markets, including information about their service offerings and locations and
customer types and counts – all of which would provide valuable insights to competitors,
and is thus customarily not disclosed to outside parties.[8] Id. at ¶ 12. Between December
31, 1999 and June 30, 2006, there were fourteen filing rounds, during which the FCC
received approximately 35,000 Form 477 submissions. Id. at ¶ 9. In the June 2006 filing
round alone, approximately 1,500 service providers submitted approximately 5,000
Forms 477. See Feldman Decl. at ¶ 20.

The FCC's Wireline Competition Bureau ("WCB") maintains an electronic
database containing the Form 477 information in company-specific form. Id. at ¶ 34.
For each filing round, the database consists of two major parts: "line count" data and
"ZIP Code" data. Id. Line count data consists essentially of the data that filers report in
Parts I through IV of the Form 477, and it is copied from the form and stored line-by-
line. Id. For the line count data, there is one record per Form 477 filing for each round,

---

[7] "Broadband connections" are "[l]ines (or wireless channels) that terminate at an end user location and
enable the end user to receive information from and/or send information to the Internet at information
transfer rates exceeding 200 kilobits per second (kbps) in at least one direction. "End users" are
"[r]esidential, business, institutional and government entities who use services for their own purposes and
who do not resell such services to other entities. Id. at 16.

[8] Even large companies with multi-state operations typically do not include data in their shareholder or SEC
reports or other public documents that is as granular as the state-level information contained on the Form
477. For example, the Form 477 requires local telephone companies to report information about their
success in acquiring long-distance service customers in individual states, which is information that such
companies typically do not make public. See Feldman Decl. at ¶ 12.

thus a total of 35,000 records. Id. ZIP Code data consists essentially of the data that filers report in Part V of the Form 477. Id. These data are divided between ZIP codes in which filers reported serving at least one local telephone service subscriber and ZIP codes in which filers reported serving at least one broadband subscriber. Id. With respect to local telephone service, there is one record for each ZIP code that each filer reported. Id. With respect to broadband, there is one record for each ZIP code that each filer reported in filing rounds one through eleven (December 1999 through December 2004). Since June 2005, for each of the nine technologies (e.g., cable modem or DSL) as reported in Part V of the Form 477, there is one record for each ZIP Code that each filer reported. Id. Because there are numerous ZIP Codes in each state, there are approximately 4.8 million ZIP Code records in the database. Id.

Following each semi-annual data collection, the FCC publishes two reports discussing summary statistics derived from the Form 477 data: the High-Speed Services for Internet Access Report (reporting "a snapshot of subscribership" for "[h]igh-speed lines connecting homes and businesses to the Internet"), and the Local Telephone Competition Report (reporting the "latest data on local telephone service competition in the United States").[9] See Feldman Decl. at ¶ 10. Due to the "competitive harm that release of the gathered [Form 477] data could cause and…the ability of competitors to take the data submitted and tailor market strategies to quash nascent competition, protect areas that are being subjected to increased competition, or deploy facilities to defend

---

[9] See High-Speed Services for Internet Access: Status as of December 31, 2005 (released July 2006), at 1; Local Telephone Competition: Status as of December 31, 2005 (released July 2006), at 1. These reports are publicly available on the FCC's website at: http://www.fcc.gov/wcb/iatd/stats.html.

strongholds," the FCC includes only aggregated (non-company specific) summary statistical data in these reports. See 2000 Data Gathering Order, 15 FCC Rcd 7717 at ¶ 89; 2004 Data Gathering Order 19 FCC Rcd 22340 at ¶ 24 & n.56. Specifically, the line count data is aggregated by carrier class (e.g., incumbent local telephone service provider vs. competitive local telephone service provider) and technology (e.g., cable modem vs. DSL), and to the state or national level. See Feldman Decl. at ¶ 11. The ZIP Code data is also aggregated to the state or national level (e.g., percentage of ZIP Codes with competitive local telephone service providers; percentage of ZIP Codes with high-speed cable modem connections in service). Id. Additionally, the information about specific ZIP Codes that the FCC publishes is summarized as the number (as opposed to the names) of the providers that serve any subscribers in a particular 5-digit geographical ZIP Code, and the ZIP Codes with one to three providers are aggregated into a single category. See Feldman Decl. at ¶ 11. In some cases, even an aggregate figure might reveal company-specific data. Id. For example, if there are only a few companies (e.g., mobile wireless broadband service providers) with subscribers in a particular state, the subscribership data of one of those providers could be readily discerned in part because each company knows its own data. In such cases, the FCC does not report the aggregate figure. Id.

