# THE CENTER FOR PUBLIC INTEGRITY

October 19, 2006

**By Certified Mail, Return Receipt Requested**
General Counsel
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

                                        Re: Review of Freedom of Information Action
                                            FOIA Control No. 2006-493

Dear Sir or Madam:

        This letter serves as a formal Freedom of Information Act appeal under 5 U.S.C. §
552(a)(6)(A) and an application for review under 47 C.F.R. § 0.461(j) of the written decision
dated September 26, 2006, by Kirk S. Burgee, Associate Bureau Chief, Wireline Competition
Bureau, on the Freedom of Information Act (FOIA) request (FOIA Control No. 2006-493)
submitted by Drew Clark on behalf of the Center for Public Integrity.  A copy of the
determination letter is attached.  The Center for Public Integrity's objections to the determination
by Mr. Burgee to withhold the records sought are noted and addressed in turn in the paragraphs
below.

        The Center's FOIA request is the subject of a lawsuit, *Center for Public Integrity v.
Federal Communications Commission*, Civil Action No. 06-1644 (RMC) (D.D.C.), filed
September 25, 2006. We believe this suit was properly filed pursuant to 5 U.S.C. §
552(a)(6)(C)(i) but nevertheless ask that you consider this application for review.

        **1) FOIA Exemption 4.** The decision to deny the Center's request under FOIA
Exemption 4 depends on findings that the requested data is confidential (5 U.S.C. § 552(b)(4)),
meaning in this case, likely to cause substantial competitive harm to the filer if released
(*National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974)).

        In analyzing the application of FOIA Exemption 4 to the Center's request, the
determination letter is cursory, vague, conclusory and contradicts the factual record. For
instance, the letter asserts (at p. 3) that "[f]ilers customarily guard this [requested] data from their
competitors." In fact, filers may choose to designate whether they consider some submitted data
to be "privileged and confidential." (Form 477, Cover Page, Question 8; *see also* FCC,
"Frequently Asked Questions About FCC Form 477," http://www.fcc.gov/broadband/
broadband_data_faq.html, at ¶ 24. The determination letter does not address what proportion of
the data has been submitted under claim of confidentiality. We request that any data not claimed
as confidential be released to us.

In addition, when the Commission adopted the Form 477 data collection program, it stated that "it is our understanding that some providers release considerable data about the nature of their operations, while others more closely safeguard such data" and that "[a]t this time, we do not have sufficient evidence in the record to make a universally applicable decision about the competitive sensitivity of all of the Part I Broadband information for all providers." Local Telecommunications Competition and Broadband Deployment, Report and Order, Docket No. 99-301, http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-00-114A1.pdf ("2000 Data Gathering Order"), at ¶¶ 89 and 91. Even so, the determination letter asserts (at 2) that the Center's FOIA request seeks "data derived from filings that the Commission *has already determined in prior orders* should not be made available to the public" (emphasis added), apparently referring to the 2000 Data Gathering Order but not citing any order in particular. We ask that you reconsider the probability, extent and scope of any likely competitive harm, in light of the doubts expressed by the Commission in the 2000 Data Gathering Order.

**2) Segregability.** FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The determination letter does not even attempt to justify the withholding of all portions of the data, other than to assert (at 3 n.12) that the Commission has published some portions of the data in publicly available reports. The letter does not indicate whether further segregable portions can be released. We ask that you make such a determination.

The Center's FOIA request stated, "If it is not possible to produce all the fields in the database, we are willing to negotiate to narrow the scope of this request." We remain willing to do so. We ask that you consider whether most or some fields can be released without causing competitive harm if certain other fields are withheld as exempt.

In instances where you determine that data must be withheld to prevent competitive harm, we ask that you consider whether particular numbers can be redacted by indicating a range that the number falls within (e.g., 0, 1-100, 101-1000, etc.) or, at a minimum, by indicating whether the number is zero or greater than zero.

**3) Documentation.** The second part of the Center's FOIA request (at 1) sought "[a]ll documentation associated with [the requested] database." The next paragraph repeated that the Center was requesting "any and all documentation related to these records, including but not limited to data dictionaries, database documentation, record layouts, data entry instructions and similar printed or electronic documentation materials."

