UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,      ) | |
| )    | |
| Plaintiff,    ) | |
| )    | |
| v.    ) | Civil Action No. 06-1644 (RMC) |
| )    | |
| FEDERAL COMMUNICATIONS    ) | |
| COMMISSION,    ) | |
| )    | |
| Defendant.    ) | |
| _____) | |

## DECLARATION OF ALAN I. FELDMAN

1.     I am presently employed as Acting Chief, Industry Analysis and Technology Division ("IATD"), Wireline Competition Bureau ("WCB"), Federal Communications Commission ("FCC" or "Commission"). I have served in that capacity and as a Deputy Division Chief in IATD since the FCC Form 477 was implemented in March 2000, and have been with WCB and its predecessor, the Common Carrier Bureau, since May 1971. WCB, among other things, collects information and provides economic, financial, and technical analyses regarding telecommunications markets, and develops and recommends policy goals, objectives, and programs for the Commission on matters concerning such markets.

2.     The information set forth in this Declaration is based upon my official knowledge acquired in my official management positions in IATD, WCB, FCC.

3.     On August 29, 2006, WCB received plaintiff's request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*. Plaintiff's FOIA request sought (1) "[a] database or other similar electronic copy of all records collected with FCC Form 477," and (2) "[a]ll documentation associated with that database." *See* letter from Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of Managing Director, FCC, attached hereto as Attachment A.

4.     On September 26, 2006, WCB timely issued a decision denying plaintiff's FOIA request and withheld the Forms 477 pursuant to FOIA Exemption 4 because "the requested records contain commercially sensitive, competitive information and…release would cause harm to the entities that submitted the information." *See* letter from Kirk S. Burgee, Associate Bureau Chief, WCB, to Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, attached hereto as Attachment B.

5. On October 19, 2006, plaintiff filed an administrative appeal with the FCC of WCB's September 26, 2006 decision, and that appeal remains pending. *See* letter from Peter Newbatt Smith, Research Editor and Counsel, Center for Public Integrity, to General Counsel, FCC, dated October 19, 2006, attached hereto as Attachment C.

6. On December 12, 2006, WCB released a Public Notice to service providers who submitted Forms 477 to the FCC notifying them that the instant litigation is pending and that plaintiff seeks public release of their company-specific Form 477 information. *See* Attachment D hereto.

7. In March 2000, in order to fulfill directives set forth in the Telecommunications Act of 1996 ("1996 Act"), the FCC adopted a standardized form -- the FCC Form 477 -- to collect from providers of telecommunications and related services ("service providers" or "filers") information regarding the development of local telephone service competition and the deployment of broadband services. *See Local Competition and Broadband Reporting*, CC Docket No. 99-301, Report and Order, 15 FCC Rcd 7717 (2000) ("*2000 Data Gathering Order*"), at ¶ 2 (citations omitted).

8. The FCC requires service providers to submit Forms 477 twice per year. The Form 477 collects information about broadband connections to end user locations, and about wired and wireless local telephone services, for individual states.[1] Providers must complete a separate Form 477 for each state in which they do business. Thus, a single provider could be required to submit multiple Forms 477 during each filing round.

9. There have been fourteen filing rounds between December 31, 1999 and June 30, 2006, during which the FCC has received approximately 35,000 separate Forms 477.

10. Following each semiannual data collection, the FCC publishes certain Form 477 data in the *High-Speed Services for Internet Access Report* (reporting a snapshot of subscribership for high-speed lines connecting homes and businesses to the Internet) and the *Local Telephone Competition Report* (reporting the latest data on local telephone service competition in the United States), which are publicly available on the FCC's website at http://www.fcc.gov/wcb/iatd/stats.html.

