Exhibit 2 to
Intervenor-Defendants'
Memorandum In Support of
Summary Judgment

# Joint Verizon Declaration

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br><br>    Defendant. | Civil Action No. 06-01644 (RMC) |

### JOINT DECLARATION OF JOHN A. WIMSATT, LARRY J. ZEPPETELLA AND THOMAS Y. IKEGAMI

1. My name is John A. Wimsatt. My business address is One Verizon Way, Basking Ridge, New Jersey 07920. I am employed by Verizon as a Senior Vice President with responsibilities for Verizon Domestic Telecom's broadband product management and development. I am responsible for paragraphs 1, 4, 5, 6, 9, 11, 12, 13, 14 and 16 of this declaration.

2. My name is Larry J. Zeppetella. I am employed by Verizon Wireless as Associate Director- Finance. I work at 180 Washington Valley Road, Bedminster, New Jersey 07921. I have responsibility for overseeing the filing of the semiannual FCC 477 reports for Verizon Wireless. I have personal knowledge of efforts taken by Verizon Wireless to maintain the confidentiality of the information conveyed on those reports. I am responsible for paragraphs 2, 4, 5, 7, 9, 10, 11, 14, 15 and 16 of this declaration.

3. My name is Thomas Y. Ikegami. My business address is 6 Concourse Parkway, Atlanta, Georgia 30328. I am employed by Verizon Business as an Executive Director of Pricing and Portfolio Analysis for Verizon Business's broadband products. I am responsible for paragraphs 3, 4, 5, 8, 9, 11, 14 and 16 of this declaration.

4. The purpose of this declaration is to discuss the information Verizon Domestic Telecom, Verizon Wireless, and Verizon Business (collectively, "Verizon") disclose to the FCC in the semiannual Form 477, and to explain why the public disclosure of that information is likely to advantage competitors and result in substantial commercial harm to Verizon.

5. Pursuant to applicable FCC rules, Verizon makes Form 477 filings twice a year (on March 1 and September 1, reporting information as of December 31 and June 30, respectively). The cover page of Form 477 allows service providers to assert confidentiality under FCC rule 0.457(d)(1), which, in light of the sensitive nature of the information provided, Verizon routinely does. Service providers must file a separate Form 477 for each state in which they provide covered services. In addition, service providers must file separate forms for Incumbent Local Exchange Carrier ("ILEC") operations and non-ILEC operations.[1]

6. Verizon Domestic Telecom submits 30 Form 477 filings each reporting period for its ILEC operations – at least one each for 27 states plus the District of Columbia – as well as 14 filings for covered services provided by its Verizon Enhanced Communities subsidiary (previously, Verizon Avenue).

7. Verizon Wireless submitted 50 Form 477 filings in 2006 for the 49 states and the District of Columbia in which it offers broadband services and/or other mobile telephony services.

8. Verizon Business (and previously MCI, LLC) submits 51 Form 477 filings each reporting period for the covered services it provides in all 50 states plus the District of Columbia.

---

[1] *See* FCC Form 477, *available at* http://www.fcc.gov/Forms/Form477/477.xls. The ILEC in a given area is the carrier that historically has provided local telephone service in that area. For example, Verizon (formerly Bell Atlantic) is the ILEC in Washington, D.C.

9. Section I of Form 477 covers broadband. The form requires, first, disclosure of detailed information about broadband deployment, including (i) the total connections provided to end users at "broadband" speed (defined as exceeding 200 kilobits per second ("kbps") in at least one direction); (ii) the percentage of those connections provided to residential end user premises; (iii) the percentage of those connections provided over the service provider's own local loop facilities (or equivalent wireless facilities); (iv) the percentage of connections billed to end users; and (v) the percentage of connections provided to residential end user premises broken down by speed.[2] The preceding information must be provided not just for "broadband service" generally, but rather for each category of broadband technology, including asymmetric xDSL, symmetric xDSL, traditional high-capacity wireline technology, cable modem, optical carrier (fiber to the end user), satellite, terrestrial fixed wireless, terrestrial mobile wireless, electric power line, and "[a]ll other technologies" (any of which must be identified). Beginning with the 2005 submission, Part I.B. of the form requires ILECs, like many of Verizon Domestic Telecom's operating companies, to report the estimated percentage of residential end user premises to which broadband connections *could* be provided using existing last-mile facilities. In addition, Part V of the form requires all broadband service providers to list, by type of broadband connection, all 5-digit zip codes in which it provides broadband service.

