**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ )<br>CENTER FOR PUBLIC INTEGRITY )<br>910 17th Street, N.W., 7th Floor )<br>Washington, D.C. 20006-2606 )<br>         *Plaintiff,* )<br>          )<br>       v. )<br>          )<br>FEDERAL COMMUNICATIONS )<br>COMMISSION )<br>445 12th Street, S.W. )<br>Washington, D.C. 20554-0005 )<br>         *Defendant.* )<br>_____ ) | Civil Action No. 06-1644 (ESH) |

**BRIEF OF THE NATIONAL CABLE & TELECOMMUNICATIONS ASSOCIATION AS
*AMICUS CURIAE* IN SUPPORT OF DEFENDANT FEDERAL COMMUNICATIONS
COMMISSION'S MOTION FOR SUMMARY JUDGMENT**

Neal M. Goldberg (D.C. Bar #188847)<br>
Counsel for the National Cable &<br>
  Telecommunications Association<br>
25 Massachusetts Avenue, NW – Suite 100<br>
Washington, D.C. 20001-1431<br>
(202) 222-2445 – Phone<br>
(202) 222-2446 – Facsimile

January 26, 2007

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF INTEREST OF AMICUS ...........................................................1

PROCEDURAL AND FACTUAL BACKGROUND...............................................3

STANDARD OF REVIEW ........................................................................................5

DISCUSSION ..............................................................................................................6

    A.    Commercial or Financial Information. .........................................................6

    B.    Information Obtained From a Person. ..........................................................6

    C.    Privileged or Confidential Information........................................................7

        1.    Disclosure of Form 477 data is likely to cause substantial harm to the competitive position of NCTA's members. ................................7

        2.    Disclosure of Form 477 data would impair the Government's ability to obtain necessary information in the future. .....................10

CONCLUSION.........................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**

*Allnet Communication Services, Inc. v. FCC*, 800 F. Supp. 984, 988 (D.D.C. 1992)….6, 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)………………………………5

*Earthlink, Inc. v. FCC*, 462 F. 3d 1, 11-12 (D.C. Cir. 2006)………………………….....8

*Gilda Industries, Inc. v. United States Customers & Border Protection Bureau*,
457 F. Supp. 2d 6 (D.D.C. 2006)……………………………………………………...7, 10

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000)……..6

*Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1081 (9th Cir. 2004)………..………………..9

*National Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)*…………..5

*National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770
(D.C. Cir. 1974)………………………………………………………………………..6, 7

*Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290
(D.C. Cir. 1983)………………………………………………………………………..6, 7

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 709 (D.C. Cir. 1971)………………………….9

*Trans Union LLC v. Federal Trade Commission*, 141 F. Supp. 2d 62, 67 (D.D.C.
2001)…..........................................................................................................................5

*Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980)…………………..5

**FCC MATERIAL**

*Appropriate Framework for Broadband Access to the Internet over Wireline
Facilities*, 20 FCC Rcd 14853, 14856 (2005)………………………………………….8

*Comcast Cable Communications, Inc.; Request for Confidentiality for Information
Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12165, 12167 (2004)................9

*Cox Communications, Inc.; Request for Confidentiality for Information Submitted on
Forms 325 for the Year 2003*, 19 FCC Rcd 12160, 12162 (2004)………..……………9

*Federal Communications Commission Releases Data on High-Speed Services for
Internet Access*, 2006 WL 2080703 (Wireline Competition Bureau, July 2006)…………7

*Local Competition and Broadband Reporting*, CC Docket No. 99-30, Report and Order, 15 FCC Rcd 7717, 7718-19 (2000) ……………….………………3, 4, 8, 10, 11

*Lakin Law Firm, P.C.*, 19 FCC Rcd 12727 (2004)……………………………………….9

*Time Warner Cable; Request for Confidentiality for Information Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12170, 12172 (2004)………..………………………9

