**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR PUBLIC INTEGRITY,

      Plaintiff,

      v.

FEDERAL COMMUNICATIONS
COMMISSION,

      Defendant.

Civil Action No. 06-01644 (RMC)

**MOTION FOR SUMMARY JUDGMENT OF INTERVENOR-DEFENDANTS AT&T INC., VERIZON, AND THE UNITED STATES TELECOM ASSOCIATION**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7(h) and 56.1, Intervenor-Defendants AT&T Inc., Verizon, and the United States Telecom Association (collectively, "Intervenors"), move for summary judgment on the sole claim of plaintiff Center for Public Integrity.

Plaintiff's Complaint seeks access pursuant to the Freedom of Information Act ("FOIA") to the semiannual "Form 477" reports that broadband, local telephony, and wireless service providers are required to file with the Federal Communications Commission ("FCC"). Those reports contain confidential, competitively sensitive information that providers have submitted to the FCC based on the agency's assurances of confidentiality. Disclosure of the confidential information included on that form would likely cause substantial competitive harm to the Intervenors and impede the FCC's efforts to gather data in the future. As the FCC held, that information is therefore exempted from disclosure pursuant to FOIA Exemption 4, which protects "matters that are . . . trade secrets and confidential or financial information obtained

from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Plaintiff's attempt to gain

access to that data must therefore fail.

Pursuant to Local Rules 7(a) and 7(c), a memorandum in support with accompanying

declarations, a statement of undisputed facts, and a proposed order granting summary judgment

are attached.

Respectfully submitted,

/s/ Colin S. Stretch
_____

James P. Lamoureux (D.C. Bar No. 431631)    Colin S. Stretch (D.C. Bar No. 470193)
AT&T INC.                                    KELLOGG, HUBER, HANSEN, TODD,
1120 20th Street, N.W.                          EVANS & FIGEL, P.L.L.C.
Washington, D.C. 20036                       1615 M Street, N.W., Suite 400
*Counsel for AT&T Inc.*                       Washington, D.C. 20036
                                             Telephone: (202) 326-7900
Michael E. Glover                            Facsimile: (202) 326-7999
Edward Shakin (D.C. Bar No. 450495)          *Counsel for AT&T Inc., Verizon, and the*
William H. Johnson (D.C. Bar No. 481876)     *United States Telecom Association*
VERIZON
1515 North Courthouse Road, Suite 500        James W. Olson (D.C. Bar No. 923169)
Arlington, Virginia 22201                    UNITED STATES TELECOM ASSOCIATION
(703) 351-3099                               607 14th Street, N.W., Suite 400
*Counsel for Verizon*                         Washington, D.C. 20005-2164
                                             (202) 326-7300
                                             *Counsel for United States Telecom*
                                             *Association*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR PUBLIC INTEGRITY,

      Plaintiff,

      v.

FEDERAL COMMUNICATIONS
COMMISSION,

      Defendant.

Civil Action No. 06-01644 (RMC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF INTERVENOR-DEFENDANTS AT&T INC., VERIZON, AND
THE UNITED STATES TELECOM ASSOCIATION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION AND SUMMARY ...........................................................................................1

BACKGROUND ...........................................................................................................................3

      A.      The Form 477 Reporting Requirement ....................................................................3

      B.      Plaintiff's FOIA Request ........................................................................................6

ARGUMENT .................................................................................................................................8

THE RECORDS SOUGHT BY PLAINTIFF ARE EXEMPT FROM DISCLOSURE
PURSUANT TO FOIA EXEMPTION 4 ........................................................................................8

      A.      The Records Sought are Commercial ......................................................................9

      B.      The Records Sought Were Obtained from a "Person" ...........................................10

      C.      The Records Sought are "Confidential" ................................................................10

             1.      Disclosure is Likely to Cause Substantial Harm to the Competitive
                   Position of the Intervenors .........................................................................11

             2.      Disclosure Would Impair the FCC's Ability To Obtain Information
                   in the Future ...............................................................................................15

      D.      The FCC Has Consistently Treated the Information at Issue as Confidential .......16

CONCLUSION ............................................................................................................................17

EXHIBITS:

1:      Joint AT&T Declaration
2:      Joint Verizon Declaration
3:      North Pittsburgh Tel. Co. Declaration
4:      Declaration of Colin S. Stretch

# TABLE OF AUTHORITIES

Page

**Cases**

*Ackerly v. Ley*, 420 F.2d 1336 (D.C. Cir. 1969) ............................................................17

*Air Line Pilots Assoc. Int'l v. FAA*, 552 F. Supp. 811 (D.D.C. 1982) ...........................14

*Amway Corp. v. FTC*, Civ. No. 75-1274, 1976 U.S. Dist. LEXIS 16207 (D.D.C. Mar. 10, 1976) ................................................................................................................14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................8

*Blackwell v. EEOC*, No. 2:98-CV-38-BO(2), 1999 U.S. Dist. LEXIS 3708 (E.D.N.C. Feb. 12, 1999) ...................................................................................................2

*Boyes v. DOE*, Civ. No. 03-1756, 2005 U.S. Dist. LEXIS 4452 (D.D.C. Mar. 16, 2005) ..............9

*CAN Fin. Corp. v. Donovan*, 830 F.2d 1132 (D.C. Cir. 1987) .......................................11

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871 (D.C. Cir. 1992) .............................................................................................................10, 15

*EarthLink, Inc. v. FCC*, 462 F.3d 1 (D.C. Cir. 2006) ....................................................11

