Exhibit 4 to
Intervenor-Defendants'
Memorandum In Support of
Summary Judgment

# Declaration of Colin S. Stretch

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, | |
| Plaintiff, | |
| v. | Civil Action No. 06-01644 (RMC) |
| FEDERAL COMMUNICATIONS COMMISSION, | |
| Defendant. | |

## <u>DECLARATION OF COLIN S. STRETCH</u>

1.      My name is Colin S. Stretch.  I am over the age of 21 years and have personal knowledge of the facts contained herein.

2.      I am an attorney with the law firm of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.  I am submitting this declaration in support of Intervenor-Defendants' Motion for Summary Judgment.

3.      Exhibit A to this declaration is a true and correct copy of the Center for Public Integrity's FOIA request, Letter from Drew Clark, Senior Fellow and Project Manager, The Center for Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of the Managing Director, Federal Communications Commission (Aug. 24, 2006), referred to on page 6 of Intervenor-Defendants' Memorandum of Law.

4.      Exhibit B to this declaration is a true and correct copy of the FCC's initial denial of the Center's FOIA request, Letter from Kirk S. Burgee, Associate Bureau Chief, Wireline Competition Bureau, to Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity (Sept. 26, 2006), referred to on pages 7, 8 and 12 of Intervenor-Defendants' Memorandum of Law.

5.      Exhibit C to this declaration is a true and correct copy of the Center for Public Integrity's appeal of the Federal Communication Commission's initial denial, Letter from Peter Newbatt Smith, Research Editor and Counsel, The Center for Public Integrity, to General Counsel, Federal Communications Commission (Oct. 19, 2006), referred to on page 8 of Intervenor-Defendants' Memorandum of Law.

6.      Exhibit D to this declaration is a true and correct copy of an Order by the Illinois Commerce Commission, Order, *Requirement for Telecommunications Carriers for Filing FCC Form 477 Pursuant to Section 13-407 of the Public Utilities Act*, No. 05-0712 (Ill. Commerce Comm'n Nov. 8, 2005), referred to on page 17 of Intervenor-Defendants' Memorandum of Law.

7.      Exhibit E to this declaration is a true and correct copy of the unpublished decision *Judicial Watch, Inc. v. FBI*, Civ. No. 01-1216 (D.D.C. July 26, 2002), referred to on page 2 of Intervenor-Defendants' Memorandum of Law.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Date: January 8, 2007

/s/ Colin S. Stretch

2

# Stretch Declaration Exhibit A

# THE CENTER FOR PUBLIC INTEGRITY

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit A

*Berish Shah*
*8/24/06*

**Board of Directors**
Hodding Carter III
Bill Kovach
Susan Loewenberg
Paula Madison
John E. Newman, Jr.
Geneva Overholser
Charles Piller
Allen Pusey
Ben Sherwood
Marianne Szegedy-Maszak

**Advisory Board**
James MacGregor Burns
Joel Chaseman
Alan J. Dworsky
Edith Everett
Bruce A. Finzen
Gustavo Godoy
Josie Goytisolo
Herbert Hafif
Rev. Theodore Hesburgh
Kathleen Hall Jamieson
Sonia Jarvis
Bevis Longstreth
Charles Ogletree
Arthur Schlesinger, Jr.
William Schneider
Harold M. Williams
William Julius Wilson

**Acting Executive Director**
Wendell Rawls, Jr.

**Founder**
Charles Lewis

August 24, 2006

Shoko B. Hair
FOIA Public Liaison
Office of the Managing Director
Federal Communications Commission
Room 1-A836
445 12th Street, S.W.
Washington, D.C. 20554

2006-493

Dear Shoko B. Hair:

This is a request under the Freedom of Information Act.

On behalf of the Center for Public Integrity, I request that copies of the records identified and described below be provided to me.

I request:

- A database or other similar electronic copy of all records collected with FCC Form 477 ("Local Telephone Competition and Broadband Reporting"). The form is published on the agency's Web site at http://www.fcc.gov/broadband/data.html
- All documentation associated with that database.

I request that these records be produced in an electronic data format such as a spreadsheet, delimited data set, database file or similar electronic data format. I also request any and all documentation related to these records, including but not limited to data dictionaries, database documentation, record layouts, data entry instructions and similar printed or electronic documentation materials.

If it is not possible to produce all the fields in the database, we are willing to negotiate to narrow the scope of this request.

If you deny access to any record or portion of a record, please specify which statutory exemptions are claimed for each withholding. Please separately state your reasons for not invoking your discretion, as the Act allows, to release the requested information. Please indicate the size of each record withheld (e.g., amount of electronic memory or number of paper pages), the total size of the records identified as responsive to this request and the dates of each record withheld.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit A

Please respond within 20 business days, as the Act provides.

The Center for Public Integrity is a 501(c)(3) educational organization and a news media organization, and therefore this request should be exempt from all fees for search and review. In the past, federal agencies, including the Department of State, the Central Intelligence Agency, the Environmental Protection Agency and the Department of Defense, among others, have uniformly exempted the Center from search and review fees as a representative of the news media.

In addition, I request a waiver of all duplication fees for this request as permitted under the Act. This request is being made in connection with newsgathering and is not for a commercial purpose. Disclosure of the requested information to the Center is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of your agency and the agency's regulation of the communications industries. However, if there are any search, review or duplication fees greater than $200, please inform me before you fill the request.

The Center for Public Integrity is a nonprofit, nonpartisan, tax-exempt organization that conducts investigative research and reporting on public policy issues in the United States and around the world.  For more information on the Center for Public Integrity please refer to http://www.publicintegrity.org.

