# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**FEDERAL COMMUNICATIONS** )<br>**COMMISSION,** )<br>)<br>*Defendant.* ) | Civil Action No. 06-1644 (RMC) |

## ANSWER OF DEFENDANT-INTERVENOR WIRELESS
## COMMUNICATIONS ASSOCIATION INTERNATIONAL

The Wireless Communications Association International ("WCA"), by its undersigned counsel, hereby provides its Answer to the Complaint for Declaratory and Injunctive Relief.

## ADMISSIONS AND DENIALS

1. WCA admits the claims in paragraphs 1, 2, 5, 7, and 8 in their entirety.

2. WCA admits the claims in the first sentence of paragraph 3 and has insufficient information to admit or deny the remainder of paragraph 3.

3. WCA has insufficient information to admit or deny the claims in paragraphs 4 and 6.

4. WCA denies the claims in paragraph 9. According to the FCC's Wireless Telecommunications Bureau's letter of September 26, 2006, the FOIA request was not received by the appropriate office and officer within the agency until August 29, 2006, and the due date for action, twenty working days after that date, was September 27, 2006. *See* Exhibit WCA-1, FCC September 26 Letter, at 1 n.2. The FCC denied the request in its letter of September 26.

5.  WCA denies the claims in paragraph 10. For the reasons stated in the Statement of Points and Authorities below, nearly all of the information contained in Forms 477 is subject to FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

6.  WCA opposes all of plaintiff's Demands for Relief.

## STATEMENT OF POINTS AND AUTHORITIES

The Federal Communications Commission ("FCC") established Form 477, its "Local Telephone Competition and Broadband Reporting Form," in *Local Competition and Broadband Reporting,* CC Docket 99-301, *Report and Order,* 15 F.C.C.R. 7717 (2000) ("*Report and Order*"). Its purpose is to gather information relevant to two separate, but related, FCC objectives — the deployment of broadband service and the development of local telephone competition. The form must be filed annually by providers of broadband service and providers of local telephone service, whether the services are offered over telephone wires, cables, optical fibers, or fixed or mobile wireless connections. Section I below describes the extremely detailed information that must be submitted on this form concerning the filer's operations, technologies, and customers, zip code by zip code, wherever the filer does business.

The FCC recognized when it adopted the Form 477 requirement that the information it was seeking was highly sensitive commercial information that companies generally would not reveal publicly, and it took steps to protect the confidentiality of the data received. *See, e.g., id.* at 7759. Accordingly, when the FCC's Wireless Telecommunications Bureau ruled on the plaintiff's FOIA request, it found that the entire database of Form 477 information, as well as the associated documentation, constituted "commercially sensitive, competitive information" that a filer would "customarily guard . . . from [its] competitors." *See* FCC September 26 Letter, at 3 (submitted as an attachment to the WCA Motion to Intervene). The FCC further found that

> [R]elease would harm [filers'] competitive interests by revealing to competitors their market strategies, their customer identities and counts and where they have deployed their services. For example, competitors could use this data to decide where to target their service offerings, facilities construction, and marketing, all to the detriment of Form 477 filers. For these reasons, we conclude that the requested data is protected against disclosure pursuant to FOIA exemption 4.

*Id.*

WCA is an association representing the wireless broadband industry, and its carrier and service provider members provide a variety of broadband services, including high-speed internet connections and telephone services. As a result, those member companies are required to file Form 477 annually, disclosing the details of their business operations, their customer locations, and their technology deployment to the FCC. Section II below demonstrates that all of the information called for in Form 477, other than the identifying information on the cover sheet, constitutes confidential commercial information that is exempt from FOIA pursuant to Exemption 4.

## I.    BACKGROUND: FCC FORM 477

The FCC requires the annual filing of Form 477 by three classes of providers: "Facilities-based Providers of Broadband Connections to End User Locations," "Providers of Wired or Fixed Wireless Local Telephone Services," and "Providers of Mobile Telephony Services." The specific definitions for these classes of providers, including various thresholds for the obligation to file, are included in the "Instructions for Local Telephone Competition and Broadband Reporting Form (FCC Form 477)" ("Instructions"), available at <http://www.fcc.gov/Forms/Form477/477instr.pdf>, a copy of which is submitted as an attachment. For providers falling within the specific definitions, including the thresholds contained therein, filing the form is mandatory. Nevertheless, the FCC also encourages

providers who are below the mandatory filing thresholds to file the form voluntarily. *Report and Order,* 15 F.C.C.R. at 7760 ("We also, as part of this information collection, encourage service providers that are below the reporting thresholds to report data on a voluntary basis.").