### A.    FCC Form 477

The current version of Form 477 is divided into a cover page and five parts. Id. at ¶ 13. On the cover page, filers provide their name and contact information, indicate whether they are filing an original or revised form, and indicate whether they are requesting confidential treatment of their Form 477 information. Id. Specifically, filers

9

may check a box to request "non-disclosure of some or all of the information…because…the information is privileged and confidential and public disclosure of such information would likely cause substantial harm to the competitive position of the filer." Id..

On Part I of the form, filers report the number of broadband connections provided to end user customers broken out by technology and data-transfer rates, as well as the share (e.g., percentage) of connections provided to residential end users, the share of connections provided over filers' own facilities, and the share of connections for which the filer bills the customer directly. Id. at ¶ 15. Also, incumbent local telephone companies and cable system operators report the share of residential end-user premises able to receive the digital subscriber line (xDSL) and cable modem connections that these companies provide in their service areas. See Feldman Decl. at ¶ 15.

Part II of the form collects data regarding wireline and fixed wireless local telephone service. Id. at ¶ 16. Filers report the total number of lines and wireless channels provided to end users, as well as the share provided to residential end users, the share for which the filer is the presubscribed interstate long distance carrier, the share provided via filers' own facilities, and the shares of lines provided through various types of contracting agreements.[10] Id.

---

[10] "Presubscribed interstate long distance carriers" are "[t]he (facilities-based or reseller) carrier to which an interstate long distance call is routed automatically, without the use of any access code by the end user." See FCC Form 477, Instructions for September 1, 2006 Filing (of data as of 6/30/06), Attachment E to Feldman Decl., at 16. "Own facilities" is defined as "[s]pectrum for which the filer (including affiliates) holds a license, manages, or has obtained the right to use via lease or other agreement with a Band Manager." Id.

10

On Part III of the form, filers report the number of mobile telephony subscribers served and the share of those subscribers that the filer bills directly.[11]  Id. at ¶ 17.  Part IV contains space for filers' comments or explanatory notes regarding the data submitted. Id. at ¶ 18.  Part V of the form collects ZIP Code data – filers report, for each of the technologies deployed, each of the ZIP Codes in which they provide at least one end-user broadband connection.  Id. at ¶ 19.  Filers also report each of the ZIP Codes in which they provide wireline or fixed wireless local telephone service to at least one end user. Id.

**B.    Confidentiality of the Form 477 information**

A filer may request that the Commission treat its Form 477 data as confidential and subject to non-disclosure by checking the box on the Form 477 cover page described above.[12]  See 2000 Data Gathering Order at ¶ 90; 2004 Data Gathering Order at ¶ 24, n. 56.  Approximately 74 percent of the service providers submitting Forms 477 to the FCC to date requested confidentiality in this manner.[13]  See Feldman Decl at ¶ 14.  Some

---

[11] "Mobile voice telephony subscribers" are "[a] mobile handset, car-phone, or other revenue-generating, active, voice unit that has a unique phone number and that can place and receive calls from the public switched network."  Id.

[12] The FCC adopted this "streamlined" procedure regarding confidentiality requests for the Form 477 filings.  See 2000 Data Gathering Order at ¶ 90.  Typically, an entity seeking confidentiality under FOIA Exemption 4 for records that it submits to the Commission must include with its initial submission a detailed explanation of the basis for its request for non-disclosure, consistent with the factors set forth in § 0.459 of the Commission's rules.  See 47 C.F.R. § 0.457(d)(2). The Commission deems certain records, listed in § 0.457(d)(1) of its rules, to be confidential under FOIA Exemption 4, and does not require any additional explanation from a person submitting such records.  Id.  The Form 477s, however, are not listed in § 0.457(d)(1).

[13] Through the December 2004 filing round, filers requesting confidentiality were directed to include with their filings a redacted copy of their Form 477 submission, in which commercially sensitive information was replaced by "xxxxxx."  See Feldman Decl at ¶ 38.  For filing rounds after December 2004, the FCC did not require service providers requesting confidential treatment to submit redacted filings.  Id.

filers, rather than checking the box on the Form 477 cover page, separately requested confidentiality of their Form 477 information, either in attachments to their Form 477 submissions or by other means, e.g., by sending an e-mail to the FCC.  Id. Additionally, even if a filer does not request confidential treatment of its Form 477 data, the FCC's rules permit the Commission to conclude "on its own motion" that such information should not be released to the public.[14]  See 47 C.F.R. § 0.457(d)(2).  This is because the release of such data can reveal company-specific information about other filers that did request confidentiality.  A competitor can cross-reference the data from one Form 477 with the aggregate Form 477 data that the FCC publishes in its semi-annual High-Speed Services for Internet Access and Local Telephone Competition reports to discover information regarding the business operations and strategies of an individual filer.  See Feldman Decl at ¶ 33.