The Center intended to use the term "documentation" in the sense it normally has in computer science: "the organized collection of records that describe the structure, purpose, operation, maintenance, and data requirements for a computer program, operating system, or hardware device." ("documentation," *The American Heritage Dictionary of the English Language* (4th ed. 2000), http://www.thefreedictionary.com/documentation)

We ask that you reconsider the denial of this part of the Center's request in light of this clarification. The Center is seeking documentation associated with the structure of the database,

2

not with its contents. This should obviate the competitive-harm concerns the determination letter expresses with regard to this part of the Center's request.

  For the reasons noted above, we ask that you reconsider and reverse the determination made on the Center's request.

Sincerely,


 /s/

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org


copy to: Wyneva Johnson, Assistant United States Attorney

FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

September 26, 2006

Drew Clark
Senior Fellow and Project Manager
The Center For Public Integrity
910 17ᵗʰ Street NW, 7ᵗʰ Floor
Washington, DC 20006

Re:    FOIA Control No. 2006-493

Dear Mr. Clark:

On behalf of the Commission, the Wireline Competition Bureau has reviewed the above-referenced Freedom of Information Act (FOIA) request filed by The Center For Public Integrity (the "Center").[1] Because the request seeks records that fall within FOIA exemption 4 and because the Center has failed to present a compelling public interest reason for disclosure, the request is denied.[2]

---

[1] Letter from Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of Managing Director, FCC (filed August 29, 2006) ("*Center FOIA Request*").

[2] *See* 47 C.F.R. § 0.461(f)(1) ("If the Commission is prohibited from disclosing the records in question, the request for inspection will be denied with a statement."). Because we deny this FOIA request, the Center's request for a waiver of FOIA duplication fees is moot. *See Center FOIA Request* at 2. Our response to the *Center FOIA Request* is timely. FOIA allows agencies 20 working days to respond to FOIA requests. 5 U.S.C. § 552(a)(6)(A)(i). FOIA requires agencies to make records available in response to any request "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3). The time period for responding to a FOIA request does not begin to run until the request is received by the appropriate office and officer in the agency, as set forth in the agency's published rules. *See Blackwell v. EEOC*, No. 2:98-CV-38-BO(2) (E.D.N.C. 1999), at *2 (1999 WL 1940005) *citing Brumley v. United States Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985). Under our regulations, when a FOIA request is received by the Office of Managing Director, it is assigned to the FOIA Control Office, where it is date-stamped and assigned to the Bureau that is the custodian of records sought. 47 C.F.R. § 0.461(e). The Bureau then has 20 working days from that date to respond. 47 C.F.R. § 0.461(g). In this instance, the *Center FOIA Request*, dated August 24, 2006, was addressed to Shoko Hair, FOIA Public Liaison, not, as our rules and website provide, to the Managing Director. *See* 47 C.F.R. § 0.461(d)(1); <http://www.fcc.gov/foia/>. *See Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986) (FOIA requests must be filed in accordance with the agency's rules), *citing* 5 U.S.C. § 552(a)(3)(B). Even though the *Center FOIA Request* did not technically comply with section 0.461(d)(2), the *Center FOIA Request* was forwarded to the FOIA Control Office, where it was received, date-stamped and assigned to this Bureau on August 29, 2006. As the Commission explained in *Jeffrey W. Hanson*, 16 FCC Rcd 16497, 16499 (2001), "The Commission strives to promptly route FOIA requests to the FOIA Control Officer and the custodian of records, but delays sometimes do occur." Therefore, August 29 started the time clock for processing the *Center FOIA Request*, and a response is due 20 working days from that date – September 27, 2006.

Page 2 of 3

The Center requests (1) "[a] database or other similar electronic copy of all records collected with FCC Form 477," and (2) "[a]ll documentation associated with that database."[3] We deny both of the Center's requests because we find that the requested records contain commercially sensitive, competitive information and that release would cause harm to the entities that submitted the requested information. Therefore, we decline to release the requested information pursuant to exemption 4 of FOIA.[4] We also deny the second request on the grounds that it would encompass deliberative Commission work product.[5]

The Form 477 data collection program requires (1) facilities-based providers of broadband ("high speed") connections to end user locations, (2) providers of wired or fixed wireless local telephone services, and (3) facilities-based providers of mobile telephony services to file with the Commission certain information regarding their telephone services and broadband connections.[6] In order to apprise the public of the status of this industry, the Commission publishes the High-Speed Services for Internet Access Report and the Local Telephone Competition Report based on this semiannual data collection.[7]