11. Due to the competitive harm that release of the Form 477 data could cause and the ability of competitors to take the data submitted and tailor market strategies to quash nascent competition, protect areas that are being subjected to increased competition, or deploy facilities to defend strongholds, the FCC includes exclusively aggregated (non-company specific) summary statistical data in its semi-annual reports referenced in paragraph 10 above. Specifically, line count data (data that filers report in Parts I through IV of the Form 477) is aggregated by carrier class (*e.g.,* incumbent local exchange carrier

---

[1] "Broadband connections" are lines (or wireless channels) that terminate at an end user location and enable the end user to receive information from and/or send information to the Internet at information transfer rates exceeding 200 kilobits per second (kbps) in at least one direction. "End users" are residential, business, institutional and government entities who use services for their own purposes and who do not resell such services to other entities.

2

vs. competitive local exchange carrier) and technology (*e.g.*, cable modem vs. DSL), and to the state or national level. ZIP Code data (the data that filers report in Part V of the Form 477) is also aggregated to the state or national level (*e.g.*, percentage of ZIP Codes with competitive local exchange carriers; percentage of ZIP Codes with high-speed cable modem connections in service). Additionally, the information about *specific* ZIP Codes that the FCC publishes is summarized as the number (as opposed to the names) of the providers that serve any subscribers in a particular 5-digit geographical ZIP Code, and the ZIP Codes with one to three providers are aggregated into a single category. Where an aggregate figure might reveal company-specific data, the FCC does not report that figure. For example, if there are only a few companies (*e.g.*, mobile wireless broadband service providers) with subscribers in a particular state, the subscribership data of one of those providers could be readily discerned in part because each company knows its own data, and the Commission does not publish the aggregated data of these companies.

12.   The Forms 477 contain detailed and proprietary company-specific data regarding providers' business holdings, practices, strategies, and operations in individual state markets, including information about their service offerings and locations and customer types and counts. Many service providers do not customarily disclose such information to outside parties. *See* Comments of US West Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 4 (filed Dec. 3, 1999) (the comments cited in this paragraph and below are publicly available on the FCC's website at http://gullfoss2.fcc.gov/prod/ecfs/comsrch_v2.cgi, by entering the proceeding, *e.g.*, 99-301). Even large companies with multi-state operations typically do not include data in their shareholder or SEC reports or other public documents that is as granular as the state-level information contained on the Form 477. For instance, the Form 477 requires local telephone companies to report information about their success in acquiring long-distance service customers in individual states, which is information that such companies typically do not make public.

13.   The current version of Form 477 is divided into a cover page and five Parts. *See* Attachment E hereto. On the cover page, filers provide their name and contact information, state whether they are filing an original or revised form, and indicate whether they seek confidential treatment of their Form 477 information by checking a box denoting their request for "non-disclosure of some or all of the information…because…the information is privileged and confidential and public disclosure of such information would likely cause substantial harm to the competitive position of the filer."

14.   Approximately 74 percent of the service providers submitting Form 477's to the FCC requested confidentiality by checking the box on the Form 477 cover page. Additionally, some filers, rather than checking this box, may have submitted separate requests for confidentiality that were not included on their Forms 477, either in attachments to their Form 477 submissions or by other means, *e.g.*, by sending an e-mail to the FCC. Even if a filer does not request confidentiality of some or all of its Form 477 data, WCB may independently conclude that its information should remain confidential because of the risk that its data, if made public, could reveal confidential information

about another filer that did request confidential treatment, and cause competitive harm to that filer. *See* 47 C.F.R. § 0.457(d)(2).

15.     On Part I of the Form 477, filers report the number of broadband connections provided to end user customers broken out by technology and data-transfer rates, as well as the share of connections provided to residential end users, the share of connections provided over filers' own facilities, and the share of connections for which the filer bills the customer directly. Also, incumbent local telephone companies and cable system operators report the share of residential end-user premises able to receive the digital subscriber line (xDSL) and cable modem connections that these companies provide in their service areas.