10. Additional wireless information is collected in Part III of the form, which requires providers to disclose the number of subscribers served in each state as well as the percentage of those that are "directly billed" or served as "pre-paid subscribers."

---

[2] The relevant transfer rates for the fifth category are between 200 kbps and 2.5 Megabits per second ("Mbps") in the faster direction, between 2.5 Mbps and 10 Mbps in the faster direction, between 10 Mbps and 25 Mbps in the faster direction, between 25 Mbps and 100 Mbps in the faster direction, and exceeding 100 Mbps in the faster direction.

11. The Form 477 filings Verizon has submitted to the FCC include competitively sensitive information that Verizon does not customarily release outside the company and that Verizon maintains on a confidential basis. The public disclosure of that information would cause Verizon substantial competitive harm.

12. In the broadband market, for example, the information filed by Verizon's ILEC operations provide an exceptionally detailed picture of precisely what type of service Verizon is providing where, and the level of success it is enjoying. Thus, a competitor could learn where Verizon is relying on new, fiber-to-the-premises technology, and where, by contrast, it continues to rely on DSL service provided over traditional copper loops. This information concerning the areas of Verizon's fiber deployment could signal where Verizon is preparing new marketing strategies, such as bundled offerings of voice, data and video services.

13. The competitive significance of this information cannot be overstated. Broadband is the future of Verizon's business. Broadband is required to support new communications applications that consumers desire, such as fast Web surfing, on-line gaming and shopping, and video delivery, as well as future applications that have not yet been developed. Broadband also enables voice-over-Internet telephone services, which can be more efficient and reliable than traditional phone service and offer additional features such as remote access. Although Verizon's broadband services are growing quickly, Verizon faces stiff competition in broadband, particularly from cable providers. To compete against them, Verizon is deploying its new fiber-optic network that will enable it to offer not only state-of-the-art telephone and Internet access services, but also subscription television services and other video programming that provides an alternative to traditional cable television. The pace and pattern of Verizon's roll-out of this new network are apparent from the Form 477 information Verizon has filed with the FCC, as are

4

details regarding its commercial success. If competitors are able to gain an unfair competitive advantage by obtaining such a detailed picture of Verizon's strategies and successes, they will be able to anticipate Verizon's moves and protect themselves against competition from Verizon in a targeted way, without engaging in the same business-wide price reductions and service improvements that they would have to make if they were competing without inside information. And that, in turn, would cause Verizon substantial competitive harm in this vitally important area.

14. The data submitted on Form 477 could also permit a competitor to learn whether and the extent to which Verizon has deployed other technologies and the commercial success of those technologies. Likewise, a competitor could learn where consumer demand is greatest for each particular flavor of broadband Verizon has deployed, and, depending on the services provided and demand for those services, the demand for speed-sensitive applications and services, such as video on demand. And a competitor could learn what Verizon's addressable market is in each state it serves.

15. The confidential wireless information Verizon Wireless submits on the Form 477 is also competitively sensitive. The wireless industry is extremely competitive. The subscriber numbers reported on the Form 477 identify the states in which Verizon Wireless has signed up the most customers, in addition to the states in which it has achieved more limited success. Together with information from other sources, this subscribership data can reveal the relative success of Verizon Wireless's various marketing strategies, thus enabling competitors to better respond to Verizon Wireless's efforts in the future. This information is likewise confidential and could be used by competitors to better formulate their business plans and marketing strategies, to the harm of Verizon Wireless.

16. Indeed, all of the information described above is valuable to competitors, and its disclosure, therefore, would be damaging to Verizon if disclosed. The telecommunications industry is capital intensive and it is very competitive. To succeed in the marketplace, carriers must be able to anticipate demand and deploy facilities appropriately. Knowing where a competitor is deploying advanced technologies would enable a competitor of Verizon to re-allocate its investment to target areas in which Verizon is focusing, or not focusing, its investment. This information will therefore be of great competitive – and financial – value to Verizon's competitors. Verizon puts extraordinary care into determining where it will deploy and market particular technologies and particular services to get a jump on the competition. Public disclosure of the Form 477 would compromise these efforts by permitting other competitors an advanced look at Verizon's plans, and would permit them to free-ride on Verizon's efforts and to develop business plans specifically based on Verizon's deployment plan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

January 2, 2007

_____
John A. Wimsatt

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

January 5, 2007

Larry J. Zeppetella

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

January 5, 2007

_____
Thomas Y. Ikegami