**STATUTES**

5 U.S.C. § 551(2)………………………………………………………………………….6

5 U.S.C. § 552(b)(4)…………………………………………………………………….... 6

**RULES**

Fed. R. Civ. P. 56(c)…………………………………………………………………..……..5

47 C.F.R. § 1.7001……………………………………………………………………….....3

47 C.F.R. § 1.7002………………………………………………………………………....3

47 C.F.R. §§ 43.11………………………………………………………………………....3

# INTRODUCTION

The Federal Communications Commission (FCC) requires all providers of local telephone, wireless, and broadband Internet service to file Form 477 on a semi-annual basis. Companies must file one form for each state in which they operate, and on each form they must provide detailed information regarding the services that they provide, including the number of customers served, the technologies used to serve those customers, and the Zip Codes in which they provide service.

The information that companies provide to the FCC on Form 477 is far more comprehensive and detailed than the information companies make publicly available and, as a result, it would be highly valuable to competitors. Because this information is competitively sensitive, the FCC has recognized the importance of preserving its confidentiality, both by allowing companies filing Form 477 to request confidential treatment of the data and, in this case, by refusing to disclose the data in response to a Freedom of Information Act (FOIA) request from the Center for Public Integrity (Plaintiff).

The National Cable & Telecommunications Association (NCTA) is the principal trade association for the cable television industry. NCTA's members are required by the FCC to file Form 477, and they would be harmed by release of that data to the Plaintiff and Plaintiff's disclosure of that data to the public. The FOIA specifically permits the FCC to preserve the confidentiality of data of the type submitted on Form 477, and the court should affirm the FCC's decision to do so in this case.

## STATEMENT OF INTEREST OF AMICUS

NCTA represents cable operators serving more than 90 percent of the nation's cable television households and more than 200 cable program networks. The cable industry is the nation's largest broadband provider of high-speed Internet access after investing more than $100

billion over ten years to build a two-way interactive network with fiber optic technology. In addition to video and Internet services, many cable operators also provide voice services over their networks and some cable operators also are testing the provision of various services using wireless technology.

Cable operators face intense competition for all these services, particularly from telephone companies. With respect to the broadband services covered by the Form 477 filing requirements, cable operators and telephone companies compete aggressively for new and existing Internet customers. In addition, a variety of new technologies have emerged for access the Internet, including wireless, satellite, and broadband over power line (BPL). All of these competing companies continually look for a competitive advantage over the others by upgrading facilities, adding services and capabilities, and changing the packaging and pricing of their services.

Given the level of competition that exists for broadband services, detailed information regarding the capabilities of a cable operator's network or the success of any particular service offering is not generally disclosed at the detailed level required by Form 477. If such information were made public, it undoubtedly would be used by competitors in developing their own strategies to compete with cable operators. Such information would be valuable in providing both a snapshot of a cable operator's network and services at a given point in time and, by looking at changes over time, a roadmap to strategic decisions made over a period of years.

This is precisely the information sought by the Plaintiff in this case. It seeks public disclosure of all the confidential information submitted by cable operators in the seven years that the Commission has collected Form 477 data. NCTA's members will therefore be directly

2

affected by the outcome of this litigation and NCTA has a substantial interest in participating in this case to protect its members from forced disclosure of this confidential information.

## PROCEDURAL AND FACTUAL BACKGROUND

The Form 477 Requirement. The FCC requires all providers of communications services to file Form 477 on a semi-annual basis. *See* 47 C.F.R. §§ 1.7001, 1.7002; *see also* Declaration of Alan I. Feldman in Support of Defendant's Motion for Summary Judgment (Feldman Declaration) at Attachment E (Form 477). The FCC first implemented this requirement in 2000 for the purpose of gathering information regarding two issues relevant to communications policy – the development of local telephone service competition and the deployment of broadband services. *See Local Competition and Broadband Reporting*, CC Docket No. 99-30, Report and Order, 15 FCC Rcd 7717, 7718-19, ¶¶ 1-2 (2000) (*2000 Data Gathering Order*). Providers of these services must submit one form for each state in which they operate. Filing of Form 477 is mandatory and failure to file could lead to enforcement action by the FCC. *See* 47 C.F.R. §§ 1.7001, 43.11.