*Gilda Indus., Inc. v. United States Customs & Border Prot. Bureau*, Civ. No. 04-1648, 2006 U.S. Dist. LEXIS 75787 (D.D.C. Oct. 19, 2006) ................................2, 9, 11, 13, 14

*Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*, 425 F.2d 578 (D.C. Cir. 1970) .................10

*Heeney v. FDA*, 7 Fed. Appx. 770 (9th Cir. 2001) .......................................................14

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000) ...........................9

*Judicial Watch, Inc. v. FBI*, Civ. No. 01-1216 (D.D.C. July 26, 2002) ...........................................2

*Judicial Watch, Inc. v. United States Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002) ...........................................................................................................2

*Lion Raisins, Inc. v. USDA*, 354 F.3d 1072 (9th Cir. 2004) ...........................................14

*Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) .....................................9

*Minnesota v. DOE*, No. 4-81-434, 1982 U.S. Dist. LEXIS 18390 (D. Minn. 1982) .....................14

*National Cmty. Reinvestment Coalition v. National Credit Union Admin.*, 290 F. Supp. 2d 124 (D.D.C. 2003) ........................................................................14

*National Parks & Conservation Ass'n v. Morton*, 478 F.2d 765 (D.C. Cir. 1974) ................10, 11

*Oglesby v. Department of the Army*, 920 F.2d 57 (D.C. Cir. 1990) ................................................8

*Public Citizen Health Research Group v. FDA*, 704 F.2d 1280 (D.C. Cir. 1983) ........................9

*Timken Co. v. United States Customs Serv.*, 491 F. Supp. 557 (D.D.C. 1980) ............................14

*Trans Union LLC v. FTC*, 141 F. Supp. 2d 62 (D.D.C. 2001) ......................................................9

*United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004) ..........................................4

*Westinghouse Electric Corp. v. Schlesinger*, 392 F. Supp. 1246 (D. Va. 1974), *aff'd*, 542 F.2d 1190 (4th Cir. 1976) ........................................................................13

**Administrative Authorities**

Ninth Report, *Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services*, 19 FCC Rcd 20597 (2004)..............................12

Order, *Comcast Cable Communications, Inc.; Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12165 (2004) ..........................16

Order, *Cox Communications, Inc.; Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12160 (2004) ................................................16

Order, *Time Warner Cable; Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12170 (2004)..................................................................16

Order Concerning Protective Order, *News Corp., General Motors Corp., and Hughes Elecs. Corp.*, 18 FCC Rcd 15198 (2003) ........................................................................17

Report and Order, *Local Telephone Competition and Broadband Reporting*, 15 FCC Rcd 7717 (2000) .................................................................................................. *passim*

Report and Order, *Local Telephone Competition and Broadband Reporting*, 19 FCC Rcd 22340 (2004).................................................................................................5, 6, 12

Report and Order and Notice of Proposed Rulemaking, *Appropriate Framework for Broadband Access to the Internet over Wireline Facilities*, 20 FCC Rcd 14853 (2005), *petitions for review pending*, *Time Warner Telecom Inc. v. FCC*, Nos. 05-4769 *et al.* (3d Cir.)........................................................................................................11

**Statutes, Rules and Regulations**

5 U.S.C. § 551(2) ...................................................................................................10

5 U.S.C. § 552(b)(4) ..............................................................................................7, 9

5 U.S.C. § 552 et seq. ...............................................................................................1

5 U.S.C. § 552(a)(6)(C) ............................................................................................8

47 U.S.C. § 157 note ...............................................................................................15

47 U.S.C. § 220 ......................................................................................................5, 8

47 U.S.C. § 220(a)(1) ................................................................................................3

47 U.S.C. § 251(c)(3) ................................................................................................4

7 C.F.R. § 0.457(d)(1) .........................................................................................5. 6, 8

47 C.F.R. § 0.457(d)(1)(iii) ....................................................................................5, 8

47 C.F.R. § 0.457(e) ..................................................................................................8

47 C.F.R. § 0.461(c) ..............................................................................................5, 6

47 C.F.R.  § 0.461(d)(1) .........................................................................................5, 7

47 C.F.R.  § 0.461(f)(4) .............................................................................................6

47 C.F.R. § 0.461(g) ..................................................................................................7

47 C.F.R. § 0.461(j) ...................................................................................................8

47 C.F.R. § 0.461(k) ..................................................................................................8

Fed. R. Civ. P. 15(d) ...............................................................................................17

Fed. R. Civ. P. 56 ......................................................................................................1

Fed. R. Civ. P. 56(c) .................................................................................................8

**Other Materials**

Jason Armstrong, *et al.*, Goldman Sachs Group, Inc., *2006 Outlook — Stuck in Neutral*
(Jan. 13, 2006) ................................................................................................11

FCC, Local Telephone Competition and Broadband Deployment Reports, *available at*
http://www.fcc.gov/wcb/iatd/comp.html ............................................................6

Ind. Anal. & Tech. Div., WCB, FCC, *Local Telephone Competition:  Status as of
December 31, 2005* (July 2006)........................................................................11

Craig Moffett, *et al.*, Bernstein Research, *Quarterly VoIP Monitor:  Playing Follow the
Leader (. . . Cablevision, That Is)* (Sept. 20, 2006) ..........................................11

Vonage Press Release, *Vonage Holdings Corp. Reports Third Quarter 2006 Results* (Oct.
31, 2006), *available at* http://ir.vonage.com/releasedetail.cfm?ReleaseID=216605.........12

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7(h) and 56.1, Intervenor-Defendants AT&T Inc., Verizon,[1] and the United States Telecom Association (collectively, "Intervenors") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## INTRODUCTION AND SUMMARY

The filing requirement at issue in this case — the Federal Communications Commission's ("FCC's" or "Commission's") Form 477 — is notable for both its breadth and its granularity. It applies to providers of broadband, local telephony, and wireless, all of which must detail, on a semiannual basis, how many customers they are serving in each state, what technologies they are using to serve those customers, and whether they are serving those customers directly or through a wholesale arrangement. The information garnered through this filing requirement that is not otherwise publicly available paints an exceptionally detailed picture of each provider's business, and it is therefore highly confidential and competitively sensitive. Yet, in reliance on the FCC's express and repeated assurances of confidentiality, Intervenors have dutifully filed that information with the agency.