In reference to our request I am providing the following information addressing the six factors listed in the Department of Justice's FOIA Guide (May 2004): Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

1) The subject matter of the requested records concerns the "operations or activities of the government," specifically of the Federal Communications Commission.

2) The content from these contracts "is likely to contribute" to public understanding of your agency and the agency's regulation of the communications industries. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not freely available to the public.

3) Due to the nature of our organization, the disclosure under our FOIA request will "contribute to the understanding of the public at large."  Our reports based on the released information will be posted on our Web site, www.publicintegrity.org, and will be read by tens of thousands of people worldwide. We expect the information produced through this and other FOIA requests to serve as the basis for several articles and press releases that explain the actions and operations of government to the general public.

4) In addition to publishing the information on our Web site, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit A

News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports recently. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists and database administrators. We write and publish reports on our Web site and books for sale to the public that often require in-depth collection and analysis of electronic records. Other members of the media consider us to be skilled journalists as evidenced by our numerous awards over the years from the Society of Professional Journalists and Investigative Reporters and Editors Inc. Additionally, many federal agencies, in connection with FOIA fee exemptions and waivers, have deemed the Center for Public Integrity to be a representative of the news media.

5) The disclosures we request under the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (4), we are a news media organization and plan to communicate this information to the public.

6) In reference to any "commercial interest," we do not have any. Almost all of our revenue comes from grants and donations. The Center for Public Integrity is a nonprofit organization. Most of the Center's reports are available on our Web site without charge.

Thank you for your attention to this request.

Sincerely,

Drew Clark
Senior Fellow and Project Manager, Telecommunications and Media
(202) 481-1210
Email: dclark@publicintegrity.org
910 17th Street NW, 7th Floor
Washington, DC 20006

# Stretch Declaration Exhibit B

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit B

# FEDERAL COMMUNICATIONS COMMISSION
## Washington, D.C.  20554

September 26, 2006

Drew Clark
Senior Fellow and Project Manager
The Center For Public Integrity
910 17th Street NW, 7th Floor
Washington, DC 20006

**Re:**     **FOIA Control No. 2006-493**

Dear Mr. Clark:

On behalf of the Commission, the Wireline Competition Bureau has reviewed the above-referenced Freedom of Information Act (FOIA) request filed by The Center For Public Integrity (the "Center").[1]  Because the request seeks records that fall within FOIA exemption 4 and because the Center has failed to present a compelling public interest reason for disclosure, the request is denied.[2]

---

[1] Letter from Drew Clark, Senior Fellow and Project Manager, The Center For Public Integrity, to Shoko B. Hair, FOIA Public Liaison, Office of Managing Director, FCC (filed August 29, 2006) ("*Center FOIA Request*").

[2] *See* 47 C.F.R. § 0.461(f)(1) ("If the Commission is prohibited from disclosing the records in question, the request for inspection will be denied with a statement.").  Because we deny this FOIA request, the Center's request for a waiver of FOIA duplication fees is moot.  *See Center FOIA Request* at 2.  Our response to the *Center FOIA Request* is timely.  FOIA allows agencies 20 working days to respond to FOIA requests.  5 U.S.C. § 552(a)(6)(A)(i).  FOIA requires agencies to make records available in response to any request "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3).  The time period for responding to a FOIA request does not begin to run until the request is received by the appropriate office and officer in the agency, as set forth in the agency's published rules.  *See Blackwell v. EEOC*, No. 2:98-CV-38-BO(2) (E.D.N.C. 1999), at *2 (1999 WL 1940005) *citing Brumley v. United States Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985).  Under our regulations, when a FOIA request is received by the Office of Managing Director, it is assigned to the FOIA Control Office, where it is date-stamped and assigned to the Bureau that is the custodian of records sought.  47 C.F.R. § 0.461(e).  The Bureau then has 20 working days from that date to respond.  47 C.F.R. § 0.461(g).  In this instance, the *Center FOIA Request*, dated August 24, 2006, was addressed to Shoko Hair, FOIA Public Liaison, not, as our rules and website provide, to the Managing Director.  See 47 C.F.R. § 0.461(d)(1); <http://www.fcc.gov/foia/>.  *See Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986) (FOIA requests must be filed in accordance with the agency's rules), *citing* 5 U.S.C. § 552(a)(3)(B).  Even though the *Center FOIA Request* did not technically comply with section 0.461(d)(2), the *Center FOIA Request*  was forwarded to the FOIA Control Office, where it was received, date-stamped and assigned to this Bureau on August 29, 2006.  As the Commission explained in *Jeffrey W. Hanson*, 16 FCC Rcd 16497, 16499 (2001), "The Commission strives to promptly route FOIA requests to the FOIA Control Officer and the custodian of records, but delays sometimes do occur."  Therefore, August 29 started the time clock for processing the *Center FOIA Request*, and a response is due 20 working days from that date – September 27, 2006.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit B

Page 2 of 3

The Center requests (1) "[a] database or other similar electronic copy of all records collected with FCC Form 477," and (2) "[a]ll documentation associated with that database."[3]  We deny both of the Center's requests because we find that the requested records contain commercially sensitive, competitive information and that release would cause harm to the entities that submitted the requested information.  Therefore, we decline to release the requested information pursuant to exemption 4 of FOIA.[4]  We also deny the second request on the grounds that it would encompass deliberative Commission work product.[5]

The Form 477 data collection program requires (1) facilities-based providers of broadband ("high speed") connections to end user locations, (2) providers of wired or fixed wireless local telephone services, and (3) facilities-based providers of mobile telephony services to file with the Commission certain information regarding their telephone services and broadband connections.[6]  In order to apprise the public of the status of this industry, the Commission publishes the High-Speed Services for Internet Access Report and the Local Telephone Competition Report based on this semiannual data collection.[7]