The form itself is an Excel spreadsheet reporting a filer's service statistics for a single state. A blank copy of the form, available at <http://www.fcc.gov/Forms/Form477/477.xls>, is submitted as an attachment. The form consists of the following elements: Cover Page; Part I (Broadband); Part II (Wireline and Fixed Wireless Local Telephone); Part III (Mobile Local Telephone); Part IV (Explanations and Comments); and Part V (Zip Code Listings). A summary description of who must complete these sections, and the information that must be supplied in each section, follows.

Cover Page: All filers must complete the cover page. Items 1-7 concern identifying information about the filer and submission. Item 8 is a "checkbox" allowing the filer to "request non-disclosure of some or all of the information in this file because you believe that this information is privileged and confidential and public disclosure of such information would likely cause substantial harm to the competitive business of the filer."

Part I (Broadband): The first portion of Part I, designated Part I-A, must be completed by filers who "provide one or more lines or wireless channels in the state that connect end users to the Internet at information transfer rates exceeding 200 kbps in at least one direction." Part I-A requires a breakdown by technology (nine specific types, followed by "all other technologies") of: (a) the total number of broadband connections to end users; (b) the percentage of such connections provided to residential end user premises; (c) the percentage of such connections provided over the filer's own local loop facilities or wireless equivalent; (d) the percentage of such connections billed to end users by the filer (or its affiliates or agents); (e) the percentage of

such connections that have information transfer rates exceeding 200 kbps in both directions provided to residential end user premises; and (f-j) the percentage of such connections that have information transfer rates exceeding 200 kbps in both directions that have information transfer rates in the faster direction of, respectively, 200 kbps-2.5 Mbps, 2.5-10 Mbps, 10-25 Mbps, 25-100 Mbps, and 100 Mbps or greater.  Filers completing Part I-A must further break down their coverage for each of the ten technology categories by individual zip code, in Part V.

The second part of Part I, designated Part I-B, must be completed by incumbent local exchange carriers ("ILECs") or cable systems that reported connections in Part I-B that were provided by xDSL or cable modem technologies, respectively.  Part I-B requires reporting of the filer's "best estimate of the residential end user premises in your service area, in this state, to which your broadband connections could be provided using installed broadband facilities."

Part II (Wireline and Fixed Wireless Local Telephone):  This part of the form must be completed by filers who have provided one or more voice-grade-equivalent wire lines or wireless channels used for local exchange or exchange access (*i.e.,* telephone service).  It requires the filer to state:  the total number of lines and channels provided to end users for voice telephone service; the total number of lines and channels provided to unaffiliated communications carriers for voice telecommunications service (broken down into two subcategories); and the total number of lines and channels constituting unbundled network element loops provided to unaffiliated communications carriers (broken down into two subcategories).  Each of these numbers must also be subcategorized by reporting the percentage of lines and channels meeting nine specific conditions.  In addition, filers reporting any lines and channels voice telephone provided to end users for voice telephone service must further break down the number of lines and channels by individual zip code, in Part V.

5

Part III (Mobile Local Telephone): Part III must be completed by filers who serve one or more mobile voice telephony subscribers over the filer's own facilities. The filer must report the total number of such subscribers served and the number served that are directly billed or prepaid subscribers of the filer (*i.e.,* not subscribers of a reseller).

Part IV (Explanations and Comments): Part IV is a space for comments or explanatory notes.

Part V (Zip Code Listings): Part V must be completed by filers who completed Part I-A or Part II. It requires a breakdown of certain numbers reported in those Parts by zip code, as previously described.

## II. ALL OF THE FORM 477 INFORMATION BEYOND THE COVER PAGE IS PROTECTED FROM DISCLOSURE BY EXEMPTION 4

The FCC correctly concluded that the information in its Form 477 database was protected from disclosure by FOIA Exemption 4, 5 U.S.C. § 552(b)(4). The Court of Appeals has made clear that Exemption 4 prevents disclosure of information that meets the criteria for being considered both "commercial" and "confidential." *Baker & Hostetler, LLP v. Department of Commerce,* 2006 U.S. APP. LEXIS 31454, *14 (D.C. Cir. Dec. 22, 2006). All of the information called for on FCC Form 477 after the cover page is both "commercial" and "confidential," and is therefore protected from disclosure by Exemption 4.