When the FCC receives a FOIA request for Form 477 information, filers who requested confidentiality are notified and afforded the opportunity to submit a detailed explanation, consistent with the factors set forth in § 0.459 of the Commission's rules, with regard to the reasons for the non-disclosure of their Form 477 information.  See 2000 Data Gathering Order at ¶ 90; 2004 Data Gathering Order at ¶ 24, n. 56; see also 47 C.F.R. § 0.459.  Where, as here, a FOIA request seeks records containing "trade secrets

---

[14] In response to a prior FOIA request from another requester (ERS Group) seeking company-specific Form 477 information but more limited in scope than plaintiff's FOIA request, the FCC withheld that information pursuant to FOIA Exemption 4 because it concluded that, based upon filers' requests for confidential treatment, the information was commercially sensitive and would cause filers substantial competitive harm. The FCC concluded further with respect to ERS' FOIA request "on its own motion" that, even where a filer did not request confidential treatment of its Form 477 information, the Commission would not disclose that information because data regarding that filer could reveal confidential information regarding the business strategies and operations of other filers that did request confidentiality.  See February 26, 2006 letter from Kirk S. Burgee to Michael J. Doane, ERS Group, Attachment F to Feldman Decl.

or commercial, financial or technical data which would customarily be guarded from competitors," the Commission's rules require a requester to make a "persuasive showing" that such materials should be released.[15]  See 47 C.F.R. § 0.457(d)(1).

## V.   STANDARD OF REVIEW

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

---

[15] In ascertaining whether a requester has made a "persuasive showing," the Commission, on a case-by-case basis, engages in a balancing of the public and private interests favoring disclosure and non-disclosure, considering, inter alia, the type of proceeding, the relevance of the information, and the nature of the information.  See Examination of Current Policy Concerning The Treatment Of Confidential Information Submitted To The Commission, GC Docket No. 96-55, Report and Order, 13 FCC Rcd. 24816 at ¶ 16 (1998 WL 436329).

In <u>Anderson</u> the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

<u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See <u>Cappabianca v. Commissioner</u>, U.S. 3 Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing <u>Miscavige v. IRS</u>, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. <u>Students Against Genocide v. Dept. of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001); <u>Weisberg v. U.S. Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).

14

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe' the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9 Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

15

## VI.    ARGUMENT

### A.    The FCC Properly Withheld the FCC Form 477 Data Pursuant to FOIA Exemption 4.

The FOIA requires federal government agencies to release records to the public upon request, unless one of nine statutory exemptions applies.  See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975); Gilda Industries Inc. v. United States Customs & Border Protection Bureau, 2006 WL 2982150 (D.D.C. 2006).  FOIA Exemption 4, at issue here, protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  This case concerns the second part of the exemption, which protects confidential commercial or financial information, provided that such information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."  See 5 U.S.C. § 552(b)(4); Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  The Form 477 information that the FCC withheld from disclosure here satisfies all of the foregoing criteria.

### 1.    Commercial or Financial Information

The terms "commercial" and "financial" are given their ordinary meanings for purposes of FOIA Exemption 4.  See Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (citing Public Citizen Health Research Group v. FDA, 704 F.2d 1289, 1290 (D.C. Cir. 1983), and Washington Post Co. v. HHS, 690 F.2d 252, 266 (D.C. Cir. 1982)).  Records are deemed to be "commercial" so long as the submitter has a "commercial interest" in them.  See Public Citizen, 704 F.2d at 1290.

16

In this case, service providers clearly have a commercial interest in their Form 477 information. The filings contain detailed and proprietary company-specific data regarding providers' business holdings, practices, strategies, and operations in individual state markets, including information about their service offerings and locations and customer types and counts. <u>See</u> Feldman Decl at ¶ 12. Service providers do not customarily disclose this information to outside parties because it would provide valuable knowledge to providers' competitors, potentially allowing them to, among other things, gain a competitive advantage by tailoring market strategies to quash nascent competition, protecting particular business areas that are being subjected to increased competition, or deploying facilities to certain business areas in order to defend strongholds. <u>Id</u>. at ¶ 11. The Form 477 information thus constitutes information that is of commercial interest to the submitting entities.

### 2. **Obtained from a Person**

Records are considered to be "obtained from a person" for purposes of FOIA Exemption 4 so long as they were submitted by a "partnership, corporation, association, or public or private organization other than an agency." <u>See</u> 5 U.S.C. § 551(2); <u>Allnet Communication Services, Inc. v. FCC</u>, 800 F. Supp. 984, 988 (D.D.C. 1992). The Forms 477 were submitted to the FCC by business entities providing telecommunications and related services to the public. The records were thus obtained from a "person" as that term applies to Exemption 4.