In the *2000 Data Gathering Order*, the Commission adopted several procedures to protect the confidentiality of data submitted to it on Form 477. The Commission noted commenters' concerns that new entrants could be harmed if competitors learned of the number of lines and customers that they had in a particular market.[8] The Commission thus agreed to aggregate filed data in its published reports in a way that does not identify company-specific data.[9] While the Commission recognized that the data collection was mandatory, the Commission also recognized that additional confidentiality protections would encourage voluntary compliance.[10]

Both of the Center's FOIA requests seek data that would permit it first-hand access to company-specific data. The first request asks for a database of all records collected by each and every company. The second request seeks all "associated" documentation. Both requests would necessarily encompass company-specific data derived from filings that the Commission has already determined in prior orders should not be made available to the public. Furthermore, the second request would encompass documents containing Commission analysis of submitted data, which is protected under the work product privilege.[11]

---

[3] *Center FOIA Request* at 1.

[4] 5 U.S.C. § 552(b)(4) ("*Trade secrets and commercial or financial information*"); 47 C.F.R. § 0.457(d).

[5] 47 C.F.R. § 0.457(e).

[6] *See* Form 477 Instructions § II; *see also Local Competition and Broadband Reporting*, Report and Order, 15 FCC Rcd 7717 (2000) ("*2000 Data Gathering Order*"); *In re Local Telephone Competition and Broadband Reporting*, Report and Order, 19 FCC Rcd 22340 (2004) ("*2004 Data Gathering Order*").

[7] These reports are publicly available at *http://www.fcc.gov/wcb/iatd/stats.html*.

[8] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at paras. 87-88 n.226.

[9] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 91; *2004 Data Gathering Order* 19 FCC Rcd 22340 at para. 24 n.56.

[10] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 91. We also note that the Commission relied on 47 U.S.C. § 220 as statutory authority when establishing its Form 477 data rules. *See 2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 111. Under section 0.457 of our rules, "[i]nformation submitted in connection with audits, investigations and examination of records pursuant to 47 U.S.C. 220" is deemed to be subject to FOIA exemption 4. 47 C.F.R. § 0.457(d)(iii).

[11] 47 C.F.R. § 0.457(e).

Page 3 of 3

We find that the requested database and associated documentation constitute commercially sensitive, competitive information. Filers customarily guard this data from their competitors, and release would harm their competitive interests by revealing to competitors their market strategies, their customer identities and counts and where they have deployed their services. For example, competitors could use this data to decide where to target their service offerings, facilities construction, and marketing, all to the detriment of Form 477 filers. For these reasons, we conclude that the requested data is protected against disclosure pursuant to FOIA exemption 4.[12]

Once the Commission determines that records fall within exemption 4, as we find here, the requester bears the burden of making a "persuasive showing" that its public interest argument outweighs the arguments for withholding the records.[13] In balancing the public interest argument against the interests underlying protecting the information, "the Commission generally has exercised its discretion to release publicly information falling within FOIA Exemption 4 only in very limited circumstances, such as . . . where the Commission has *identified a compelling public interest in disclosure.*"[14] The Center makes no public interest argument in favor of disclosing the requested documents, and we find no such argument in our precedent; thus, we find that there exists no compelling public interest sufficient to override the interests underlying exemption 4.

You may seek review of this decision by filing an application for review with the Office of General Counsel within 30 days of the date of this letter.[15]

Sincerely,

Kirk S. Burgee
Associate Bureau Chief
Wireline Competition Bureau

---

[12] We note that the Center states that it is willing "to narrow the scope of this request." *Center FOIA Request* at 1. We find that our publicly-available reports already publish non-confidential data culled from the Form 477s. *See http://www.fcc.gov/wcb/iatd/stats.html.*

[13] *See In re Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission,* 13 FCC Rcd 24816 at paras. 19-20 (1998).

[14] *Id.* at para. 8 (emphasis added) ("[T]he Commission has been sensitive to ensuring that the fulfillment of its regulatory responsibilities does not result in the unnecessary disclosure of information that might put its regulatees at a competitive disadvantage.").

[15] *See* 47 C.F.R. § 0.461(j).