16.     Part II of the form collects data regarding wireline and fixed wireless local telephone service. Filers report the total number of lines and wireless channels provided to end users, as well as the share provided to residential end users, the share for which the filer is the presubscribed interstate long distance carrier, the share provided via filers' own facilities, and the shares of lines provided using network facilities obtained from other carriers through wholesale contracts or other arrangements.

17.     On Part III of the form, filers report the number of cellular and other mobile telephony subscribers served and the share of those subscribers that the filer bills directly.

18.     Part IV of the form contains space for filers' comments or explanatory notes regarding the data submitted.

19.     Part V of the form collects ZIP Code data – filers report, for each of the technologies deployed, each of the ZIP Codes in which they provide at least one end-user broadband connection. Filers also report each of the ZIP Codes in which they provide wired or fixed wireless local telephone service to at least one end user.

20.     Telecommunications is a highly competitive industry (in the most recent FCC Form 477 filing round (reporting June 2006 data), approximately 1,500 distinct entities submitted approximately 5,000 Forms 477).

21.     Collecting the Form 477 data advances the FCC's ability to develop, evaluate, and revise policy in the rapidly changing areas of development of local telephone service competition and the deployment of broadband services by providing valuable benchmarks for Congress, the Commission, other policy makers, and consumers; evaluate the Commission's and states' efforts to reduce economic and operational entry barriers into previously monopolized local telecommunications markets; enables the FCC to better assess the availability of broadband services (such as high-speed Internet access) to better satisfy its duty to encourage the deployment of advanced telecommunications capability as required by section 706 of the 1996 Act; and helps the FCC to achieve the complementary goal reflected in the 1996 Act of reducing government regulation whenever possible.

22. Without an expectation that their confidential business information will be protected, service providers may not provide complete and accurate Form 477 information to the FCC. A lack of reliability of the Form 477 data would impair the FCC's ability to make rational decisions regarding the Form 477 information submitted. It would hinder the FCC's ability to collect timely and reliable information about the pace and extent of competition for local telephone service in different geographic areas, and undermine the FCC's efforts to evaluate the effectiveness of FCC and state actions to reduce economic and operational barriers for entry into those local markets.

23. In response to a prior FOIA request that WCB received in December 2005 from another requester (ERS Group), which also sought company-specific Form 477 information, albeit in more limited scope, WCB concluded that such information should be withheld pursuant to FOIA Exemption 4 because it is commercially sensitive and would cause filers substantial competitive harm. *See* February 26, 2006 letter from Kirk S. Burgee to Michael J. Doane, ERS Group, attached hereto as Attachment F. WCB concluded further with respect to ERS' FOIA request "on its own motion" that, even where a filer did not request confidential treatment of its Form 477 information, the Commission would not disclose that information because company-specific data regarding that filer could reveal confidential information regarding the business strategies and operations of other filers which did request confidentiality. *Id.*

24. With respect to the December 2005 FOIA request from ERS Group referenced in paragraph 23 above, WCB received submissions from service providers detailing the competitive harm that they would suffer from public disclosure of their company-specific Form 477 information.

25. WCB also received submissions from service providers detailing the competitive harm that they would suffer from public disclosure of their company-specific Form 477 information in response to the notices of proposed rulemakings preceding the *2000 Data Gathering Order* and the *2004 Data Gathering Order*, the FCC orders which created and modified the FCC Form 477 data collection program.

26. The conclusions set forth herein regarding the competitive harm that service providers would suffer from disclosure of their company-specific Form 477 information are based upon my expertise concerning the economic, financial, and technical aspects of telecommunications markets, as well as upon the submissions that WCB received from service providers in the December 2005 ERS FOIA request discussed in paragraph 23 above and in response to the notices of proposed rulemakings preceding the *2000 Data Gathering Order* and the *2004 Data Gathering Order*.