With respect to broadband services, providers must report the total number of connections they provide to end users for various types of broadband technology. *See* FCC Form 477, Part I. The FCC also requires broadband providers to identify the percentage of such connections that are provided to residential customers and the percentage that are provided at various different data speeds. *Id*. In addition, broadband providers must identify each Zip Code in which they provide broadband service. *Id*.

With respect to local telephone services, the FCC requires providers to report the total number of lines provided to end users, the percentage provided to residential customers, and the percentage that use various technologies and business arrangements. *See* FCC Form 477, Part II.

As with broadband service, companies also must submit a list of every Zip Code in which they provide local telephone service. *Id*.

The FCC recognized when it adopted the Form 477 reporting requirement that it was requiring companies to routinely provide competitively sensitive information. *2000 Data Gathering Order*, 15 FCC Rcd at 7758-59, ¶¶ 87-90. Consequently, anticipating that many companies would seek confidential treatment of the data that would be required on an ongoing basis, the FCC established a streamlined process by which a provider could request confidential treatment simply by checking a box on the first page of the form. *Id.* at 7759, ¶ 90.

Plaintiff's FOIA Request. On August 24, 2006, Plaintiff sent a FOIA request to the FCC's Public Liaison seeking "all records collected with FCC Form 477" and "[a]ll documentation associated with [those records]." Complaint at ¶ 8. On September 25, 2006, Plaintiff filed the instant complaint against the FCC seeking the same records.

One day after Plaintiff filed its complaint with the Court, the FCC's Wireline Competition Bureau (Bureau) issued a letter denying Plaintiff's FOIA request. *See* Feldman Declaration at Attachment B.[1] The Bureau explained that "the requested records contain commercially sensitive, competitive information and that release would cause harm to the entities that submitted the requested information. Bureau Letter at 2. Based on that finding, the Bureau concluded that the requested information was protected from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4), and it denied Plaintiff's request. *Id*.

On December 15, 2006, the FCC issued a Public Notice advising interested parties of the pending litigation. *See Public Notice to Service Providers Who Filed FCC Form 477s With the*

---

[1] As the FCC explained in its Motion, the Bureau's response was timely and the Plaintiff's complaint was premature. *See* FCC Motion at 3 n.1. On October 19, 2006, Plaintiff appealed the Bureau's denial letter to the FCC. The FCC has not issued an order addressing Plaintiff's appeal and, as a result, the FCC states that Plaintiff has constructively exhausted its administrative remedies. *Id*. at 4-5.

4

*Commission and Sought Confidential Treatment of the Information Submitted*, 2006 WL 3718302 (FCC 2006). This was the first time any party that files Form 477 had notice of the Plaintiff's request to the FCC and its complaint in this Court.

On January 8, 2006, the FCC filed a Motion for Summary Judgment (FCC Motion) and a supporting Statement of Material Facts Not in Genuine Dispute (FCC Statement). Intervenors AT&T, Verizon, and United States Telecom Association also moved for summary judgment and CTIA – The Wireless Association filed an *amicus curiae* brief in support of the FCC.

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the FOIA context, an agency is entitled to summary judgment if it demonstrates that there are no material facts in dispute and that each document that falls within the class requested either: (1) has been produced; (2) is unidentifiable; or (3) is exempt from disclosure. *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *National Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).

Summary judgment may be awarded to the agency solely on the basis of affidavits or declarations "when the affidavits describe 'the documents and the justifications for the nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Trans Union LLC v. Federal Trade Commission*, 141 F. Supp. 62, 67 (D.D.C. 2001) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

5

**DISCUSSION**

The FCC has satisfied the standards for summary judgment in this case. It has shown that every document requested is exempt from disclosure pursuant to FOIA Exemption 4. That exemption protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). To qualify for protection under FOIA Exemption 4, information must be: (1) commercial or financial; (2) obtained from a person; and (3) privileged or confidential. *See, e.g.*, *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citing *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974).