Now, however, invoking the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, plaintiff Center for Public Integrity ("Center") seeks public disclosure of *all* of this information — including, in particular, information regarding what specific technologies broadband providers are using to compete in individual zip codes.[2]

---

[1] Verizon includes (1) the regulated, wholly owned subsidiaries of Verizon Communications Inc. and (2) Cellco Partnership d/b/a Verizon Wireless, a joint venture between Verizon Communications Inc. and Vodafone Group PLC.

[2] *See* Compl. ¶ 3 (filed Sept. 25, 2006).

Plaintiff's effort to gain access to such confidential, competitively sensitive information must fail. As the FCC found, FOIA Exemption 4 — which protects from disclosure confidential commercial information — is squarely applicable here. The data submitted in Form 477 and encompassed in plaintiff's request would, if disclosed publicly, provide competitors concrete insight into the facilities deployment and marketing successes of all providers of broadband, local telephony, and wireless services. That information could and almost certainly would be used to compete unfairly — to target facilities deployment or marketing strategies in response to a competitor, or to free-ride on the carefully calculated deployment decisions of carriers that have invested heavily in these areas and have spent years honing their business plans. In short, as this Court recently concluded in comparable circumstances, the "competitive advantage" obtained by competitors' access to such information "would likely cause substantial competitive injury to the companies that submitted the information."[3] For this reason, and because, as the FCC has explained, disclosure could impede the FCC's efforts to obtain accurate and complete data from service providers in the future, the information at issue is protected from disclosure under Exemption 4.[4]

---

[3] *Gilda Indus., Inc. v. United States Customs & Border Prot. Bureau*, Civ. No. 04-1648, 2006 U.S. Dist. LEXIS 75787, at *14 (D.D.C. Oct. 19, 2006).

[4] The Center's Complaint also fails as premature. The 20-day period for an agency to respond to a FOIA request runs from the time "the request is received by the appropriate office and officer in the agency, as set forth in the agency's published regulations." *Blackwell v. EEOC*, No. 2:98-CV-38-BO(2), 1999 U.S. Dist. LEXIS 3708, at *6 (E.D.N.C. Feb. 12, 1999). Because the Center's request was addressed to the wrong office within the FCC, it was rerouted and deemed received for FOIA purposes on August 29, 2006. *See infra* page 7 & nn.26-27. The FCC had 20 working days from that date — until September 27, 2006 — to respond. The Center filed suit on September 25, 2006, prior to the expiration of the FCC's 20-day response period and, indeed, prior to the agency's initial decision on the request. For this reason, the Complaint should be dismissed, *see Judicial Watch, Inc. v. FBI*, Civ. No. 01-1216, slip op. at 8 (D.D.C. July 26, 2002) (attached hereto as Stretch Decl. Exh. E), or, at the very least, supplemented under Fed. R. Civ. P. 15(d), *see Judicial Watch, Inc. v. United States Dep't of Energy*, 191 F. Supp. 2d 138, 139 (D.D.C. 2002) (permitting plaintiff to rectify premature filing by filing supplemental complaint under Rule 15(d)).

**BACKGROUND**

**A.     The Form 477 Reporting Requirement**

**1.**      The FCC adopted Form 477 as a reporting requirement in March 2000,[5] pursuant

to its statutory authority to "prescribe the forms of any and all accounts, records, and memoranda

to be kept by carriers."[6]  Submission of a completed Form 477 twice a year (on March 1 and

September 1, reporting information as of December 31 and June 30, respectively) is mandatory

for facilities-based providers of broadband (*i.e.*, high-speed) Internet connections to end user

locations, providers of local telephone services, and facilities-based providers of mobile

telephony services.[7]  Service providers must file one Form 477 for each state in which they

provide covered services.  In addition, service providers must file separate forms for incumbent

local exchange carrier ("ILEC") operations and non-ILEC operations.[8]

As explained in more detail in the Intervenors' attached declarations,[9] Form 477 requires

service providers to provide detailed information regarding their broadband, local telephony, and

wireless services.  With respect to broadband, which is addressed primarily in Part I of the form,

providers must disclose: (i) the total number of broadband connections provided to end users in

---

[5] *See* Report and Order, *Local Telephone Competition and Broadband Reporting*, 15 FCC Rcd 7717, 7772 (2000) ("*2000 Data Gathering Order*").

[6] 47 U.S.C. § 220(a)(1).

[7] *See* FCC Form 477 Reporting Requirements & Deployment Data, *available at* http://www.fcc.gov/broadband/data.html.

[8] *See* FCC Form 477, Local Telephone Competition and Broadband Reporting, *available at* http://www.fcc.gov/Forms/Form477/477.xls ("Form 477").  The ILEC in a given area is the carrier that historically has provided local telephone service in that area.  For example, Verizon (formerly Bell Atlantic) is the ILEC in Washington, D.C.  New market entrants are referred to as competitive local exchange carriers ("CLECs").