In the *2000 Data Gathering Order*, the Commission adopted several procedures to protect the confidentiality of data submitted to it on Form 477.  The Commission noted commenters' concerns that new entrants could be harmed if competitors learned of the number of lines and customers that they had in a particular market.[8]  The Commission thus agreed to aggregate filed data in its published reports in a way that does not identify company-specific data.[9]  While the Commission recognized that the data collection was mandatory, the Commission also recognized that additional confidentiality protections would encourage voluntary compliance.[10]

Both of the Center's FOIA requests seek data that would permit it first-hand access to company-specific data.  The first request asks for a database of all records collected by each and every company.  The second request seeks all "associated" documentation.  Both requests would necessarily encompass company-specific data derived from filings that the Commission has already determined in prior orders should not be made available to the public.  Furthermore, the second request would encompass documents containing Commission analysis of submitted data, which is protected under the work product privilege.[11]

---

[3] *Center FOIA Request* at 1.

[4] 5 U.S.C. § 552(b)(4) ("*Trade secrets and commercial or financial information*"); 47 C.F.R. § 0.457(d).

[5] 47 C.F.R. § 0.457(e).

[6] *See* Form 477 Instructions § II; *see also Local Competition and Broadband Reporting*, Report and Order, 15 FCC Rcd 7717 (2000) ("*2000 Data Gathering Order*"); *In re Local Telephone Competition and Broadband Reporting*, Report and Order, 19 FCC Rcd 22340 (2004) ("*2004 Data Gathering Order*").

[7] These reports are publicly available at *http://www.fcc.gov/wcb/iatd/stats.html*.

[8] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at paras. 87-88 n.226.

[9] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 91; *2004 Data Gathering Order* 19 FCC Rcd 22340 at para. 24 n.56.

[10] *2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 91.  We also note that the Commission relied on 47 U.S.C. § 220 as statutory authority when establishing its Form 477 data rules.  *See 2000 Data Gathering Order*, 15 FCC Rcd 7717 at para. 111.  Under section 0.457 of our rules, "[i]nformation submitted in connection with audits, investigations and examination of records pursuant to 47 U.S.C. 220" is deemed to be subject to FOIA exemption 4.  47 C.F.R. § 0.457(d)(iii).

[11] 47 C.F.R. § 0.457(e).

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit B

Page 3 of 3

We find that the requested database and associated documentation constitute commercially sensitive, competitive information.  Filers customarily guard this data from their competitors, and release would harm their competitive interests by revealing to competitors their market strategies, their customer identities and counts and where they have deployed their services.  For example, competitors could use this data to decide where to target their service offerings, facilities construction, and marketing, all to the detriment of Form 477 filers.  For these reasons, we conclude that the requested data is protected against disclosure pursuant to FOIA exemption 4.[12]

Once the Commission determines that records fall within exemption 4, as we find here, the requester bears the burden of making a "persuasive showing" that its public interest argument outweighs the arguments for withholding the records.[13]  In balancing the public interest argument against the interests underlying protecting the information, "the Commission generally has exercised its discretion to release publicly information falling within FOIA Exemption 4 only in very limited circumstances, such as . . . where the Commission has *identified a compelling public interest in disclosure*."[14]  The Center makes no public interest argument in favor of disclosing the requested documents, and we find no such argument in our precedent; thus, we find that there exists no compelling public interest sufficient to override the interests underlying exemption 4.

You may seek review of this decision by filing an application for review with the Office of General Counsel within 30 days of the date of this letter.[15]

Sincerely,

Kirk S. Burgee
Associate Bureau Chief
Wireline Competition Bureau

---

[12] We note that the Center states that it is willing "to narrow the scope of this request."  *Center FOIA Request* at 1.  We find that our publicly-available reports already publish non-confidential data culled from the Form 477s.  *See http://www.fcc.gov/wcb/iatd/stats.html*.

[13] *See In re Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission*, 13 FCC Rcd 24816 at paras. 19-20 (1998).

[14] *Id.* at para. 8 (emphasis added) ("[T]he Commission has been sensitive to ensuring that the fulfillment of its regulatory responsibilities does not result in the unnecessary disclosure of information that might put its regulatees at a competitive disadvantage.").

[15] *See* 47 C.F.R. § 0.461(j).

# Stretch Declaration Exhibit C

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit C

# THE CENTER FOR PUBLIC INTEGRITY

October 19, 2006

**By Certified Mail, Return Receipt Requested**
General Counsel
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

Re: Review of Freedom of Information Action<br>FOIA Control No. 2006-493

Dear Sir or Madam:

This letter serves as a formal Freedom of Information Act appeal under 5 U.S.C. § 552(a)(6)(A) and an application for review under 47 C.F.R. § 0.461(j) of the written decision dated September 26, 2006, by Kirk S. Burgee, Associate Bureau Chief, Wireline Competition Bureau, on the Freedom of Information Act (FOIA) request (FOIA Control No. 2006-493) submitted by Drew Clark on behalf of the Center for Public Integrity. A copy of the determination letter is attached. The Center for Public Integrity's objections to the determination by Mr. Burgee to withhold the records sought are noted and addressed in turn in the paragraphs below.

The Center's FOIA request is the subject of a lawsuit, *Center for Public Integrity v. Federal Communications Commission*, Civil Action No. 06-1644 (RMC) (D.D.C.), filed September 25, 2006. We believe this suit was properly filed pursuant to 5 U.S.C. § 552(a)(6)(C)(i) but nevertheless ask that you consider this application for review.