### A. The Information Is Commercial

Under the law of this Circuit, commercial information, for purposes of Exemption 4, includes information that "reveal[s] basic commercial operations . . . or relate[s] to the income-producing aspects of a business." *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1290 (D.C. Cir. 1983). Information also is considered commercial "when the provider of the information has a commercial interest in the information submitted to the agency." *Baker &*

6

*Hostetler,* 2006 U.S. APP. LEXIS 31454 at *16 (*citing National Association of Home Builders v. Norton,* 309 F.3d 26, 38-39 (D.C. Cir. 2002)). The Court explained that the "commercial interest" test covered information that could, if disclosed, affect the "commercial fortunes" of the filers, *citing Critical Mass Energy Project v. Nuclear Regulatory Commission,* 830 F.2d 278, 281 (D.C. Cir. 1987), or that "reflect the commercial strengths and challenges" of filers, describe market conditions, and, if disclosed, "would help rivals to identify and exploit those companies' competitive weaknesses." *Baker & Hostetler,* 2006 U.S. APP. LEXIS 31454 at 16-17.

From an examination of what the form requires (as summarized at length in Section I above) under these standards, it is readily apparent that all of the information called for by Part I, Part II, Part III, and Part V is commercial, and that information supplied in Part IV to supplement or explain information in these parts is also commercial under both of the tests employed by the courts. Under *Public Citizen Health Research Group,* all of the information in Parts I-III would be deemed commercial because it directly relates to the income-producing aspects of a filer's business — numbers of lines, percentage of lines serving residences, bandwidths of lines, technologies employed, total subscribers served vs. number of subscribers billed directly (*i.e.,* direct customers, not served by resellers), percentage of residences in the service area that can be served from existing facilities. The breakdown of such information to the highly granular level of individual zip codes in Part V turns the data into a detailed map of the filer's basic commercial operations. The same mass of data also qualifies under the "commercial interest" test. The facts and figures whose disclosure is sought clearly describe the relative strengths and weaknesses of the filers' business operations, describe market conditions, and would, if disclosed, help competitors scope out and exploit a filer's weaknesses.

**B.     The Information Is Confidential**

The controlling case on whether information is "confidential" for purposes of Exemption 4 is *National Parks and Conservation Association v. Morton,* in which the Court of Appeals stated, "commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." 498 F.2d 765, 770 (D.C. Cir. 1974); *accord  Judicial Watch v. Food and Drug Administration,* 449 F.3d 141, 148 (D.C. Cir. 2006); *Critical Mass Energy Project,* 975 F.2d at 878.  When the information submission is mandatory, the second criterion — likely to cause substantial competitive harm — typically has the greatest weight. *Critical Mass Energy Project,* 975 F.2d at 878.  When the filing is voluntary, on the other hand, the interest of the Government in encouraging such submissions tends to be the critical factor. *Id.*

The Form 477 filing requirement applies only to providers meeting specified criteria, but the FCC encouraged providers below the applicable threshold to file voluntarily, as well. *Report and Order,* 15 F.C.C.R. at 7760.  Thus, most Form 477 filings are mandatory, but there may also be some voluntary filers of Forms 477 as well.  As a result, WCA will examine the application of both criteria for determining whether the filings were confidential.

The involuntary filers were required to, and did, submit data that meets the test for confidentiality.  All of the information at issue — *i.e.,* everything beyond the Cover Page — is information that reveals a provider's service strategy, the nature of its customer base, the technology it uses, its level of deployment, and other closely guarded facts about its ability to compete.  This is the type of information that is not ordinarily revealed publicly by competitive firms on a state-by-state or even more granular zip code-by-zip code basis.  The disclosure of

this information would unquestionably provide a competitor (or a prospective competitor) with an extremely valuable window into a given filer's strengths and weaknesses and would suggest ways for a competitor to forestall the filer's growth plans or to anticipate the filer's competitive strategies.  Under these circumstances, WCA submits, the disclosure of this information would likely cause substantial competitive harm to the filers, and the information should be deemed confidential.

The same analysis applies equally to voluntary filers, but the disclosure of their filings would also have the adverse consequence of making future voluntary filings much less likely to occur, which would harm the FCC's ability to obtain such information voluntarily.  As a result, the *Critical Mass Energy Project* line of cases would dictate classifying the information as confidential.

Because the information contained in the Forms 477 (other than the Cover Pages) is both commercial and confidential, all such material is protected from disclosure by Exception 4.  Accordingly, the FCC properly denied the FOIA request.  In considering the matter *de novo,* the Court should reach the same conclusion and deny the Complaint.

                                        Respectfully submitted,

                                        /s/ *Michael Deuel Sullivan*

DC Bar #256842                          Michael Deuel Sullivan
                                        Wilkinson Barker Knauer, LLP
                                        2300 N Street, N.W., Suite 700
                                        Washington, D.C.   20037
                                        (202) 783-4141, 383-3332 (direct)
                                        msullivan@wbklaw.com

                                        *Counsel for Wireless Communications Association International.*

January 8, 2007.