### 3. **Confidential Information**

The information also qualifies as "confidential" under FOIA Exemption 4. The first step of analysis focuses on whether the information was submitted involuntarily,

e.g., whether the submitter was required to provide the information to the Government. See Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 903 (D.C. Cir. 1999). In this case, Commission orders required service providers to submit the Forms 477 to the FCC; therefore the records were submitted "involuntarily" for purposes of FOIA Exemption 4.  See, e.g., 2000 Data Gathering Order, 15 FCC Rcd 7717 at ¶ 91 (stating that the Form 477 data collection is "mandatory"); 2004 Data Gathering Order.

Where, as here, the federal government requires a private party to submit information, the information is deemed confidential for purposes of FOIA Exemption 4 if its disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" Pub. Citizen Health Research Group v. FDA, 185 F.3d at 903 (quoting Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974).   Both factors support the FCC's withholding of the Form 477 data here.

   **a.    Disclosure of the Form 477 data would impair the Government's ability to obtain necessary information in the future**.

Information is confidential for purposes of Exemption 4 if its release would impair an agency's ability to carry out its statutory purposes. See Judicial Watch v. Export-Import Bank, 108 F. Supp. 2d 19, 28 (D.D.C. 2000); Comstock Int'l, Inc. v. Export-Import Bank, 464 F. Supp. 804, 808 (D.D.C. 1979) (holding that because submitters of information were "reluctant to negotiate agreements with the agency absent assurances of confidentiality," disclosure would interfere with agency's ability to fulfill its statutory mandate).  Where, as here, submission of information to a government

18

agency is mandatory, the information is properly withheld pursuant to Exemption 4 if disclosure of that information under FOIA would result in a diminution of the reliability or quality of what is submitted.  See Critical Mass, 975 F.2d at 878 (citing Washington Post Co. v. HHS, 690 F.2d 252 (D.C. Cir. 1982).

Disclosure of the company-specific Form 477 information would impair the ability of the FCC to fulfill its statutory mandate under the Telecommunications Act of 1996.  The FCC created the Form 477 data collection program to comply with the 1996 Act's directive to take action to open all telecommunications markets to competition and to promote innovation and investment in those markets by all participants, including new entrants.  See 2000 Data Gathering Order, at ¶ 2, citing 47 U.S.C. §§ 151 et seq., Joint Statement of Managers, S. Conf. Rep. No. 104-230, 104th Cong., 2d Sess., at 1 (1996). In so doing, the FCC recognized that collecting the Form 477 data would improve its ability to (1) develop, evaluate, and revise policy in the rapidly changing areas of development of local telephone service competition and the deployment of broadband services by providing valuable benchmarks for Congress, the Commission, other policy makers, and consumers; (2) evaluate the Commission's and states' efforts to reduce economic and operational entry barriers into previously monopolized local telecommunications markets; (3) assess the availability of broadband services (such as high-speed Internet access) to better satisfy its duty to encourage the deployment of advanced telecommunications capability as required by section 706 of the 1996 Act; and (4) achieve the complementary goal reflected in the 1996 Act of reducing government regulation whenever possible.  Id.  The FCC expressly stated that, in order to accomplish these objectives through the Form 477 data collection program, it needed "timely and

19

reliable information" and "data of uniform quality and reliability…[because] other publicly available information sources present less than complete pictures of actual conditions and trends in developing local telephone service markets and in the deployment of broadband," and lack "the type of regular, consistent and comprehensive data necessary to illustrate developments in these markets." Id. at ¶¶ 1, 14.

The government has a compelling interest in ensuring that the information it receives is of the highest quality and reliability, and disclosure of potentially sensitive commercial and financial information, even where submissions of information are mandatory, would jeopardize the FCC's ability to rely on the information that Form 477 filers submit. See Judicial Watch v. Export-Import Bank, 108 F. Supp. 2d at 30. Service providers would be reluctant to submit complete and accurate Form 477 information to the FCC if so doing would reveal to competitors detailed and proprietary company-specific data regarding their business strategies and operations. See Feldman Decl at ¶ 22. A lack of reliability of this data would cripple the FCC's ability to make rational decisions regarding the Form 477 information submitted, thereby undermining the entire purpose of the data collection program and hindering the FCC's ability to fulfill its statutory directives. Id.

The Commission's public responsibility extends to promoting the competitive nature of the telecommunications industry. The FCC relies on the proper FOIA exemptions to protect providers from disclosure of confidential commercial and financial business information that providers submit to the Commission. Requiring disclosure of the Form 477 data in company-specific form would place the FCC in the untenable

20

position of carrying out its statutory mandate while betraying the competitive interests of its regulatees.