27. Disclosure of Form 477 data is likely to cause substantial harm to the submitting companies for a number of reasons. For one, companies currently providing service are likely to be disadvantaged if their competitors can determine the particular areas where those companies have or have not been successful in acquiring customers. *See* Comments of AT&T Corp., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 17 (filed Dec. 3, 1999); Comments of US West Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 4 (filed Dec. 3,

5

1999). Access to the number of connections in service in particular geographic areas reported on Form 477 could allow competitors to target areas in which a company has identified, through its own efforts, areas of demand for particular services. *See* Comments of National Cable & Telecommunications Association, *Local Telephone Competition and Broadband Reporting*, WC Docket No. 04-141 at 5 (filed June 28, 2004). Such information is more useful to competitors than simply knowing that a company exists and is merely offering service within a broader geographic area.

28. For some companies, competitive harm is likely if they have succeeded in acquiring customers in a limited geographic area – perhaps in only parts of the broader geographic area where the company publicly offers service. Such information might even identify the structure of competition (*e.g.*, the relative success rates of individual competitors) in particular states or in areas smaller than a state. For example, if a provider offered broadband services only in one area of a state, and the number of lines it uses to provide service to end users in that area were publicly reported, its competitors would know the number of that provider's customers in that area. *See* Comments of MediaOne, *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 12 (filed Dec. 3, 1999). If the provider reported a large increase in high-capacity lines in that state while reporting no increase in the number of such lines in a second state, competitors might conclude that the provider had made a strategic decision to focus on competing for broadband customers in the first state rather than the second. *See id.* In response, a competitor who is the incumbent provider serving the first state might decide to step up its own efforts to deploy broadband facilities, while the incumbent provider in the second state might decide that it could afford to delay investments in order to concentrate on competing against the provider in a third location. *See id.*

29. The concerns arising from competitors' knowledge about the relative success of filing companies in particular geographic areas are heightened by the ability of competitors to combine Form 477 data with other information. For example, combining the numbers of connections in service with publicly available population figures or other information could allow competitors to make specific estimate of the Form 477 filer's success rate in acquiring customers in particular states – and, in many cases, in areas smaller than a state.

30. New entrants into particular geographic areas are likely to be particularly disadvantaged by the release of Form 477 data. *See* Comments of Omnipoint Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 4-5 (filed Dec. 3, 1999); Comments of Bell Atlantic Mobile, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 9 (filed Dec. 3, 1999). Competitors already serving those geographic areas could use the Form 477 data to identify companies that are in the initial stages of entering their markets and tailor customer retention efforts or winback efforts directed at former customers to prevent new entry. *See* Comments of AT&T Corp., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 17 (filed Dec. 3, 1999); Comments of Omnipoint Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 4-5 (filed Dec. 3, 1999). Such information also could allow additional entrants an unfair "free ride" on the efforts of the first new entrants to identify areas where competition is more likely

to be successful. *See* AT&T Corp., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 17 (filed Dec. 3, 1999); Comments of Nextel Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket 99-301 at 4 (filed Dec. 3, 1999).

31.   Form 477 filers are likely to suffer substantial competitive harm from the disclosure of company-specific data about the technologies they use. *See* Comments of Bell Atlantic, *Local Competition and Broadband Reporting*, CC Docket 99-301 at 9 (filed Dec. 3, 1999). The Form 477 data indicate what type of broadband connections – by technology – a particular company has in service in particular ZIP codes. Some technologies (and related characteristics, such as connection speed) are associated with larger business, government, or institutional users. The technologies identified as "other traditional wireline" or "optical carrier" on the Form 477 are examples. In some ZIP codes, there are only a few customers likely to subscribe to such services, which could be identified from publicly available information. For example, some entities are assigned a unique ZIP code, such as the FCC's unique 20554 ZIP code. The company-specific Form 477 data thus could enable competitors to identify the largest or most lucrative customers of the Form 477 filer, and target them for competition. Moreover, the competitor would know the technology and range of connection speeds used by the Form 477 filer to serve those customers. In such cases, the company-specific Form 477 information would enable competitors to design specific competing offers to target individual customers.