**A.    Commercial or Financial Information.**

For purposes of FOIA Exemption 4, the terms "commercial" and "financial" are given their ordinary meanings. *See Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (citing *Public Citizen Health Research Group v. FDA*, 704 F.2d at 1290). Records are considered to be "commercial" so long as the submitter has a "commercial interest" in them. *Id*. The information that companies provide to the FCC in the Form 477 unquestionably constitutes information that is of a commercial interest to those companies.

**B.    Information Obtained From a Person.**

Information is "obtained from a person" for purposes of FOIA Exemption 4 if it was submitted by a "partnership, corporation, association, or public or private organization other than an agency." See 5 U.S.C. § 551(2); *Allnet Communication Services, Inc. v. FCC*, 800 F. Supp. 984, 988 (D.D.C. 1992). Companies that submit data to the FCC on Form 477, including NCTA's members, qualify as "persons" under this provision.

C.  **Privileged or Confidential Information.**

When the federal government requires a party to provide information, the information is considered confidential for purposes of FOIA Exemption 4 if its disclosure is likely to "cause substantial harm to the competitive position of the person from whom the information was obtained" or "impair the Government's ability to obtain necessary information in the future." *Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 903 (D.C. Cir. 1999) (quoting *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). In this case, both tests are satisfied.

1.  **Disclosure of Form 477 data is likely to cause substantial harm to the competitive position of NCTA's members.**

Under the competitive harm prong of the *National Parks* test, information is exempt from disclosure if there is a showing of "actual competition" and a "likelihood of substantial competitive injury." *See, e.g., Gilda Industries, Inc. v. United States Customers & Border Protection Bureau*, 457 F. Supp. 2d 6, 9 (D.D.C. 2006); *Allnet*, 800 F.Supp. at 988.

There can be no doubt that "actual competition" exists among providers of broadband services. Cable operators were the first to offer broadband Internet access to residential customers with cable modem service. Telephone companies soon followed with Digital Subscriber Line (DSL) service and, in some locations, they are upgrading their networks to provide fiber-to-the-premises technology. According to the most recent data from the FCC, broadband service is now available to 78 percent of households served by telephone companies and 93 percent of households served by cable operators. *See Federal Communications Commission Releases Data on High-Speed Services for Internet Access*, 2006 WL 2080703 (Wireline Competition Bureau, July 2006). Thus, most consumers have at least two options for broadband service.

7

In addition to the intense competition that exists between cable operators and telephone companies, many companies are now using satellite and wireless technology to provide additional choices for consumers. As the FCC has stated, "the record before us demonstrates that the broadband Internet access market today is characterized by several emerging platforms and providers, both intermodal and intramodal, in most areas of the country." *Appropriate Framework for Broadband Access to the Internet over Wireline Facilities*, 20 FCC Rcd 14853, 14856, ¶ 3 (2005); *see also Earthlink, Inc. v. FCC*, 462 F. 3d 1, 11-12 (D.C. Cir. 2006).

Because there is so much competition among Internet service providers, from so many types of competitors, disclosure of the data filed on Form 477 likely would cause substantial competitive injury to NCTA's members. For example, while cable operators traditionally have focused on residential customers, many operators are trying to expand into the commercial market for Internet and telephone services, which has in the past been dominated by telephone companies. *See, e.g.,* Peter Grant, *Cable Firms Woo Business In Fight For Telecom Turf*, Wall Street Journal (January 17, 2007). Public disclosure of the Form 477 data filed by a cable operator would help its competitors determine which areas the cable operator was targeting and the success of its commercial offerings. As the FCC recognized when it first implemented the Form 477 requirement, competitors with access to this data could "tailor market strategies to quash nascent competition, protect areas that are being subjected to increased competition, or deploy facilities to defend strongholds." *2000 Data Gathering Order*, 15 FCC Rcd at 7758, ¶ 88.