[9] *See* Joint Declaration of John A. Wimsatt, Larry Zeppetella, and Thomas Y. Ikegami on behalf of Verizon ("Verizon Joint Decl."); Joint Declaration of Mark Keiffer, Robert W. Quinn, Jr., and Rick Welday, Jr. on behalf of AT&T Inc. ("AT&T Joint Decl."); Declaration of Kevin J. Albaugh on behalf of North Pittsburgh Telephone Company ("NPTC Decl.").

the state; (ii) the percentage of those connections provided to residential end users; (iii) the

percentage of those connections provided over the service provider's own facilities; (iv) the

percentage of connections billed to end users; and (v) the percentage of connections provided to

residential end user premises broken down by speed.[10]  All of this information must be provided

not just for "broadband service" generally, but rather for each category of broadband technology,

including asymmetric xDSL, symmetric xDSL, traditional high-capacity wireline technology,

cable modem, optical carrier (fiber to the end user), satellite, terrestrial fixed wireless, terrestrial

mobile wireless, electric power line, and "[a]ll other technologies" (each of which must be

identified).  In addition, beginning in 2005, Part I.B of the form requires ILECs and cable

providers to report the estimated percentage of residential end user premises to which broadband

connections *could* be provided using existing last-mile facilities.[11]  And in Part V, each provider

must list, by type of broadband connection, the specific geographic areas (identified by 5-digit

zip codes) in which it provides broadband service.[12]

Local telephony is addressed in Part II of the form, which requests, first, the number of

voice-grade telephone lines provisioned to end user customers in each state.  Of this aggregate

number, providers must indicate the percentage (i) that are residential lines; (ii) for which the

provider is the presubscribed interstate long distance carrier; (iii) that are residential lines and for

which the provider is the presubscribed interstate long distance carrier; (iv) that are provided

over unbundled network element ("UNE") loops without UNE switching;[13] (v) that are provided

---

[10] *See* Form 477.

[11] *See id.*

[12] *See id.*

[13] *See id.*  A "UNE" is a facility leased from an ILEC to a CLEC at a regulated rate
pursuant to 47 U.S.C. § 251(c)(3).  *See generally United States Telecom Ass'n v. FCC*, 359 F.3d
554 (D.C. Cir. 2004) (reviewing FCC's UNE rules).  A "loop" is the last-mile facility that

over UNE loops with UNE switching; (vi) that are provided by reselling another carrier's service; (vii) that are provided over coaxial cable at the end user premises; and (viii) that are provided over fixed wireless at the end user premises.[14]  Part II also requires carriers to disclose the number of lines sold to unaffiliated carriers on a wholesale basis, and the particular wholesale arrangements utilized (*i.e.*, whether the lines are provided as finished services to be resold, or via UNE-loop (with or without switching) or special access arrangements).

Wireless service is addressed in Part III of the form, which requires carriers to provide the number of mobile telephone subscribers served in each state as well as the percentage of those subscribers that are served at retail (*i.e.*, "directly billed" or as "pre-paid subscribers").[15]

    **2.**    The FCC employs several procedural safeguards to protect the confidentiality of data submitted on Form 477.[16]  The agency allows service providers to assert confidentiality under FCC rule 0.457(d)(1), and the FCC accepts the materials filed on a confidential basis pursuant to FOIA Exemption 4.[17]  FCC regulations prescribe that materials accepted on a confidential basis under Exemption 4 "are not routinely available for public inspection."[18]  A person seeking disclosure of such records under FOIA must make "[a] persuasive showing as to

---

connects the end user to the telephone network.  A loop connects to a "switch," which is a computer that directs calls to their destinations.  Where a CLEC provides service over a UNE loop "without switching," the CLEC connects the loop to its *own* switch (or that of a third party).  Where a CLEC provides service over a UNE loop "with switching," it leases both the loop and the switching capacity (or a "switch port") from the ILEC.

    [14] *See* Form 477.

    [15] *See id.*

    [16] *See 2000 Data Gathering Order*, 15 FCC Rcd at 7760, ¶ 91; Report and Order, *Local Telephone Competition and Broadband Reporting*, 19 FCC Rcd 22340, 22352, ¶ 24 (2004) ("*2004 Data Gathering Order*").

    [17] *See* 47 C.F.R. § 0.457(d)(1); *id.* § 0.457(d)(1)(iii) (including all information collected pursuant to 47 U.S.C. § 220 in the category of documents falling under Exemption 4).

    [18] *Id.* § 0.457(d)(1).

the reasons for inspection,"[19] including "a statement of the reasons for inspection and the facts in support thereof."[20]  If the Commission determines that it has authority to withhold the records from public inspection, then "the considerations favoring disclosure and non-disclosure will be weighed in light of the facts presented, and the request will be granted, either conditionally or unconditionally, or denied."[21]

In promulgating the Form 477 reporting requirements, the FCC noted commentors' concerns that new entrants could be harmed by release of the gathered data, as competitors could "take the data submitted and tailor market strategies to quash nascent competition, protect areas that are being subjected to increased competition, or deploy facilities to defend strongholds."[22]  In response, the Commission agreed to aggregate Form 477 data in its industry-analysis reports in a way that does not enable identification of company-specific data.[23]  These aggregate reports are published semi-annually and are made available to the public on the FCC's website.[24]

### B.    Plaintiff's FOIA Request

On August 24, 2006, the Center submitted a FOIA request for "[a] database or other similar electronic copy of all records collected with FCC Form 477" and "[a]ll documentation associated with that database."[25]

---

[19] *Id.*

[20] *Id* § 0.461(c).

[21] *Id.* § 0.461(f)(4).

[22] *2000 Data Gathering Order*, 15 FCC Rcd at 7758, ¶ 88.