**1) FOIA Exemption 4.** The decision to deny the Center's request under FOIA Exemption 4 depends on findings that the requested data is confidential (5 U.S.C. § 552(b)(4)), meaning in this case, likely to cause substantial competitive harm to the filer if released (*National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974)).

In analyzing the application of FOIA Exemption 4 to the Center's request, the determination letter is cursory, vague, conclusory and contradicts the factual record. For instance, the letter asserts (at p. 3) that "[f]ilers customarily guard this [requested] data from their competitors." In fact, filers may choose to designate whether they consider some submitted data to be "privileged and confidential." (Form 477, Cover Page, Question 8; *see also* FCC, "Frequently Asked Questions About FCC Form 477," http://www.fcc.gov/broadband/broadband_data_faq.html, at ¶ 24. The determination letter does not address what proportion of the data has been submitted under claim of confidentiality. We request that any data not claimed as confidential be released to us.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit C

In addition, when the Commission adopted the Form 477 data collection program, it stated that "it is our understanding that some providers release considerable data about the nature of their operations, while others more closely safeguard such data" and that "[a]t this time, we do not have sufficient evidence in the record to make a universally applicable decision about the competitive sensitivity of all of the Part I Broadband information for all providers." Local Telecommunications Competition and Broadband Deployment, Report and Order, Docket No. 99-301, http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-00-114A1.pdf ("2000 Data Gathering Order"), at ¶¶ 89 and 91. Even so, the determination letter asserts (at 2) that the Center's FOIA request seeks "data derived from filings that the Commission *has already determined in prior orders* should not be made available to the public" (emphasis added), apparently referring to the 2000 Data Gathering Order but not citing any order in particular. We ask that you reconsider the probability, extent and scope of any likely competitive harm, in light of the doubts expressed by the Commission in the 2000 Data Gathering Order.

**2) Segregability.** FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The determination letter does not even attempt to justify the withholding of all portions of the data, other than to assert (at 3 n.12) that the Commission has published some portions of the data in publicly available reports. The letter does not indicate whether further segregable portions can be released. We ask that you make such a determination.

The Center's FOIA request stated, "If it is not possible to produce all the fields in the database, we are willing to negotiate to narrow the scope of this request." We remain willing to do so. We ask that you consider whether most or some fields can be released without causing competitive harm if certain other fields are withheld as exempt.

In instances where you determine that data must be withheld to prevent competitive harm, we ask that you consider whether particular numbers can be redacted by indicating a range that the number falls within (e.g., 0, 1-100, 101-1000, etc.) or, at a minimum, by indicating whether the number is zero or greater than zero.

**3) Documentation.** The second part of the Center's FOIA request (at 1) sought "[a]ll documentation associated with [the requested] database." The next paragraph repeated that the Center was requesting "any and all documentation related to these records, including but not limited to data dictionaries, database documentation, record layouts, data entry instructions and similar printed or electronic documentation materials."

The Center intended to use the term "documentation" in the sense it normally has in computer science: "the organized collection of records that describe the structure, purpose, operation, maintenance, and data requirements for a computer program, operating system, or hardware device." ("documentation," *The American Heritage Dictionary of the English Language* (4th ed. 2000), http://www.thefreedictionary.com/documentation)

We ask that you reconsider the denial of this part of the Center's request in light of this clarification. The Center is seeking documentation associated with the structure of the database,

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit C

not with its contents. This should obviate the competitive-harm concerns the determination letter expresses with regard to this part of the Center's request.

      For the reasons noted above, we ask that you reconsider and reverse the determination made on the Center's request.

Sincerely,

   /s/

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org


copy to: Wyneva Johnson, Assistant United States Attorney

# Stretch Declaration Exhibit D

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit D

STATE OF ILLINOIS

ILLINOIS COMMERCE COMMISSION

| | | |
|---|---|---|
| Illinois Commerce Commission | : | |
|    On Its Own Motion | : | |
| | : | |
| Requirement for telecommunications | : | 05-0712 |
| carriers for filing FCC Form 477 | : | |
| pursuant to Section 13-407 of the | : | |
| Public Utilities Act | : | |

ORDER

By the Commission:

On November 2, 2005, the Staff of the Telecommunications Division ("Staff") of the Illinois Commerce Commission ("Commission") issued a Staff Report concerning the Commission's responsibilities under Section 13-407 of the Public Utilities Act ("Act"). Section 13-407 gives to the Commission the following mandate:

> The Commission shall also collect all information, in a format determined by the Commission, that the Commission deems necessary to assist in monitoring and analyzing the telecommunications markets and the status of competition and deployment of telecommunications services to consumers in the State.

The Staff Report recommends that the Commission increase the frequency with which the Commission collects certain information necessary to discharge its obligation under Section 13-407. The Commission has previously ordered telecommunications carriers to complete the Commission's Competition Data Request (CDR). In each case, telecommunications providers reported information describing service provision as of December 31 of each year on or before March 1 of the following year. This information has permitted the Commission to assess, on an annual basis, competitive developments in plain old telephone service ("POTS") and information on recent tends in local service, broadband, and wireless provisioning. The Commission has also ordered telecommunications providers in Illinois to provide copies of their year-end 2004 Illinois specific FCC Form 477 filings as attachments to their most recent CDR responses.

According to the Staff, recent revisions made by the FCC to its Form 477 make the information reported in response to the Form 477 more valuable to the Commission's effort to monitor and analyze the telecommunications markets and the status of competition. Staff contends that the Commission will be better able to monitor and analyze the evolution of markets and to meet its statutory obligations if it obtains the information collected through the Form 477 on a more timely basis. As a result of the increased value

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit D

of the Form 477 information and the increased value of obtaining it on a more frequent basis, Staff recommends that the Commission order telecommunications providers in Illinois to provide copies of their FCC Form 477 filings to the Commission on a more frequent and more timely basis. Staff further contends that the benefits to the Commission in obtaining this information will outweigh the costs to the carriers of complying with the increased filing requirements. Staff point out that the information required is that which providers are already collecting and providing to the FCC. Thus, such carriers need only file a copy of the information they file with the FCC with the Commission in the same format as filed with the FCC.