      **b.**    **The Form 477 Data is Confidential Because Its Disclosure Would Cause Substantial Competitive Harm.**

The data at issue is "confidential" for the independent reason that its disclosure would be likely to "cause substantial harm to the competitive position of the person from whom the information was obtained.'" Pub. Citizen Health Research Group v. FDA, 185 F.3d at 903. Exemption 4 protects information wherever there is evidence of "actual competition and a likelihood of substantial competitive injury" to the provider of that information. Judicial Watch, 108 F. Supp. 2d. at 29 (quoting CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1152 (D.C. Cir. 1987)). A "competitive injury" is one "flowing from the affirmative use of proprietary information by competitors." See FDA, 704 F.2d at 1291 n. 30. In assessing whether this element is satisfied, "the Court need only 'exercise its judgment in view of the nature of the material sought and competitive circumstances in which the submitter does business,' but 'no actual adverse effect on competition need be shown.'" See Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau, No. 04-1919, 2005 WL 913268, at *5 (D.D.C. Apr. 20, 2005) (quoting Nat'l Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673, 675 (D.C. Cir. 1976)). An agency can establish a likelihood of substantial competitive injury by demonstrating that disclosure would provide competitors with valuable insights into the company's operations, give competitors pricing advantages over the company, or unfairly advantage competitors in future business negotiations. National Parks and Conservation Ass'n, 547

21

F.2d 673, 684 (D.C. Cir. 1976), Center for Public Integrity v. Dep't of Energy, 191 F.

Supp 2d 187, 194 (D.D.C. 2002); Export-Import Bank, 108 F. Supp 2d at 29.

The FCC's WCB, in addition to other responsibilities, collects information and

provides economic, financial, and technical analyses regarding telecommunications

markets, and develops and recommends policy goals, objectives, and programs for the

Commission on matters concerning such markets.  See Feldman Decl. at ¶ 1.  WCB has

received and assessed numerous submissions from service providers detailing the

significant competitive harm that they would suffer from public disclosure of their Form

477 information in company-specific form, e.g., during the rulemaking preceding the

2000 Data Gathering Order that created the Form 477.  Id. at ¶¶ 24-25.  The FCC's

predictive judgments and forecasts set forth below regarding the potential repercussions

from disclosure of company-specific Form 477 information should thus be accorded

deference.  See CNA Fin. Corp., 830 F.2d at 1155.

Telecommunications is a highly competitive industry in which companies

routinely attempt to discover a possible advantage over their competitors.  See Feldman

Decl at ¶ 20.  The Form 477 information that plaintiff seeks contains detailed and

proprietary company-specific data regarding service providers' business holdings,

practices, strategies, and operations in individual state markets, including information

about their service offerings and locations and customer types and counts - the very type

of information that goes to the heart of FOIA Exemption 4.  Id. at ¶ 12.  Providers

customarily do not disclose the information to outside parties.  Id.  Indeed, the vast

majority of providers -- 74 percent -- requested that the FCC keep this information

confidential via the check-box on the Form 477 cover page, and an unknown number

22

may have requested confidentiality through other means.  Id. at ¶ 14.  Service providers'

competitors would gain valuable insights into their business operations and benefit from

the disclosure of such sensitive and detailed commercial information in several ways.

First, disclosure could harm service providers by allowing their competitors to

determine the particular areas where they have or have not been successful in acquiring

customers.  Id. at ¶ 27.  Form 477 filers report line count information at the state level of

detail.  Access to the company-specific number of connections that a provider has in

service in a particular state (as reported on Part I or Part II of the Form 477) could - if

those connections are located in only limited areas within a state (as reported on Part V

of the Form 477) - allow competitors to target areas in which a provider has identified,

through its own efforts, areas of demand for particular services.  Id.  Such information is

more useful to competitors than simply knowing that a provider exists and is merely

offering service within a broader geographic area.  Id.

For some providers, competitive harm is likely if they have succeeded in

acquiring customers in a limited geographic area – perhaps in only parts of the broader

geographic area where the provider publicly offers service.  Id. at ¶ 28.  Such information

could identify the structure of competition (e.g., the relative success rates of individual

competitors) in particular states or in areas smaller than a state.  Id.  For example, if a

provider offers broadband services only in one area of a state, and the number of lines it

uses to provide service to end users in that area were publicly reported, its competitors

could easily determine the number of that provider's customers in that area.  Id.  If the

provider reported a large increase in high-capacity lines in that state while reporting no

increase in the number of such lines in a second state, competitors might conclude that

23

the provider had made a strategic decision to focus on competing for broadband customers in the first state rather than the second.  Id.  In response, a competitor who is the incumbent provider serving the first state might decide to step up its own efforts to deploy broadband facilities, while the incumbent provider in the second state might decide that it could afford to delay investments in order to concentrate on competing against the provider in a third location.  Id.  Such information regarding market conditions, which would help competitors to identify and exploit providers' competitive weaknesses, is routinely protected under FOIA Exemption 4.  See Baker & Hostetler LLP v. U.S. Dept. of Commerce, 2006 WL 3751451 (D.C. Cir. 2006), at *6, citing Critical Mass Energy Project, 830 F.2d at 281; Pub. Citizen Health Research Group, 704 F.2d at 1290.