32.   Access to historical, as well as current, Form 477 data could harm Form 477 filers by giving competitors information about marketplace trends that would not be otherwise available through legitimate means. *See* Comments of National Cable & Telecommunications Association, *Local Telephone Competition and Broadband Reporting*, WC Docket No. 04-141 at 5 (filed June 28, 2004). For example, information about how a company's number of lines has increased or decreased in a particular area over time provides competitors with insights into how that company is focusing its investment and marketing efforts. *See* Comments of US West Communications, Inc., *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 4 (filed Dec. 3, 1999). If a provider publicly reported a large increase in the proportion of lines owned rather than leased in a specific state, its strategy to rely more heavily on deployment of its own facilities would be advertised to competitors. *See* Comments of MediaOne, *Local Competition and Broadband Reporting*, CC Docket No. 99-301 at 12 (filed Dec. 3, 1999). Such information would be of value in evaluating a new entrant's priorities and developing a strategy to stifle its competitive efforts. *See id.* Other geographic areas might have less fluctuation in subscribership over time, allowing competitors to make accurate predictions about the subscribership of reporting companies serving such areas.

33.   Even if a filer did not request confidentiality of its Form 477 information, release of that filer's data could reveal market-specific information about other filers that did request confidential treatment. The summary statistics that the FCC publishes twice per year in its *High-Speed Services for Internet Access* and *Local Telephone Competition* reports are derived from Form 477 data received both from filers who *do not* request confidential treatment of their data as well as from filers who *do* request confidentiality.

7

These reports include state-specific totals of the number of broadband connections that are in service, for each of several different types of broadband technologies, and information about the number of broadband providers in each geographic ZIP Code. Releasing the company-specific Form 477 information of filers who did not request confidentiality could thus result in the Form 477 information provided by another filer that did request confidentiality becoming "visible" to its competitors. The association of data from a specific Form 477 with the aggregate published data could render the requested information useful to competitors.

34.  The FCC's WCB maintains an electronic database containing the Form 477 information in company-specific form. For each filing round, the database consists of two major parts: "line count" data and "ZIP Code" data. Line count data consists essentially of the data that filers report in Parts I through IV of the Form 477, and it is copied and stored line-by-line from the form. For the line count data, there is one record per Form 477 filing for each round, thus a total of 35,000 records. ZIP Code data consists essentially of the data that filers report in Part V of the Form 477. These data are divided between ZIP codes in which filers reported serving at least one local exchange subscriber and ZIP codes in which filers reported serving at least one broadband subscriber. On the local exchange side, there is one record for each ZIP code each filer reported. On the broadband side, there is one record for each ZIP code each filer reported in rounds one through eleven (December 1999 through December 2004), and, since June 2005, for each of the nine technologies as required in Part V of the Form 477 there is one record for each ZIP code each filer reported. Because there are numerous ZIP Codes in each state, there are approximately 4.8 million ZIP Code records in the database.

35.  Of the approximately 35,000 filings, WCB staff estimate that about 80 percent were filed as attachments to e-mail. Filers may attach several Forms 477 to a single e-mail, and filers who submit a large number of filings often submit multiple e-mails, each with several forms attached. The body of the e-mail may contain a message, such as contact phone numbers, a request for confirmation of receipt, or a request for confidential treatment, or such messages may be included as attachments to the e-mail. The remaining filings were received either on computer diskette or on compact disc (CD). The filings are generally received as MS Excel workbooks from which the data are extracted into some database software. The filings through December 2004 are in an electronic database in Microsoft Access format and the more recent extracted data are maintained electronically in either a Microsoft Access database or in a SAS dataset.

36.  The Commission's existing Form 477 database was not designed to permit the segregation of non-confidential data from confidential data in a comprehensive manner. Segregating any Form 477 data that filers might not consider confidential would require FCC staff, first, to identify precisely which filers requested confidentiality in each of the fourteen filing rounds to date and, second, determine the specific items of Form 477 data for which confidentiality was requested. This would not address, however, the separate concern regarding Form 477 data for which a filer did not request confidential treatment, but where release of that filer's data could reveal information about other filers that did request confidentiality.