The FCC has recognized the commercially sensitive nature of the Form 477 data ever since it first adopted the reporting requirement. *See 2000 Data Gathering Order*, 15 FCC Rcd at 7759, ¶ 90. To request confidentiality, a provider need only check a box on the cover page of the

8

form.  The FCC adopted this streamlined approach because it properly anticipated that many companies would have reason to seek confidential treatment of the data they reported.  *Id*.  According to the FCC, 74 percent of filers exercise this option.  FCC Motion at 11; FCC Statement at ¶ 64.

The FCC's confidentiality policy with respect to the data submitted on Form 477 is fully consistent with its efforts to obtain competitively sensitive information from companies in order to fulfill its responsibilities under the Communications Act.  The FCC has held, for example, that subscriber counts collected from cable operators in connection with other annual reporting requirements should be accorded confidential treatment.  *See, e.g., Cox Communications, Inc.; Request for Confidentiality for Information Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12160, 12162, ¶ 8 (2004), *recon. granted in part*, 21 FCC Rcd 2309 (2006); *Comcast Cable Communications, Inc.; Request for Confidentiality for Information Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12165, 12167, ¶ 8 (2004); *Time Warner Cable; Request for Confidentiality for Information Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12170, 12172, ¶ 7 (2004).  Similarly, the FCC does not publicly disclose company-specific information regarding contributions made to federal universal service support mechanisms because that information could be used by competitors to the disadvantage of the company submitting the information.  *See Lakin Law Firm, P.C.*, 19 FCC Rcd 12727, 12729-30, ¶¶ 6-7 (2004).

The courts also have recognized the need for confidential treatment of this type of detailed data regarding a company's business.  *See, e.g., Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1081 (9th Cir. 2004) (type and volume of products sold); *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 709 (D.C. Cir. 1971) (market share and sales statistics).  As this court found, if "a competitor could use the information to gain a competitive advantage," it follows that

9

"disclosure of this information would likely cause substantial competitive injury to the companies that submitted the information." *Gilda Industries, supra*, 457 F. Supp. 2d at 11.

### 2. Disclosure of Form 477 data would impair the Government's ability to obtain necessary information in the future.

The FCC established the Form 477 reporting requirement in 2000 for the purpose of gathering data on the development of local telephone competition and deployment of broadband services. The FCC uses the data collected as the basis for annual reports on these topics. FCC Motion at 8; FCC Statement at ¶ 28. The FCC has stated that obtaining Form 477 data is critical to its "ability to develop, evaluate, and revise policy." *2000 Data Gathering Order*, 15 FCC Rcd at 7718, ¶ 1.

Because of the significance of the reported information to the FCC, cable operators expend considerable time and effort to ensure that they report complete and accurate information on the Form 477. As explained by the FCC, service providers would be more reluctant to undertake the same degree of effort in preparing the reports if doing so would cause detailed and proprietary data regarding their business strategies and operations to be revealed to competitors. FCC Motion at 20; FCC Statement at ¶ 50; *see also 2000 Data Gathering Order*, 15 FCC Rcd at 7759, ¶ 90 (streamlined procedures for requesting confidentiality "will lead to a greater level of compliance with this information collection and will give providers confidence that protectible data will not be published."). Moreover, because the FCC itself recognizes that the disclosure of the information requested by Form 477 would "betray[] the competitive interests of its regulatees," FCC Motion at 21, it might choose to request less specific information than it does today if it were not able to keep that data confidential.

If companies choose to provide, or the FCC chooses to require, less complete information than is presently collected, the resulting FCC reports would not be as useful as they are today.

Accordingly, there is strong governmental interest in protecting the confidentiality of information submitted on Form 477.

## CONCLUSION

For the foregoing reasons, the Court should grant the FCC's motion for summary judgment.

                                        Respectfully submitted,

                                        **/s/ Neal M. Goldberg**

                                        Neal M. Goldberg (D.C. Bar #188847)
                                        Counsel for the National Cable &
                                              Telecommunications Association
                                        25 Massachusetts Avenue, NW – Suite 100
                                        Washington, D.C.  20001-1431
                                        (202) 222-2445 – Phone
                                        (202) 222-2446 – Facsimile

January 26, 2007