[23] *Id.* ¶¶ 87-88, 91; *2004 Data Gathering Order*, 19 FCC Rcd at 22352, ¶ 24 & n.56.

[24] *See* FCC, Local Telephone Competition and Broadband Deployment Reports, *available at* http://www.fcc.gov/wcb/iatd/comp.html.

[25] Stretch Decl. Exh. A at 1 (Letter from Drew Clark, Senior Fellow and Project Manager, The Center for Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of the Managing Director, FCC (Aug. 24, 2006)).

The FCC's rules require that all FOIA requests are to be directed to the Managing Director of the FCC.[26] The Center's request, however, was directed to the FCC's FOIA Public Liaison. The FCC rerouted the Center's request and, pursuant to agency rules, it was deemed received for FOIA purposes on August 29, 2006.[27]

The FCC's Wireline Competition Bureau ("Bureau") denied the Center's FOIA request in a letter dated September 26, 2006. The Bureau observed that the Center was seeking "first-hand access to company-specific data" in requesting the Forms 477 submitted by "each and every company."[28] The Bureau characterized the requested database and associated documentation as "commercially sensitive, competitive information" that "[f]ilers customarily guard . . . from their competitors."[29] The Bureau explained that:

> [R]elease [of the requested data] would harm [service providers'] competitive interests by revealing to competitors their market strategies, their customer identities and counts and where they have deployed their services. For example, competitors could use this data to decide where to target their service offerings, facilities construction, and marketing, all to the detriment of Form 477 filers.[30]

The Bureau therefore concluded that the information sought was exempt from disclosure under FOIA Exemption 4, which protects "matters that are . . . trade secrets and confidential or financial information obtained from a person and privileged or confidential."[31]

---

[26] *Id.* § 0.461(d)(1).

[27] Stretch Decl. Exh. B (Letter from Kirk S. Burgee, Associate Bureau Chief, Wireline Competition Bureau, to Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity at 1 n.2 (Sept. 26, 2006)); *see* 47 C.F.R. § 0.461(g) ("The custodian of the records will make every effort to act on the request within 20 working days *after it is received by the FOIA Control Office*.") (emphasis added).

[28] Stretch Decl. Exh. B at 2.

[29] *Id.* at 3.

[30] *Id.*

[31] *See id.* at 2 & n.4; 5 U.S.C. § 552(b)(4).

The Bureau also noted that FCC authority to collect the Form 477 data was derived from 47 U.S.C. § 220, and that, pursuant to section 0.457 of the FCC rules, "[i]information submitted in connection with audits, investigations and examination of records pursuant to 47 U.S.C. [§] 220" is deemed subject to FOIA Exemption 4.[32]  The Bureau further explained that the Center's request for all "associated" documentation would encompass Commission analysis of data submitted in Forms 477, which is protected under the deliberative work-product privilege.[33]

## ARGUMENT

### THE RECORDS SOUGHT BY PLAINTIFF ARE EXEMPT FROM DISCLOSURE PURSUANT TO FOIA EXEMPTION 4

Summary judgment is appropriate when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[34]  "[S]ummary judgment may be awarded to an agency in a FOIA case solely on the basis of affidavits or declarations 'when the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld

---

[32] Stretch Decl. Exh. B at 2 n.10 (citing *2000 Data Gathering Order*, 15 FCC Rcd at 7766-67, ¶ 111; 47 C.F.R. § 0.457(d)(1)(iii)) (internal quotation marks omitted).

[33] Stretch Decl. Exh. B at 2 & n.11 (citing 47 C.F.R. § 0.457(e)).  The FCC's rules authorize a FOIA requester to seek review of the initial agency determination with the FCC's Office of General Counsel within thirty (30) days of the date of decision.  *See* 47 C.F.R. § 0.461(j).  The Center filed an application for review on October 19, 2006, which remains pending.  *See* Stretch Decl. Exh. C (Letter from Peter Newbatt Smith, Research Editor and Counsel, Center for Public Integrity, to General Counsel, Federal Communications Commission (Oct. 19, 2006)).  Under FOIA, if the agency does not respond to such an appeal within 20 days, the requester may deem it denied and seek review in federal court.  *See* 5 U.S.C. § 552(a)(6)(C); 47 C.F.R. § 0.461(k); *Oglesby v. Department of the Army*, 920 F.2d 57, 63-64 & n.8 (D.C. Cir. 1990).

[34] Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"[35]

The standard for granting summary judgment in favor of the government is amply satisfied here. As this Court recently explained, FOIA Exemption 4, 5 U.S.C. § 552(b)(4), "protects from public disclosure information that is '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'"[36] As set forth below and in the attached declarations, each of these requirements is satisfied, which warrants summary judgment in favor of the FCC and Intervenors.

### A.    The Records Sought are Commercial

The terms "commercial or financial" are to be given their "ordinary meanings": records are commercial so long as the submitter has a "commercial or trade interest" in them.[37] As described above and explained in the attached declarations, any given Form 477 includes information on the number of a provider's customers, the technologies used to serve those customers, and characteristics of those customers, including geographic location and categorization as business or residential customers. There can thus be no question that the information sought by the Center is "commercial."[38]

---

[35] *Boyes v. DOE*, Civ. No. 03-1756, 2005 U.S. Dist. LEXIS 4452, at *11-12 (D.D.C. Mar. 16, 2005) (quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001); in turn quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

[36] *Gilda*, 2006 U.S. Dist. LEXIS 75787, at *5 (quoting *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)).

[37] *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (internal citations and quotations omitted).

[38] *See*, *e.g.*, *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (finding export-insurance applications containing detailed information on goods and customers to be "commercial or financial").