In the Staff Report, Staff recommends that the Commission order telecommunications providers required, pursuant to FCC filing requirements, to respond to the FCC's September 1, 2005 Form 477 filing requirement to provide a copy of their Illinois state specific Form 477 filing (and any revisions filed with the FCC on or before November 18, 2005) with the Commission on or before November 18, 2005. Staff also recommends that the Commission order such providers to provide copies of any revisions made to their September 1, 2005 Illinois state specific Form 477s filed with the FCC after November 18, 2005 to the Commission on the day such revisions are filed with the FCC.

The Staff has presented a convincing rationale in the Staff Report for the requirement for the telecommunications carriers to file the FCC Form 477 as described in the Report. The Commission is of the opinion that the FCC Form 477 should be filed with the Commission as contemplated by Staff.

The Commission notes that Section 5-101 of the Public Utilities Act requires any public utility (and any telecommunications carrier pursuant to Section 13-101 of the Act) to deliver to the Commission any records in its possession in such form as the Commission may direct.

The Commission, having considered the entire record consisting of the Staff Report dated November 2, 2005 and having been fully advised in the premises, is of the opinion and finds that :

(1)    the Commission has jurisdiction over the subject matter herein and the subject telecommunications carriers;

(2)    the Staff Report dated November 2, 2005 should be made a part of the record of this proceeding;

(3)    any telecommunications carrier subject to the jurisdiction of the Commission providing local exchange telecommunications services, interexchange telecommunications services, cellular or mobile telecommunications services, or customer-owned pay telephone services that files FCC Form 477 with the Federal Communications Commission should file with the Commission the Illinois state specific Form 477 filed as a response to the

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit D

FCC's September 1, 2005 filing requirements and any revisions filed with the FCC on or before November 18, 2005 by November 18, 2005;

(4)     any telecommunications carrier filing an Illinois state specific Form 477 should also file with the Commission any copies of any revisions made to its September 1, 2005 Illinois state specific Form 477 filed with the FCC after November 18, 2005 to the Commission on the day such revisions are filed with the Federal Communications Commission;

(5)     the reports filed in compliance with this order should be considered confidential and proprietary and exempt from disclosure under the Freedom of Information Act [5 ILCS 140].

(6)     the reports filed in compliance with this order should be e-mailed to jzolnier@icc.illinois.gov or sent on 3.5" diskettes or CDs in IBM format to Policy Department Manager, Telecommunications Division, Illinois Commerce Commission, 527 East Capitol Avenue, Springfield IL 62701;

(7)     any telecommunications carrier subject to the jurisdiction of the Commission providing local exchange telecommunications services, interexchange telecommunications services, cellular or mobile telecommunications services, or customer-owned pay telephone services that is not required to file a September 1, 2005 Illinois state specific Form 477 should respond with a letter or e-mail to that effect to the addresses in Finding 6 by November 18, 2005.

IT IS THEREFORE ORDERED by the Illinois Commerce Commission that any telecommunications carrier under the jurisdiction of the Commission providing local exchange telecommunications services, interexchange telecommunications services, cellular or mobile telecommunications services, or customer-owned pay telephone services that filed with the Federal Communications Commission an Illinois state specific Form 477 in response to the FCC's September 1, 2005 filing requirements shall file with the Illinois Commerce Commission by November 18, 2005 a copy of the Form 477 filed with the FCC and shall file a copy of the corresponding certification statement filed with the FCC, such filings to be made according to the format and address instructions in Finding 6 above.

IT IS FURTHER ORDERED that any telecommunications carrier filing an Illinois state specific Form 477 shall also file with the Illinois Commerce Commission any copies of any revisions made to its September 1, 2005 Illinois state specific Form 477 filed with the FCC after November 18, 2005 on the day such revisions are filed with the Federal Communications Commission, such filings to be made according to the format and address instructions in Finding 6 above.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit D

IT IS FURTHER ORDERED that any telecommunications carrier subject to the jurisdiction of the Commission providing local exchange telecommunications services, interexchange telecommunications services, cellular or mobile telecommunications services, or customer-owned pay telephone services that is not required to file a September 1, 2005 Illinois state specific Form 477 shall inform the Commission of such with a letter or e-mail to that effect to the addresses in Finding 6 by November 18, 2005.

IT IS FURTHER ORDERED that the Staff Report dated November 2, 2005 is made a part of the record of this proceeding.

IT IS FURTHER ORDERED that all records filed by telecommunications carriers pursuant to this Order shall be considered confidential and proprietary and exempt from disclosure under the Freedom of Information Act [5 ILCS 140].

IT IS FURTHER ORDERED that, subject to the provisions of Section 10-113 of the Public Utilities Act and 83 Ill. Adm. Code 200.880, this Order is final; it is not subject to the Administrative Review Law.

IT IS FURTHER ORDERED that this order be served upon each telecommunications carrier subject to the jurisdiction of the Commission providing local exchange telecommunications services, interexchange telecommunications services, cellular or mobile telecommunications services, or customer-owned pay telephone services.

IT IS FURTHER ORDERED that failure to comply with this order may subject a telecommunications carrier to an enforcement action pursuant to Section 13-303 of the Public Utilities Act [220 ILCS 5/13-303] in which civil penalties may be sought pursuant to Section 13-304 of the Public Utilities Act [220 ILCS 5/13-304].