        The concerns arising from competitors' knowledge with regard to the relative success of service providers in particular geographic areas are heightened by the ability of competitors to combine company-specific Form 477 data with other information.  See Feldman Decl. at ¶ 29.  For example, combining the numbers of connections in service with publicly available population figures or other information could allow competitors to make specific estimates of a service provider's success rate in acquiring customers in particular states – and, in many cases, in areas smaller than a state.  Id.  Information under these circumstances is properly protected under Exemption 4.  See Gilda Industries Inc. v. United States Customs & Border Protection Bureau, 2006 WL 2982150 (D.D.C. 2006) (concluding that, even if information that is the subject of a FOIA request would not itself threaten competitive injury, it is properly protected under FOIA Exemption 4 if the requester has other, public sources of information that could complete the picture of

24

its competitors), citing <u>Timken Co. v. U.S. Customs Serv.</u>, 491 F. Supp. 557, 559-560 (D.D.C. 1980).

Further, new entrants into particular geographic areas are likely to be particularly disadvantaged by the release of company-specific Form 477 data.  <u>See</u> Feldman Decl. at ¶ 30.  Competitors already serving those geographic areas could use the Form 477 data to identify providers that are in the initial stages of entering their markets and tailor customer retention efforts or "winback" efforts directed at former customers to prevent new entry.  <u>Id</u>.  Such information also could allow additional entrants an unfair "free ride" on the efforts of the first new entrants to identify areas where competition is more likely to be successful.  <u>Id</u>.  Information under these circumstances is properly protected under Exemption 4.  <u>See</u>, <u>e.g.</u>, <u>Public Citizen Health Research Group v. FDA</u>, 185 F.3d 898, 905 (D.C. Cir. 1999) (recognizing that FOIA Exemption 4 properly relied upon to withhold information where competitor would be able to eliminate much of the time and effort that would otherwise be required to bring to market a product competitive with the product for which data was released) (citations omitted).

Second, Form 477 filers are likely to suffer substantial competitive harm from the disclosure of company-specific data about the technologies they use.  <u>See</u> Feldman Decl at ¶ 31.  The Form 477 data indicate the type of broadband connections, by technology, that a particular provider has in service in particular ZIP codes.  <u>Id</u>.  Some technologies and related characteristics, such as connection speed, are associated with larger business, government, or institutional users.  <u>Id</u>.  The technologies identified as "other traditional wireline" or "optical carrier" on Part I of the Form 477 are examples.  <u>Id</u>.  In some ZIP codes, there are only a few customers likely to subscribe to such services, which could be

25

identified from publicly available information. Id.   For example, some entities are
assigned a unique ZIP code, such as the FCC's unique 20554 ZIP code. Id. The
company-specific Form 477 data thus could enable competitors to identify the largest or
most lucrative customers of the Form 477 filer, and target them for competition. Id.
Moreover, the competitor would know the technology and range of connection speeds
used by the Form 477 filer to serve those customers. Id. In such cases, the company-
specific Form 477 information would enable competitors to design specific competing
offers to target individual customers. Id.

　　　　Third, competitors' access to historical, as well as current, company-specific
Form 477 data could harm service providers by giving competitors information about
marketplace trends that would not be otherwise available through legitimate means. See
Feldman Decl at ¶ 32. For example, information regarding a provider's number of lines
has increased or decreased in a particular area over time provides competitors with
insights into how that provider is focusing its investment and marketing efforts. Id. If a
provider publicly reported a large increase in the proportion of lines owned rather than
leased in a specific state, its strategy to rely more heavily on deployment of its own
facilities would be advertised to competitors. Id. Such information would be of value in
evaluating a new entrant's priorities and developing a strategy to stifle its competitive
efforts. Id. Other geographic areas might have less fluctuation in subscribership over
time, allowing competitors to make accurate predictions about the subscribership of
reporting companies serving such areas. Id.   Information under these circumstances is
properly protected under Exemption 4.  See Timken Co. v. U.S. Customs Serv., 1983 WL
486422, (D.D.C. 1983), at *5 (upholding defendants' invocation of FOIA Exemption 4

with respect to non-disclosure of historical information and finding that such information could cause substantial competitive harm because "…old business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses. It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes,") citing In Re Japanese Electronic Products Antitrust Litigation, 529 F. Supp. 866, 891-92 (E.D. Pa 1981).