37. Identifying the approximately 74 percent of Form 477 submissions in which filers requested confidentiality using the check-box on the Form 477 cover page would be relatively straightforward. The FCC has no automated means, however, to determine whether a filer's Form 477 was accompanied by a separate request for confidentiality, *e.g.*, in a separate attachment or e-mail. With respect to the 74 percent of filers who used the Form 477 check-box, FCC staff would need to manually review all regular mail, e-mail, and attachments that accompanied their submissions in order to ascertain whether the filers attached additional explanations regarding their confidentiality requests. In order to determine whether separate confidentiality requests accompanied any of the remaining approximately 26 percent of Form 477 filings in which filers did not check the box on the cover page, FCC staff would have to manually review all regular mail, e-mail, and attachments associated with the 35,000 filings.

38. Among those filers requesting confidential treatment, determining specifically what data the filer considers confidential would require significant additional manual review. Through the December 2004 Form 477 data, filers that requested confidentiality were directed to include with their filings a redacted copy of the Form 477 filing, in which competitively sensitive information was replaced by "xxxxxx." However, not all filers requesting confidential treatment provided redacted copies as instructed. For three of the eleven filing rounds in which redacted filings were required (June 2002, December 2002 and June 2003), WCB staff transferred redacted filings into a separate electronic database, but that database has not been updated to reflect any revised Form 477s that those providers may have submitted. The database also does not include Form 477 filings in which providers requested confidentiality but did not submit a redacted version of their submission. For the remaining eight filing rounds in which redacted filings were required, the redacted filings were never aggregated into a separate consolidated electronic database or dataset, and would have to be identified and incorporated into a consolidated database reflecting all updated redacted filings received.

39. With respect to the three filing rounds to date for which redacted filings were not required (the semiannual data after December 2004), as well as for earlier filers that failed to provide redacted copies with their filings, the FCC would not be able to determine independently the particular Form 477 data for which a filer requested confidentiality. FCC staff would thus have to contact each of the filers individually -- in the most recent June 2006 filing round alone, approximately 1,500 providers submitted approximately 5,000 Forms 477.

40. Identifying the situation where a filer did not request confidentiality using the Form 477 cover page check-box or separately request confidentiality, but where release of that filer's data could reveal information about other filers that did request confidential treatment, would also be particularly onerous. The FCC has no computer code written that would enable it to evaluate when company-specific data subject to confidentiality requests could become visible as a consequence of releasing company-specific data that is not subject to confidentiality requests, when both are incorporated in a published summary statistic.

41. FCC staff would thus have to develop and test special computer code to examine all Form 477 data incorporated into the summary statistics in the FCC's *High-Speed Services for Internet Access Report*s and *Local Telephone Competition Reports* for each of the past seven years. For the December 2005 Form 477 data alone, the FCC published in its *High-Speed Services for Internet Access Report* approximately 100 unique national-level summary statistics and over 500 unique state-level summary statistics of broadband line count information, as well as summary statistics of the number of broadband providers who had paying customers in each geographic ZIP Code. The FCC also published in its *Local Telephone Competition Report* approximately 30 unique national-level summary statistics and approximately 470 unique state-level summary statistics of telephone service information, as well as summary statistics regarding the number of competitive local exchange carriers who had paying customers in each ZIP Code.

42. Due to the expansive contours of plaintiff's FOIA request, the voluminous amount of Form 477 submissions received, the manner in which the FCC publishes and maintains the information, and WCB's staffing availability, the foregoing process would, at best estimate, take several months or more to complete.

43. Pursuant to 28 U.S.C. § 1746, I, Alan I. Feldman, declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of January, 2007.

_____
Alan I. Feldman