**B.      The Records Sought Were Obtained from a "Person"**

Information is "obtained from a person" if it was created by any non-United States

government agency, including corporations.[39]  The submitters of Form 477 — providers of

broadband, mobile telephony, and telephone services, including Intervenors AT&T Inc. and

Verizon as well as the constituent members of Intervenor the United States Telecom Association

— are "persons" for purposes of Exemption 4.

**C.      The Records Sought are "Confidential"**

Under the D.C. Circuit's seminal decision in *National Parks and Conservation*

*Association v. Morton*,[40] as clarified by the *en banc* decision in *Critical Mass Energy Project v.*

*Nuclear Regulatory Commission*,[41] information provided to the government under compulsion

— as in the case of the mandatory Form 477 reporting requirement — qualifies for protection

under Exemption 4 if disclosure is likely "to cause substantial harm to the competitive position

of the person from whom the information was obtained" or "to impair the Government's ability

to obtain necessary information in the future."[42]  In this case, both tests are satisfied, as public

disclosure of completed Forms 477 would likely cause competitive harm to Intervenors and

impede the FCC's ability to obtain accurate data in the future.

---

[39] *See, e.g.*, *Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*, 425 F.2d 578, 582 n.18 (D.C. Cir. 1970) (citing Administrative Procedure Act definition of "person," 5 U.S.C. § 551(2)). *See also* 5 U.S.C. § 551(2) ("person" includes "an individual, partnership, corporation, association, or public or private organization other than an agency").

[40] 478 F.2d 765, 770 (D.C. Cir. 1974).

[41] 975 F.2d 871 (D.C. Cir. 1992) (en banc).

[42] *Id.* at 878 (quoting *National Parks*, 478 F.2d at 770).

      1.    *Disclosure is Likely To Cause Substantial Harm to the Competitive Position of Intervenors*

As this Court recently observed, the competitive injury prong of the *National Parks* test is satisfied when there is "'both a showing of actual competition and a likelihood of substantial competitive injury.'"[43]  Each of these requirements is met here.

First, "actual competition" pervades the communications industry.  For example, the D.C. Circuit recently described the broadband market as an "emerging and changing market" in which "different companies are using different technologies to bring broadband to residential customers."[44]  Likewise, the market for voice service is marked by increasing competition from cable companies,[45] wireless providers,[46] and so-called "over-the-top" VoIP providers (such as Vonage).[47]  And the wireless industry has long been described as "the most competitive . . . in the [FCC's] purview."[48]

---

[43] *Gilda,* 2006 U.S. Dist. LEXIS 75787, at *7 (quoting *CAN Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987)).

[44] *EarthLink, Inc. v. FCC,* 462 F.3d 1, 11-12 (D.C. Cir. 2006) (internal quotation marks omitted); *see also* Report and Order and Notice of Proposed Rulemaking, *Appropriate Framework for Broadband Access to the Internet over Wireline Facilities*, 20 FCC Rcd 14853, 14880, ¶ 50 (2005) (observing that although cable modem service providers and DSL providers "are currently the market leaders . . . , other existing and developing platforms, such as satellite and wireless," ensure that the broadband market will continue to be characterized by vibrant competition), *petitions for review pending*, *Time Warner Telecom Inc. v. FCC*, Nos. 05-4769 *et al.* (3d Cir.).

[45] *See, e.g.*, Craig Moffett, *et al.*, Bernstein Research, *Quarterly VoIP Monitor:  Playing Follow the Leader (. . . Cablevision, That Is)*, Exh. 20 (Sept. 20, 2006) (estimating that cable companies would offer voice service in competition with ILECs to approximately 85 percent of homes nationwide by year end 2006).

[46] *See* Ind. Anal. & Tech. Div., WCB, FCC, *Local Telephone Competition:  Status as of December 31, 2005*, Tables 1 & 14 (July 2006) (reporting 175.4 million wireline subscribers switched access lines and 203.7 million wireless subscribers as of year-end 2005).  *See also* Jason Armstrong, *et al.*, Goldman Sachs Group, Inc., *2006 Outlook — Stuck in Neutral* at 31 (Jan. 13, 2006) (wireless-only customers represent a 12.5 percent share of the residential market).

[47] Vonage, for example, recently announced "the seventh consecutive quarter of more than 200,000 net subscriber line additions," which brought its total to more than 2 million lines

In this highly competitive context, disclosure of the information contained in Forms 477 would create a likelihood of substantial competitive injury.  In the broadband arena, for example, Forms 477 provided by ILECs provide a detailed picture of precisely what type of service the ILEC is providing in each geographic area, and the level of success it is enjoying.  *See* Joint Verizon Decl. ¶¶ 12-13; Joint AT&T Decl. ¶ 9; NPTC Decl. ¶ 5.  Using that information, a competitor could learn the specific zip codes in which the ILEC is relying on new, fiber-to-the-premises technology, and where, by contrast, it continues to rely on DSL service provided over traditional copper loops.  The competitor could also learn whether and the extent to which the ILEC has deployed other technologies and the commercial success of those technologies.  And competitors could learn where consumer demand is greatest for each particular "flavor" of broadband the ILEC has deployed, as well as the extent of the ILEC's reach in each state it serves.  *See* Joint Verizon Decl. ¶¶ 12-14, 16; Joint AT&T Decl. ¶ 9; NPTC Decl. ¶¶ 4-5.