Entered this 8th day of November, 2005.



                                        BY ORDER OF THE COMMISSION

# Stretch Declaration Exhibit E

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-1216 (RBW) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FILED**

JUL 2 6 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court upon a complaint filed by Judicial Watch, Inc., against the Federal Bureau of Investigation ("FBI") for its failure to comply with Judicial Watch's Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), request "for documents relat[ed] to the Oklahoma City bombing and/or the trials of Timothy McVeigh and/or Terry Nichols." Complaint ("Compl.") ¶ 5. The FBI has now filed a motion to dismiss the complaint, asserting that this Court lacks subject matter jurisdiction because the plaintiff has failed to exhaust the administrative remedies prescribed by the FOIA. Defendant's Motion to Dismiss ("Def.'s Mot.") at 2. After an examination of the facts of this case and the applicable legal principles under the FOIA, this Court must conclude that it is without subject matter jurisdiction, and accordingly, this case must be dismissed.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

## I.    Factual Background

The plaintiff's FOIA request relates to the April 19, 1995, bombing of the Alfred P.
Murrah Building in Oklahoma City, Oklahoma, that resulted in the convictions of Timothy
McVeigh and Terry Nichols.  Following McVeigh's and Nichols' convictions and during the
course of archiving the documents generated in connection with the investigation into the
Oklahoma City bombing, the defendant discovered materials that "included results of interviews,
notes, and transmittal envelopes which contain physical items" that were not used in the
prosecution of the defendants and had not been seen by the defendant's task force in connection
with the investigation.  Compl., Ex. 1  (Statement of Special Agent Defenbaugh).  The Attorney
General ordered that an investigation of this matter to be conducted by the Department of
Justice's ("DOJ") Office of the Inspector General.  Id.  On May 16, 2001, the plaintiff filed via
facsimile and by certified mail a FOIA request with the defendant's FOIA Officer for all
documents relating to this newly discovered material.  Compl. ¶ 5.  At that time, the plaintiff
requested expeditious handling of this request pursuant to 28 C.F.R. § 16.5(d)(ii) (2001).  Compl.
¶ 6.  On June 4, 2001, the plaintiff filed its Complaint requesting that this Court:

> (1) declare that Defendant's refusal to disclose the documents requested
> by Plaintiff is unlawful; (2) order Defendant to make the requested
> documents available to Plaintiff; (3) grant Plaintiff's request for a fee
> waiver; (4) award Plaintiff its costs and reasonable attorneys' fees in this
> action; and (5) grant such other and further relief as the Court may deem
> just and proper.

Id. at pp. 3-4.  On June 26, 2001, the defendant responded to the FOIA request and informed the
plaintiff that the search was being handled on an expedited basis, but that the relevant

2

information was currently being withheld pursuant to 5 U.S.C. § 552 (b)(7)(a) because of a

pending DOJ investigation. Def.'s Mot., Ex. 1.

## II.     Legal Standard for a Motion to Dismiss

Prior to deciding the merits of a case, a court must first determine whether it has the

jurisdiction to entertain the case. As the Supreme Court stated in Ex Parte McCardle, 7 Wall.

506, 514 (1868),

> [w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is
> power to declare law, and when it ceases to exist, the only function remaining to
> the court is that of announcing the fact and dismissing the cause. And this is not
> less clear upon authority than upon principle.

In response to a motion to dismiss a complaint for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff has the burden of establishing

jurisdiction by a preponderance of the evidence. Pitney Bowes, Inc. v. United States Postal

Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998) (citations omitted). In considering whether subject

matter jurisdiction exists, "the district court must accept all of the complaint's well-pleaded

factual allegations as true and draw all reasonable inferences from those allegations in the

plaintiff's favor." Id.

## III.     Analysis

There are two separate and distinct provisions of the FOIA implicated in this case: one

that covers the plaintiff's actual request for the Oklahoma City bombing investigation

documents, 5 U.S.C. § 552(a)(6)(A), and a second that addresses the plaintiff's request for an

expedited processing of this request, 5 U.S.C. § 552(a)(6)(E). Upon the filing of an expedited

processing request for documents under the FOIA, the government must comply with two

3

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

statutory response deadlines. First, an expedited processing request requires that the DOJ decide

within ten calendar days of its receipt whether to grant or deny the expedited treatment request.[1]

5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 16.5(d)(4). Second, notwithstanding the expedited

treatment request, the government must also determine and notify the requestor within twenty

days (excluding weekends and legal holidays) of receipt of the request whether it will comply

with the document request itself. 5 U.S.C. § 552(a)(6)(A).

It is well understood that a party must exhaust the available administrative remedies

under the FOIA before it may seek relief in the federal courts. Oglesby v. United States Dep't of

Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990); Spannus v. United States Dep't of Justice, 824 F.2d

52, 58 (D.C. Cir. 1987); Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1476-77

(D.C. Cir. 1986). A premature filing of a FOIA claim that has not matured because a party has

failed to exhaust mandatory administrative remedies prior to filing a complaint with a federal

court "is subject to dismissal for lack of subject matter jurisdiction." Judicial Watch, Inc. v.