While the vast majority of filers requested that the FCC treat their Form 477 data as confidential, even if a filer did not request confidentiality, or requested confidentiality regarding only some of its data, release of that filer's data, when associated with publicly available information, could reveal market-specific information about other filers that did request confidential treatment. See Feldman Decl at ¶ 33. The Form 477 summary statistics that the FCC publishes bi-annually in its High-Speed Services for Internet Access and Local Telephone Competition reports include aggregate data from filers who do not request confidential treatment of their data as well as from filers who do request confidentiality. Id. Because these summary statistics are public, releasing the company-specific Form 477 information of filers that did not request confidentiality, or that requested confidentiality regarding only certain parts of their Form 477 submissions, could result in the Form 477 information provided by another filer that did request confidentiality becoming "visible" to its competitors. Id. These reports include state-specific totals of the number of broadband connections that are in service, for each of several different types of broadband technologies, and information about the number of broadband providers in each geographic Zip Code. Id. The association of data from a specific Form 477 with the aggregate published data could render the requested

27

information useful to competitors, who could combine the company-specific and publicly-available information to gain valuable knowledge regarding a filer's business operations which that filer did consider confidential.  Id.  Information under these circumstances is properly protected under Exemption 4.  See Gilda Industries Inc., 2006 WL 2982150 (D.D.C. 2006), citing Timken Co. v. U.S. Customs Serv., 491 F. Supp. at 559-560.

In sum, all factors satisfy the criteria for Exemption 4 withholding of the commercial and financial information contained in the Form 477s: the information is commercial or financial, was obtained from a person, and, most significantly, is confidential in two distinct respects.  Accordingly, pursuant to FOIA Exemption 4, the Form 477 information was properly withheld.

### B.    The Form 477 Data Is Not Segregable.

The FOIA requires that, if a requested record contains information that is exempt from disclosure under one of the FOIA exemptions, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." Oglesby, 79 F.3d at 1176 ("[i]f a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions") quoting 5 U.S.C. § 552(b); Trans-Pac. Policing Agreement, 177 F.3d at 1028 (district courts have a duty to consider segregability in FOIA cases).  Further, "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

28

In this case, there is no practical means through which the FCC could reasonably segregate company-specific Form 477 information to eliminate the likelihood of competitive injury to service providers. The Commission's existing Form 477 electronic database was not designed to permit the segregation of non-confidential from confidential data in a comprehensive manner. See Feldman Decl at ¶ 36. Segregating any Form 477 data that filers might not consider confidential would require FCC staff, first, to identify precisely which filers requested confidentiality in each of the fourteen filing rounds to date and, second, to determine the specific items of Form 477 data for which confidentiality was requested. Id. This would not address, however, the separate concern regarding Form 477 data for which a filer did not request confidential treatment, but where release of that filer's data could reveal information about other filers that did request confidentiality. Id.

Identifying the approximately 74 percent of Form 477 submissions in which filers requested confidentiality using the check-box on the Form 477 cover page would be relatively straightforward. Id. at ¶ 37. The FCC has no automated means, however, to determine whether a filer's Form 477 was accompanied by a separate request for confidentiality, e.g., in a separate attachment or e-mail. Id. With respect to the 74 percent of filers who used the Form 477 check-box, FCC staff would need to review manually all regular mail, e-mail, and attachments that accompanied their submissions in order to ascertain whether the filers attached additional explanations regarding their confidentiality requests. Id. In order to determine whether separate confidentiality requests accompanied any of the remaining approximately 26 percent of Form 477 filings in which filers did not check the box on the cover page, FCC staff would be required to

29

review manually all regular mail, e-mail, and attachments associated with the 35,000 filings. Id.

Among those filers requesting confidential treatment, determining specifically what data the filer considers confidential would require significant additional manual review. See Feldman Decl. at ¶ 38. Through the December 2004 Form 477 data, filers that requested confidentiality were directed to include with their filings a redacted copy of the Form 477 filing, in which competitively sensitive information was replaced by "xxxxxx." Id. However, not all filers requesting confidential treatment provided redacted copies as instructed. Id. For three of the eleven filing rounds in which redacted filings were required (June 2002, December 2002 and June 2003), WCB staff transferred redacted filings into a separate electronic database. That database, however, has not been updated to reflect any revised Forms 477 that those providers may have submitted. Id. The database also does not include Form 477 filings in which providers requested confidentiality but did not submit a redacted version of their submission. Id. For the remaining eight filing rounds in which redacted filings were required, the redacted filings were never aggregated into a separate consolidated electronic database. The redacted filings would need to be identified and incorporated into a consolidated database reflecting all updated redacted filings received. Id.

With respect to the three filing rounds to date for which redacted filings were not required (the semiannual data after December 2004), as well as for earlier filers that failed to provide redacted copies with their filings, the FCC would be unable to determine independently the particular Form 477 data for which a filer requested confidentiality. Id. at ¶ 39. FCC staff thus would be required to have to contact each of

the filers individually -- in the most recent June 2006 filing round alone, approximately

1,500 providers submitted approximately 5,000 Forms 477.  Id.