All of this information is commercially valuable to competitors, and, as the FCC found, it is therefore confidential.[49]  Using this information, a competitor could deduce a service provider's strategic business plans, which would give that competitor an unfair advantage in protecting itself against competitive inroads.  *See*, *e.g.*, Joint Verizon Decl. ¶ 13.  And that is particularly so in view of the fact that the information sought includes confidential records

---

in service.  Vonage Press Release, *Vonage Holdings Corp. Reports Third Quarter 2006 Results* (Oct. 31, 2006), *available at* http://ir.vonage.com/releasedetail.cfm?ReleaseID=216605.

[48] Ninth Report, *Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services*, 19 FCC Rcd 20597 (2004) (statement of then-Chairman Powell).

[49] *See* Stretch Decl. Exh. B at 3; *2004 Data Gathering Order*, 19 FCC Rcd at 22352, ¶ 24 & n.56.

submitted over the course of several years.[50]  As in *Gilda*, therefore, the information at issue represents "valuable knowledge regarding . . . competitors' business operations — information that those competitors consider confidential."[51]  Furthermore, "a competitor could use the information to gain a competitive advantage"[52] — in this case, by, for example, targeting facilities construction in areas with the most concentrated demand as reported by the ILEC, or developing business plans specifically targeted at any perceived shortcomings in the ILEC's current deployment.  *See* Joint Verizon Decl. ¶ 16; Joint AT&T Decl. ¶ 9; NPTC Decl. ¶ 5.  It follows that "the disclosure of this information would likely cause substantial competitive injury to the companies that submitted the information."[53]

The same considerations apply to the confidential local telephony information provided on Form 477.  For one thing, Form 477 reveals not only the number of customers the service provider is serving in a given state, but also precisely *how* the service provider is serving those customers.  As a result, a competitor could learn from Form 477 whether a provider is introducing a new technology to provide local telephony service in a given state, and it could tailor its own deployment and marketing schemes accordingly.  *See* Joint AT&T Decl. ¶ 10.  Likewise, Form 477 reveals the number of customers that a non-incumbent, competitive carrier serves in a given state, as well as details regarding how those customers are being served (*i.e.*, over facilities leased from the ILEC, or instead over facilities deployed by the competitor).  That

---

[50] *See, e.g., Westinghouse Electric Corp. v. Schlesinger*, 392 F. Supp. 1246, 1249 (D. Va. 1974) (holding mandatory EEOC reporting forms protected by Exemption 4 because "viewing the same documents over a period of time would enable a competitor to obtain a forewarning on new products and process changes being undertaken by the plaintiffs"), *aff'd,* 542 F.2d 1190 (4th Cir. 1976).

[51] *Gilda*, 2006 U.S. Dist. LEXIS 75787, at *14.

[52] *Id.*

[53] *Id.*

information, if made public, could provide other carriers a roadmap for replicating the competitor's success, which would disadvantage both the ILEC and the competitor that submitted the Form 477. *See* Joint AT&T Decl. ¶ 10; NPTC Decl. ¶ 5.

Finally, the state-by-state wireless subscriber data reported on Form 477, particularly when coupled with information gleaned from other sources regarding where a given carrier has devoted its marketing energies, can provide insight into the relative success of the carrier's various wireless strategies. *See* Joint Verizon Decl. ¶ 15. That insight, in turn, would enable competitors to better respond to that carrier's efforts in the future and to better formulate their business plans and marketing strategies. *See id.* Thus, here too, "the disclosure of this information would likely cause substantial competitive injury to the companies that submitted the information."[54]

Indeed, courts have consistently characterized comparable information as "confidential" and subject to Exemption 4, including information regarding the volume and types of products offered for sale,[55] operational details,[56] distribution network,[57] and technical product details.[58] Moreover, this Court has recognized that "[b]usiness and marketing plans by their nature usually contain information that would cause competitive harm if disclosed" and are therefore exempt

---

[54] *Id.*

[55] *See, e.g.*, *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1081 (9th Cir. 2004) (affirming district court conclusion that information revealing type and volume of raisins processed for sale was exempt from disclosure under FOIA Exemption 4); *Amway Corp. v. FTC*, Civ. No. 75-1274, 1976 U.S. Dist. LEXIS 16207, at *7 (D.D.C. Mar. 10, 1976) (withholding "sales statistics").

[56] *See Minnesota v. DOE*, No. 4-81-434, 1982 U.S. Dist. LEXIS 18390, at *8 (D. Minn. 1982).

[57] *See Timken Co. v. United States Customs Service*, 491 F. Supp. 557, 560 (D.D.C. 1980).

[58] *See Air Line Pilots Assoc. Int'l v. FAA,* 552 F. Supp. 811 (D.D.C. 1982).

from disclosure under Exemption 4.[59]  The same analysis applies here.  For the reasons explained above and in the attached declarations, the information sought by plaintiff and not otherwise publicly available would allow competitors to deduce service providers' business and marketing strategies and thereby gain a leg up in the marketplace.  It is therefore protected from disclosure under Exemption 4.

            2.            *Disclosure Would Impair the FCC's Ability To Obtain Information in the Future*

When, as here, the information at issue is obtained through a mandatory reporting requirement, "the Government's interest is in ensuring [the] continued reliability" of reported data.[60]  Public disclosure of the information reported in Form 477 could threaten that interest.