United States Naval Observatory, 160 F. Supp. 2d 111, 112 (D.D.C. 2001). The rationale behind

the exhaustion requirement is that it gives the agency "an opportunity to exercise its discretion

and expertise on the matter and to make a factual record to support its decision." Oglesby, 920

F.2d at 61 (citing McKart v. United States, 395 U.S. 185, 194 (1969)). Moreover, it allows

agency supervisors an opportunity to correct mistaken denials of meritorious requests, thereby

---

[1] 28 C.F.R. § 16.5(d) provides that the DOJ should grant expedited treatment in the following situations:
(i) Circumstances in which the lack of expedited treatment could reasonably be expected to
pose an imminent threat to life or physical safety of an individual; (ii) An urgency to inform
the public about an actual or alleged federal government activity, if made by a person
primarily engaged in disseminating information; (iii) The loss of substantial due process
rights; or (iv) A matter of widespread and exceptional media interest in which there exist
possible questions about the government's integrity which affect public confidence.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

obviating the need for judicial review by the courts.  Id.  The FOIA is considered a unique statute

because it recognizes a constructive exhaustion doctrine for purposes of judicial review upon the

expiration of certain relevant FOIA deadlines.  Spannus, 824 F.2d at 58.  5 U.S.C. § 552(a)(6)(C)

provides that "[a]ny person making a request to any agency for records under . . . this subsection

shall be deemed to have exhausted his administrative remedies with respect to such request if the

agency fails to comply with the applicable time limit provisions of this paragraph."

Commenting on this provision of the FOIA, the District of Columbia Circuit stated that:

> [b]y 'deem[ing] exhaustion to occur on expiration of the relevant time
> limits, the statute provides for constructive exhaustion, which permits
> early 'accrual' of a cause of action in the interests of timely disclosure.
> Once constructive exhaustion occurs, any available administrative appeal
> -- i.e., actual exhaustion -- becomes permissive in the sense in which
> the term is used here; the requestor may pursue it, but his failure to do
> so does not bar a lawsuit.

Spannus, 824 F.2d at 58.

In the instant case, the plaintiff filed an expedited processing request for documents under

the FOIA with the FBI on May 16, 2001.  Compl. ¶ 5, Ex.1 at pp. 6-7.  Upon receipt of this

request, the FBI was required to make a determination regarding expedited processing and

inform the plaintiff of its decision within ten calendar days.  5 U.S.C. § 552(a)(6)(E)(ii); 28

C.F.R. § 16.5(d)(4).[2]  On June 4, 2001, twelve business days (excluding the weekends and legal

holidays) after filing its FOIA expedited processing request for the Oklahoma City bombing

---

[2]   While not disputing that the FBI failed to timely comply with this requirement, the defendant asserts that it "has since acted upon [the] request in an expeditious manner and provided the plaintiff with the appropriate notification as provided for by the statute." Def.'s Reply at 5.  The defendant provided the Court with a copy of a letter, dated June 26, 2001, acknowledging receipt of the plaintiff's FOIA request.  The defendant informed the plaintiff that its request was handled on an expedited basis, however, the material was withheld pursuant to 5 U.S.C. § 552(b)(7)(A) because of the DOJ's Office of Inspector General's inquiry into the facts surrounding the FBI's non-disclosure of this material.

investigation documents with the FBI, the plaintiff filed a complaint with this Court requesting

relief that pertains solely to the actual release of the documents.[3]  Although the plaintiff was

entitled to seek judicial review of the FBI's failure to make a decision regarding the plaintiff's

expedited processing request when the complaint was filed, the plaintiff's request for the actual

documents was premature.  5 U.S.C. §§ 552(a)(6)(A), (a)(6)(E)(ii); 28 C.F.R. § 16.5(d)(4)

While the plaintiff alleges that as of June 4, 2001, it had a "right of access to the

documents requested in its FOIA request," this Court finds that the only claim the plaintiff was

entitled to file on June 4, 2001, was a request for judicial review of the FBI's failure to timely

respond to the plaintiff's request for expedited processing.[4]  5 U.S.C. § 552(a)(6)(E)(iii) provides

for direct judicial review of an agency's failure to timely respond to a request for expedited

processing.  5 U.S.C. § 552(a)(6)(E)(iii) ("failure by an agency to respond in a timely manner to

such a request [for expedited processing] shall be subject to judicial review . . .").  This Court

finds § 552(a)(6)(E)(iii)'s provision for direct judicial review of expedited processing requests

distinct from the constructive exhaustion provision contained in § 552(a)(6)(C)(i) regarding the

actual production of the requested documents.  Id.; 5 U.S.C. § 552(a)(6)(C)(i) ("[a]ny person

making a request to any agency for records under . . . of this subsection shall be deemed to have

---

[3] As discussed above, the plaintiff's complaint specifically requested the following in the prayer for relief:
   (1) declare that Defendant's refusal to disclose the documents requested by Plaintiff
   is unlawful; (2) order Defendant to make the requested documents available to
   Plaintiff; (3) grant Plaintiff's request for a fee waiver; (4) award Plaintiff its costs
   and reasonable attorneys' fees in this action; and (5) grant such other and further
   relief as the Court may deem just and proper.
Compl. at pp. 3-4.

[4] The Court notes that the plaintiff was well aware of the applicable twenty business day time period in which the
defendant had to respond to its FOIA request.  The plaintiff's FOIA request itself specifically references that the
defendant's response "should be within 20 working days as required under the Act . . ." Compl. Ex. 1 at p. 2.

exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.").[5]  This Court therefore agrees with the observation of a member of this court who, in <u>Naval Observatory</u>, concluded that the "defendant's earlier failure to timely respond to the request for expedited processing is not equivalent to constructive exhaustion of administrative remedies as to the request for documents." 160 F. Supp. 2d at 113; <u>see also</u> <u>Dettmann</u>, 802 F.2d at 1477 ("[i]t is likewise clear that a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request -- and thus properly seek judicial review regarding that request -- and yet not have exhausted her remedies with respect to another aspect of a FOIA request.").  The court in <u>Naval Observatory</u> also concluded that

> [t]he statutory provision allowing for judicial review of a denial of a request for expedited processing, or failure to respond to such a request, in no way alters or repeals the time period for an agency's substantive determination of a request for records, which is 20 business days after receipt of such a request.