Identifying the situation where a filer did not request confidentiality using the

Form 477 cover page check-box or separately request confidentiality, but where release

of that filer's data could reveal information about other filers that did request confidential

treatment, would also be particularly onerous.  See Feldman Decl. at ¶ 40.  The FCC has

no automated process for determining when company-specific data subject to

confidentiality requests would become visible as a consequence of releasing company-

specific data that is not subject to confidentiality requests, when both are incorporated in

a published summary statistic.  Id.

FCC staff would be required to develop and test special software to examine all

Form 477 data incorporated into the summary statistics in the FCC's High-Speed

Services for Internet Access Reports and Local Telephone Competition Reports for each

of the past seven years.  Id. at ¶ 41.  For the December 2005 Form 477 data alone, the

FCC published in its High-Speed Services for Internet Access Report approximately 100

unique national-level summary statistics and over 500 unique state-level summary

statistics of broadband line count information, as well as summary statistics of the

number of broadband providers who had paying customers in each geographic ZIP Code.

Id.  In addition, with respect to the December 2005 data, the FCC published in its Local

Telephone Competition Report approximately 30 unique national-level summary

statistics and approximately 470 unique state-level summary statistics of telephone

service information, as well as summary statistics regarding the number of competitive

local exchange carriers who had paying customers in each ZIP Code.  Id.

31

Given the expansive contours of plaintiff's FOIA request, the voluminous amount of Form 477 submissions received, the manner in which the FCC publishes and maintains the information, and WCB's staffing availability, the foregoing process would, at best estimate, take several months or more to complete.  See Feldman Decl. at ¶ 42.  There would be significant and substantial monetary costs to the FCC, and to taxpayers, to devote manpower resources to completing this task. For these reasons, segregation of non-exempt information would not be "reasonably" achievable.

     C.    **Release Of The Company-Specific Form 477 Information Would Not Be In The Public Interest**.

Plaintiff's administrative FOIA request states that disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of your agency and the agency's regulation of the communications industry."  See letter from Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of Managing Director, FCC, Attachment A to Feldman Decl., at 2.

 Plaintiff's District Court Complaint states that plaintiff seeks to add certain Form 477 information to its "[i]nternet-based searchable database of the radio, television, newspaper and cable companies reaching any particular zip code…[t]o aid in the nation's understanding of the extent of broadband availability."  See Complaint at ¶ 3.  Such generalized and speculative assertions present no compelling reason for disclosure, particularly in light of the fact that the FCC already publishes bi-annually two comprehensive and publicly available reports regarding the information collected on the Form 477 -- the High-Speed Services for Internet Access Report (reporting "a snapshot

32

of subscribership" for "[h]igh-speed lines connecting homes and businesses to the Internet"), and the Local Telephone Competition Report (reporting the "latest data on local telephone service competition in the United States").

Moreover, the information that plaintiff seeks has little to do with the core purpose of the FOIA -- "contributing significantly to public understanding of the operations or activities of the government." See McDonnell Douglas Corp. v. U.S. Dept. of the Air Force, 375 F.3d 1182, 1193 (D.C. Cir. 2004) (reh'g en banc denied), citing Dep't of Defense v. FLRA, 510 U.S. 487, 495 (1994) (quoting U.S. Dept. of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 775 (1989). The company-specific Form 477 information at issue in this lawsuit does not reveal the inner workings of the FCC, but rather those of individual service providers, and thus sheds little if any light upon the "agency's performance of its statutory duties." Id., citing Bibles v. Or. National Desert Ass'n, 519 U.S. 355, 356 (1997) (per curiam). Cf. Reporters Comm., 489 U.S. at 773 (purpose of FOIA "is not fostered by disclosure of information about private citizens…that reveals little or nothing about an agency's own conduct.").

Plaintiff fails to make a "persuasive showing" that the Form 477 information should be released. See 47 C.F.R. § 0.457(d)(1). The Commission has not authorized release of information protected pursuant to Exemption 4 "on the mere chance that it might be helpful, but insists upon a showing that the information is a necessary link in a chain of evidence" that will resolve an issue before the Commission. See Examination of Current Policy Concerning The Treatment Of Confidential Information Submitted To The Commission, GC Docket No. 96-55, Report and Order, 13 FCC Rcd. 24816 (1998), at ¶ 8. The FCC has released such information only in very limited circumstances, such

33

as where a party places its financial condition at issue in a Commission proceeding, or

where the Commission has identified a compelling public interest in disclosure.  Id.

Neither situation is applicable here.

**VII.    CONCLUSION**

For the foregoing reasons, this Court should grant defendant's motion for

summary judgment.


Respectfully submitted,


____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Assistant United States Attorney



____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney



____/s/_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 514-7224


OF COUNSEL:
Michael Krasnow
Attorney
Office of General Counsel
Federal Communications Commission

35