Section 706 of the Telecommunications Act of 1996 requires the FCC to "encourage the deployment on a reasonable and timely basis of advanced telecommunications capability to all Americans."[61]  The FCC has taken the position that, to fulfill that mandate, it needs reliable information about the state of the broadband market.  The Commission has thus stressed that the information reported in Form 477 "will materially improve our ability to develop, evaluate, and revise policy," and "will make more effective our actions to implement the pro-competitive, deregulatory provisions of the Telecommunications Act of 1996."[62]

As the FCC has also stressed, public disclosure of the information reported on Form 477 could impede that objective by diminishing the quality and accuracy of the data submitted.  In particular, in explaining its decision to publish industry reports derived from Form 477 only at an

---

[59] *National Cmty. Reinvestment Coalition v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 135 (D.D.C. 2003).  *See also Heeney v. FDA*, 7 Fed. Appx. 770, 771 (9th Cir. 2001) (holding that "marketing and sales data" "falls squarely within" Exemption 4).

[60] *Critical Mass*, 975 F.2d at 878.

[61] 47 U.S.C. § 157 note.

[62] *2000 Data Gathering Order*, 15 FCC Rcd at 7718, ¶ 1.

aggregate level — rather than publishing company-specific data — the FCC explained that a

contrary decision could undermine its data collection efforts:

> While this is a mandatory collection, we wish to collect as much, and as accurate, information as possible about the status of broadband deployment in a short period of time . . . . Given the unique nature of this information collection, we believe that [publishing aggregate data, rather that company-specific analysis] will improve compliance, thus enhancing our understanding of the broadband market, without any material diminution in value of the information collection.[63]

The same consideration applies here. Public disclosure of the information reported in

Form 477 through a FOIA request would undercut the Commission's data collection efforts in

precisely the same fashion as an FCC decision to publish individual company reports rather than

aggregate data. For this reason as well, Exemption 4 shields the information at issue from

disclosure.

### D.    The FCC Has Consistently Treated the Information at Issue as Confidential

The applicability of Exemption 4 here is confirmed by the FCC's repeated assurances

that the agency would protect the information submitted on Form 477 from disclosure. Upon

adopting Form 477 as a reporting requirement, the FCC expressly extended to Form 477 filers

the "procedural protections provided by our confidentiality rules."[64] Moreover, the FCC has

consistently exempted from disclosure the tallies of broadband and telephony subscribers

collected from cable television companies via a separate reporting requirement, characterizing

this data as the "same type of . . . data collected" — and exempted from disclosure — via the

Form 477.[65] In addition, the FCC has in a comparable context adopted a protective order to

---

[63] *Id.* at 7760, ¶ 91.

[64] *Id.* at 7758, ¶ 87.

[65] *See, e.g.*, Order, *Cox Communications, Inc.; Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003,* 19 FCC Rcd 12160, 12162, ¶ 8 (2004); Order, *Comcast Cable Communications, Inc.; Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12165, 12167, ¶ 8 (2004); Order, *Time Warner Cable;*

ensure that "highly confidential and competitively sensitive documents and information,"

including "granular customer data (e.g., subscriber information by designated market area . . . or

zip code)," would be afforded adequate protection.[66]  In this respect, moreover, the FCC's

approach is echoed by the Illinois Commerce Commission, which requires service providers to

file a copy of their year-end FCC Form 477 reports and which deems those reports to be

"confidential and proprietary and exempt from disclosure under" the Illinois Freedom of

Information Act.[67]

      Although an agency's commitment of confidentiality is not itself dispositive for purposes

of FOIA, these precedents are, as the D.C. Circuit has held, instructive.[68]  The FCC is the expert

agency charged by Congress with formulating and implementing national telecommunications

policy, and in fulfilling that role it has developed significant expertise regarding competition in

the industry.  Considered in conjunction with the other rationales described above, the FCC's

consistent approach in recognizing the confidentiality and competitive sensitivity of the data at

issue serves to confirm the applicability of Exemption 4 here.

## CONCLUSION

      The Court should grant summary judgment to the FCC and Intervenor-Defendants.

---

*Request for Confidentiality for Info. Submitted on Forms 325 for the Year 2003*, 19 FCC Rcd 12170, 12172, ¶ 7 (2004).

   [66] *See* Order Concerning Second Protective Order, *News Corp., General Motors Corp., and Hughes Elecs. Corp.*, 18 FCC Rcd 15198, 15198-99, ¶¶ 1-3 (2003).

   [67] Stretch Decl. Exh. D (Order, *Requirement for Telecommunications Carriers for Filing FCC Form 477 Pursuant to Section 13-407 of the Public Utilities Act*, No. 05-0712, at 3 (Ill. Commerce Comm'n Nov. 8, 2005)).

   [68] *See, e.g.*, *Ackerly v. Ley*, 420 F.2d 1336, 1339 n.3 (D.C. Cir. 1969).

Respectfully submitted,

/s/ Colin S. Stretch

_____

| | |
|---|---|
| James P. Lamoureux (D.C. Bar No. 431631)<br>AT&T INC.<br>1120 20th Street, N.W.<br>Washington, D.C. 20036<br>*Counsel for AT&T Inc.* | Colin S. Stretch (D.C. Bar No. 470193)<br>KELLOGG, HUBER, HANSEN, TODD,<br>  EVANS & FIGEL, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 326-7900<br>Facsimile: (202) 326-7999<br>*Counsel for AT&T Inc., Verizon, and the*<br>  *United States Telecom Association* |
| Michael E. Glover<br>Edward Shakin (D.C. Bar No. 450495)<br>William H. Johnson (D.C. Bar No. 481876)<br>VERIZON<br>1515 North Courthouse Road, Suite 500<br>Arlington, Virginia 22201<br>(703) 351-3099<br>*Counsel for Verizon* | James W. Olson (D.C. Bar No. 923169)<br>UNITED STATES TELECOM ASSOCIATION<br>607 14th Street, N.W., Suite 400<br>Washington, D.C. 20005-2164<br>(202) 326-7300<br>*Counsel for United States Telecom*<br>  *Association* |

18