160 F. Supp. 2d at 113.  Finally, the court in <u>Naval Observatory</u> noted that <u>Spannus</u> "recognized only 'two time limit provisions' that trigger constructive exhaustion . . .,": the agency's determination of whether to comply with the actual FOIA request itself and the agency's subsequent determination of an administrative appeal of a decision not to disclose the requested material.  <u>Id.</u> at n.1 (citing <u>Spannus</u>, 824 F.2d at 58).

Here, the defendant aptly notes that the "plaintiff is attempting to bootstrap its disclosure request for records onto its administrative request for expedited processing - - with its 10-day

---

[5]  The Court finds it noteworthy that the constructive exhaustion language of § 552(a)(6)(C)(i) only applies to the "applicable time limit of this paragraph."  Therefore, Congress certainly did not envision that constructive exhaustion would apply to expedited processing requests made pursuant to § 522(a)(6)(E)(iii) because the time period set forth therein is not an "applicable time limit" contained in § 552(a)(6)(C)(i).

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

determination requirement . . ." Def.'s Reply at 3. It is clear that the only relief the plaintiff was

entitled to upon filing its complaint was for judicial review pursuant to 5 U.S.C. §

552(a)(6)(E)(iii), which is limited to a challenge of defendant's failure to respond to the request

for expedited processing, and not the court's review of whether it was entitled to production of

the documents themselves. Since the plaintiff's complaint does not seek judicial review of the

defendant's failure to timely respond to the expedited processing request, but instead seeks a

court order for the release of the actual documents, this Court must conclude that the plaintiff's

FOIA claim was filed prematurely, and therefore, must dismiss the plaintiff's complaint because

it lacks subject matter jurisdiction.[6]

Although it appears that the defendant subsequently failed to timely respond to the

plaintiff's substantive request for the documents within twenty business days, the Court will only

consider those facts and circumstances that existed at the time of the filing of the complaint, and

not subsequent events, in deciding whether this case must be dismissed. Judicial Watch, Inc. v.

United States Dep't of Justice, No. 97-2089, slip op. at 11 (D.D.C. July 14, 1998) (citing

Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("The existence of federal

jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). While

another member of this court, when faced with a premature filing of a FOIA complaint, was

---

[6] Although a claim for judicial review of the defendant's failure to timely respond to the plaintiff's request for expedited review is not properly before this Court, the Court does note that Congress has mandated that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(4)(E)(iv). While the defendant seemingly granted the plaintiff's expedited processing request after the ten-day expiration period and denied the request pursuant to 5 U.S.C. § 552 (b)(7)(A), whether the defendant's response could be considered a 'complete' response, because of its failure to notify the plaintiff of its right to appeal the adverse decision to the head of the agency under 5 U.S.C. § 552 (a)(6)(A)(i), does not need to be decided.

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

inclined to permit the plaintiff to file an amended complaint under Rule 15(d) of the Federal

Rules of Civil Procedure that would allege that on the twentieth day following the FOIA request

the plaintiff did not receive a response, this Court does not find such relief appropriate in this

case.[7]  The court in <u>Judicial Watch, Inc. v. United States Dep't of Energy</u>, permitted the plaintiff

to file an amended complaint, and denied the defendants' motion to dismiss, but specifically

distinguished the circumstances there from <u>Naval Observatory</u> by stating that "[n]or is [this] a

case where the defendants (with two exceptions) provided *any* response at all or *any* documents

during the first twenty days or even at any time closely proximate to the twenty-day period."  191

F. Supp. 2d 138, 139 (D.D.C. 2002) (allowing an amended complaint under circumstances in

which three of the numerous defendant government agencies had failed to even respond to the

plaintiff's request nearly ten months later).  In the instant case, the defendant did in fact

subsequently respond to the plaintiff's request, albeit eight business days late.[8]  While the Court

certainly frowns upon the defendant's untimely response and, as discussed above, does not have

subject matter jurisdiction and therefore cannot provide plaintiff any relief regarding the actual

release of such documents, the Court notes that the defendant's untimely response falls into the

class of situations which the <u>Judicial Watch, Inc. v. United States Dep't of Energy</u> Court

distinguished from the facts it was confronting, i.e., situations where a defendant responds "at [a]

time closely proximate to the twenty-day period."  <u>Id.</u> at 139.  Finally, while this Court does not

find that granting the plaintiff the opportunity to amend its complaint is appropriate in this case,

---

[7]  Relief under Rule 15(d) has not been requested by the plaintiff.

[8]  The Court calculates that the defendant was required to respond to the plaintiff's document request under the FOIA by June 14, 2001.  However, it appears that the defendant responded eight business days late on June 26, 2001.

9

Civil Action No. 06-01644 (RMC)
Stretch Decl. Exhibit E

as the Court in <u>Spannus</u> observed, a plaintiff "can simply refile his FOIA request tomorrow and restart the process.  In fact, so far as we can tell, nothing prevents him from requesting the same withheld documents decade after decade without ever bringing a timely suit to compel disclosure."  824 F.2d at 61.

Therefore, because this Court lacks subject matter jurisdiction to entertain the claim advanced in the complaint, the defendant's motion to dismiss must be granted.[9]

**SO ORDERED** this 26th day of July, 2002.

_____
REGGIE B. WALTON
United States District Judge

Copies to:

Janice Galli McLeod
Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C.  20530-0001

Larry Klayman, Esq.
Judicial Watch, Inc.
501 School Street, SW
Suite 725
Washington, D.C. 20024

---

[9] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

10