**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1644 (ESH)** |
| | ) | |
| **FEDERAL COMMUNICATIONS** | ) | |
| **COMMISSION** *ET AL.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**DEFENDANT FEDERAL COMMUNICATIONS COMMISSION'S OPPOSITION**
**TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT FCC'S**
**MOTION FOR SUMMARY JUDGMENT**

This Freedom of Information Act ("FOIA") lawsuit concerns approximately 35,000 records that providers of telecommunications and related services ("service providers" or "filers") submitted to the Federal Communications Commission ("FCC" or "Commission") during the past approximately seven years. For the reasons set forth in the FCC's Motion for Summary Judgment and herein, the Court should enter summary judgment in favor of the FCC. Attached hereto are the Supplemental Declaration of Alan I. Feldman ("Feldman Suppl. Decl.") and the FCC's response to plaintiff's statement of facts.

I.    <u>INTRODUCTION</u>

The records at issue in this litigation -- FCC Forms 477 -- are standardized forms the Commission uses to collect information semi-annually from service providers regarding their provision of local telephone service and their deployment of broadband

1

services.  The FCC has withheld the Forms 477 pursuant to FOIA Exemption 4 because they contain "commercial or financial information obtained from a person [that is] privileged or confidential."  *See* 5 U.S.C. § 552(b)(4).  Indeed, it is undisputed that the forms contain detailed and proprietary company-specific data regarding service providers' business holdings, practices, strategies, and operations in individual state markets, including information about their service offerings and locations, as well as their customer types and counts. *See* plaintiff's statement of facts at ¶ 18.

In its motion for summary judgment, the FCC explained that disclosure of this information would cause substantial competitive harm to filers by providing competitors with valuable insights into the filer's operations, giving competitors pricing advantages, and unfairly aiding competitors in future business negotiations.  *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("FCC's Motion") (Document No. 9), at 21-28.  Specifically, disclosure would, *inter alia*, (1) allow competitors to determine the particular areas where a service provider has or has not been successful in acquiring customers; (2) disadvantage new entrants in particular geographic areas by enabling existing providers to target "win back" efforts; (3) disadvantage new entrants by drawing the interest of additional new competitors to a particular geographic area; (4) reveal data regarding the technologies that a service provider uses; (5) enable competitors to identify and target a service provider's largest or most lucrative customers; and (6) provide competitors with information about marketplace trends that would not be otherwise available through legitimate means.  *Id*.

In its motion, the FCC explained that disclosure was also likely to impair the

2

Commission's ability to obtain necessary information in the future.  Specifically, disclosure could jeopardize the FCC's ability to (1) fulfill its statutory mandate under the Telecommunications Act of 1996 to take action to open all telecommunications markets to competition and promote innovation and investment in those markets by all participants, including new entrants; and (2) obtain timely and accurate information and data of uniform quality and reliability.  *See* FCC's Motion at 18-21.  The FCC explained finally that the Forms 477 contain no information that is reasonably segregable given the nature of plaintiff's FOIA request, the voluminous amount of Form 477 submissions received, the manner in which the FCC maintains the data and publishes reports based on the data[1], and the Agency's staffing availability.  *Id*. at 28-32.

In response, plaintiff concedes that the Forms 477 constitute "commercial or financial information obtained from a person," as those terms are defined for purposes of FOIA Exemption 4.  *See* Plaintiff's Memorandum of Points and Authorities in Support of its Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("cross-motion") (Document No. 32), at 8.  The remaining dispute is thus whether the records are "confidential" under Exemption 4, and the parties agree that the applicable standard for evaluating this question is set forth in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).[2]

---

[1] As explained in the FCC's motion, the FCC publishes semi-annually two reports discussing summary statistics derived from the Form 477 data: the *High-Speed Services for Internet Access Report* (reporting "a snapshot of subscribership" for "[h]igh-speed lines connecting homes and businesses to the Internet"), and the *Local Telephone Competition Report* (reporting the "latest data on local telephone service competition in the United States").  *See* Feldman Decl. at ¶ 10.

[2] The vast majority of Forms 477 were submitted to the FCC "involuntarily" for purposes of evaluation under that standard.  Through 2004, the FCC encouraged voluntary filings by entities that did not meet the

Importantly, plaintiff provides no competent evidence to dispute seriously the FCC's detailed showing that release *in total* of the company-specific information contained on the Forms 477 would cause substantial competitive harm to service providers and impair the FCC's ability to obtain necessary information in the future. *See, e.g.*, plaintiff's statement of facts at ¶¶ 50, 55, 57-61 (stating that plaintiff "has no basis with which to admit or deny" the corresponding statements set forth in the FCC's statement of facts).   Rather, plaintiff asserts merely that each section of the Form 477 (the cover page and Parts I through V) should be assessed individually, and suggests that (1) the cover page does not contain protected information; (2) Parts I through IV may be redacted to prevent competitive harm; and (3) Part V contains some information that is publicly available.  Plaintiff therefore abandons its claim of entitlement to *all* company-specific information contained on the 35,000 Forms 477 at issue, and the remaining question is whether the FCC must disclose any of this information under the modified terms set forth in plaintiff's cross-motion.  The FCC addresses this question below.

## II.    ARGUMENT

### A.    Preliminary Matters

Contrary to plaintiff's characterization of FCC Orders and other events related to the Form 477 data collection program (*e.g.*, cross-motion at 12), the Commission has consistently strived to balance its interests in keeping the public informed while protecting confidential information submitted by its regulatees.  To this end, as stated, the

---

line-count thresholds for mandatory filing.  *See* 2000 Data Gathering Order, 15 FCC Rcd 7717 at 7760 (2000 WL 426145).  In its 2004 Data Gathering Order, the FCC eliminated these thresholds, and has since required all such entities to file Forms 477.  *See* 2004 Data Gathering Order, 19 FCC Rcd 22340 at 22345 (2004 WL 2601193).

FCC already makes publicly available a wealth of information based upon the Form 477 data.[3]  Additionally, the Commission recently released a Notice of Proposed Rulemaking seeking comment regarding its collection and use of the broadband data collected on the Form 477.  *See Development of Nationwide Broadband Data to Evaluate Reasonable and Timely Deployment of Advanced Services to All Americans*, WC Docket No. 07-38, Notice of Proposed Rulemaking, Released April 16, 2007 (2007 WL 1135554).  This NPRM underscores the Commission's continued commitment to ascertain, among other things, "how it can best ensure that it receives sufficient information about the availability and deployment of broadband services nationwide…[and] improve the data about wireless broadband Internet access that it currently collects on the FCC Form 477."  *Id*. at ¶ 1.

Keeping the public informed regarding the government's actions, however, should not undermine the competitive marketplace, nor should the FOIA be a vehicle for competitive harm to private companies required to submit information to a government agency.  Plaintiff's stated purpose throughout this litigation has been to "[p]ublicly identif[y] the companies that provide broadband service" by adding broadband information to its "Internet-based searchable database of the radio, television, newspaper and cable companies reaching any particular zip code."  *See* Complaint at ¶ 3; cross-

---

[3] To the extent that plaintiff suggests that the FCC's publications may be inaccurate, plaintiff is incorrect. For example, when examining the Commission's data, the Government Accountability Office did not, as plaintiff states, "conclude that the median number of broadband providers within a zip code was two."  *See* cross-motion at 4. GAO makes clear (*e.g*., n.19 at p. 18 of the website cited by plaintiff) that "two" refers only to providers of residential broadband service that are available at the specific locations of those households that responded to a third-party consumer survey.  GAO also makes clear that, by contrast, "eight" refers to residential and also non-residential broadband providers and to a larger geographic area

motion at 3-4.  The information contained on the Forms 477 that could be useful for this

purpose is confidential and thus exempt from disclosure under the FOIA.  Such

confidential information is not *reasonably* segregable from any non-exempt information

contained on the Forms 477 because, to the extent that the forms contain any non-exempt

information (*e.g*., certain information contained on the cover pages), segregating this

limited non-exempt information would produce a document that is of little or no

informational value to plaintiff given its intended use for the records.[4]  The FCC

considers segregation under plaintiff's terms here to underscore the confidentiality

concerns at issue in this case.[5]

### B.    The Cover Page And Part IV Of The Form 477 Contain Exempt and Non-Exempt Information, And The FCC Is Willing To Release the Non-Exempt Information To The Extent That It Is Reasonably Segregable.

Plaintiff now expresses an interest in obtaining the 35,000 cover pages of the

Forms 477.  The information contained on the cover pages, standing alone, neither

reflects what services a particular company provides, nor the ZIP code where service is

---

(*i.e.*, anywhere in the 5-digit zip code as opposed to within 2.5 miles of the survey-respondent household).
[4] While it is true that a party's "need or intended use for the documents is irrelevant to [that party's] FOIA action" and "has no bearing on the merits of [that party's] FOIA request," the FCC discusses plaintiff's stated purpose to illustrate its evaluation of plaintiff's FOIA request with respect to segregability.  *See North v. Walsh*, 881 F.2d 1088, 1096-97 (D.C. Cir. 1989) (quoting *United States Dept't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989)).

[5] Plaintiff cites no authority for the assertion (cross-motion at 9) that the FCC was obligated to consider segregation in the specific manner that plaintiff suggests.  Insofar as plaintiff's administrative appeal of the FCC's FOIA decision suggested alternate segregation schemes, the Commission notes that plaintiff filed that appeal *after* initiating this civil action, thus depriving the FCC of any meaningful opportunity for review outside of the litigation process.  In any event, the FCC does not contest that this Court now has jurisdiction over this case.  The FCC takes no position regarding plaintiff's contention that the intervenors and amici lack standing to assert objections with respect to jurisdiction, but notes that these parties' intervention in this litigation has created a situation similar to a reverse FOIA, in which a party brings suit in order to prevent an agency from releasing records pursuant to the FOIA.

6

being provided (the very information that plaintiff has said it seeks). *See* Feldman Suppl. Decl. at ¶ 3. Plaintiff asserts (cross-motion at 9-10) that the cover pages contain no protected information. In fact, the cover pages do contain some protected information. Specifically, boxes 5-6 contain personally-identifiable information concerning the individual who prepared the Form 477 data for submission to the FCC, including the individual's name, telephone number, and e-mail address. *See* Feldman Suppl. Decl. at ¶ 3; Attachment E to Feldman Decl. Such information is properly withheld pursuant to FOIA Exemption 6. *See Skull Valley Band of Goshute Indians v. Kempthorne*, Slip Copy, 2007 WL 915211 at n.7 (D.D.C. 2007) (finding that names, telephone numbers, and cellular telephone numbers of individuals properly withheld under FOIA Exemption 6); *Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 146, 176 (D.D.C. 2004) (upholding agency decision to redact personal information such as home addresses and telephone numbers).

Exemption 6 of the FOIA protects from disclosure personal information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted "similar files" to have a broad meaning so that all information that "applies to a particular individual" qualifies for protection. *See Lepelletier v. FDIC*, 164 F. 3d 37, 46 (D.C. Cir. 1999) (quoting *Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

The Supreme Court has emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning

his or her person." *See U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989). In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense Dept. of Military Affairs v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) (quoting *Department of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted) (quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994)); *see also Reporters Committee*, 489 U.S. at 773; *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

Here, release of the personally-identifiable information contained on the Form 477 cover pages would constitute an unwarranted invasion of personal privacy, particularly with respect to the approximately 74% of filers who requested confidential

treatment of their Form 477 submissions. *See* Feldman Suppl. Decl. at ¶ 3. Even where a filer did not request confidential treatment, it is reasonable to presume that the filer did not intend to make public the name, telephone number, and e-mail address of the individual who prepared the data for filing. This is particularly true with respect to smaller service providers (such as wireless ISPs, or WISPs), which may be sole proprietorships. *Id.* Releasing contact information for such entities could effectively release home phone numbers and e-mail addresses. *Id.* This is the very type of information that goes to the heart of Exemption 6, and disclosure would neither serve any utility for plaintiff's stated purpose in seeking the records nor reveal what the government "is up to."

The personally-identifiable information contained in boxes 5-6 of the cover pages could also be competitively sensitive, and is thus exempt from disclosure pursuant to FOIA Exemption 4. *See* Feldman Suppl. Decl. at ¶ 4. When service providers have few customers, the area code and exchange of the phone number may effectively identify the geographic location where that provider offers service, and therefore where its customers are located, with as much (if not more) precision than the ZIP Code information in Part V of the Form 477.[6] *Id.* The information is thus properly withheld on this basis as well.

The remaining information contained on the 35,000 Form 477 cover pages (other than boxes 5-6) is not exempt from disclosure under FOIA. *Id.* at ¶ 5. The FCC can

---

[6] While equally detailed information is publicly available for many filers (*e.g.*, the Form 499-based "locator" information at http://gullfoss2.fcc.gov/cib/form499/499a.cfm), that is not true for all entities required to file Form 477. For example, service providers that provide broadband Internet-access service but do not provide telecommunications services or interconnected VoIP service do not file Form 499. If such providers are not cable TV systems, they will not appear in the FCC/MB source cited by plaintiff. *See* cross-motion at 14, n.5.

readily extract this information and provide it to plaintiff in electronic form. *Id.* The FCC is willing to release this information to plaintiff, and suggests the terms for any such release at the end of this section. *Id.*

      With respect to Part IV of the Form 477, plaintiff now states that he no longer seeks "the text of any of the Part IV comments, but only the part and line numbers indicating which figures may be subject to some qualification." *See* cross-motion at 10-11. Part IV contains space for filers' comments or explanatory notes regarding the data submitted. *See* Feldman Decl. at ¶ 18. The information to which a comment applies is identified by entering "part" and "line" information into the left two columns of Part IV. For example, on the current form, filers could note I in the "part" column and 4 in the "line" column to refer to cable modem broadband connections. *Id.* The "part" and "line" numbers, standing alone, neither reflect what services a particular company provides (since the associated comment could indicate that the company did not, in fact, have data to report in the relevant part and line), nor the ZIP Code where service is being provided. *See* Feldman Suppl. Decl. at ¶ 6. As with the cover page, this information would thus be of limited or no usefulness for inclusion in plaintiff's database.

      In any event, the "part" and "line" numbers from Part IV are not exempt from disclosure under FOIA. *See* Feldman Suppl. Decl. at ¶ 7. To the extent that the data from Part IV of the 35,000 Forms 477 has been entered into the FCC's electronic databases, the "part" and "line" numbers are segregable, and the FCC is willing to release this information to plaintiff under the suggested terms set forth at the end of this section. *Id.* This applies to approximately 14,300 Forms 477 covering the reporting periods June

10

2005 through June 2006. *Id*. FCC staff would have to perform some manual review of the data to ensure that only the "part" and "line" numbers are captured. *Id*. This could take several weeks, depending upon staffing resources vis-à-vis other FCC mission-critical duties. *See* Feldman Suppl. Decl. at ¶ 7.

  With respect to the remaining approximately 20,700 Forms 477 (covering the reporting periods December 1999 through December 2004) for which data from Part IV is not entered into the FCC's electronic databases, however, disclosure would present a tremendous burden. *See* Feldman Suppl. Decl. at ¶ 8. FCC staff would need to create new computer code to "read in" the cells on the 20,700 original EXCEL filings containing the "part" and "line" numbers for each comment, and input this information into a separate and new database. *Id*. The new computer software would also need to pull information from these EXCEL filings that would uniquely identify information by company, state, regulatory status, and the date of the data collection. *Id*. FCC staff would then need to manually review all of the information to ensure that it is comprehensive and matches the filings at issue. *Id*. The foregoing process could take four to six weeks if a staff member was able to devote his full time to the task, which is unlikely. *Id*. The "part" and "line" numbers from Part IV of these 20,700 forms are thus not reasonably segregable from the remaining information contained in Part IV or in the other sections of the Form 477. *Id*.

  In cases where, as here, a large volume of records is at issue, an agency may permissibly withhold small segments of non-exempt data if the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that

separation by the agency and policing by the courts would impose an inordinate burden.
*See Assassination Archives And Research Center v. C.I.A.*, 177 F. Supp. 2d 1, 9
(D.D.C. 2001), *aff'd*, 334 F.3d 55 (D.C. Cir. 2003); *see also Flightsafety Services Corp.
v. Dept. of Labor*, 326 F.3d 607, 613 (5th Cir. 2003); *Lead Indus. Ass'n v. OSHA*, 610
F.2d 70, 86 (2nd Cir. 1979). The disclosable "part" and "line" numbers contained on the
20,700 Forms 477 for which Part IV has not been entered into the FCC's electronic
databases are so inextricably intertwined with the exempt, confidential information from
the remainder of Part IV and the other Form 477 sections that producing it would require
substantial agency resources and produce a document of little informational value.
Segregation of non-exempt material is neither useful, feasible, nor desirable where, as
here, it would compel the FCC to pour through thousands of pages of documents and
would impose an immense administrative burden that would in the end produce little in
the way of useful non-exempt material.  *See Journal of Commerce v. U.S. Dep't of the
Treasury*, No. 86-1075, 1988 U.S. Dist. LEXIS 17610, at *21 (D.D.C. Mar. 30, 1988).
The FCC therefore should not be required to disclose the Part IV "part" and "line"
numbers that are not contained in the FCC's electronic databases.

     In light of the foregoing, it is unclear whether plaintiff would still seek disclosure
of the limited Form 477 cover page and Part IV information discussed above if the Court
rules, as it should, that plaintiff is not entitled to the remainder of the Form 477
information.  The FCC thus suggests that the parties wait until the Court resolves the
pending motions before setting a release schedule, if any, for this cover page and/or Part
IV information.

**C.**    **Plaintiff's Suggested Redaction Scheme for Parts I – III of the Forms
477 Is Unreasonable and Would Not Prevent Competitive Harm.**

Plaintiff contends that Parts I through III of the Forms 477 may be redacted to
avoid Exemption 4 concerns.[7]  *See* cross-motion at 10.  Specifically, plaintiff asserts that
the FCC may replace the numbers that filers submitted in Parts I through III with "a
range that the number falls within (e.g., 0, 1-100, 101-1000, etc.) or, at a minimum, by
indicating whether the number is zero or greater than zero." *Id.*  In other words, plaintiff
suggests that the FCC should manipulate data that, individually, would be subject to
Exemption 4, in order to create a new document that potentially would not be subject to
Exemption 4.

Plaintiff's suggested redaction and replacement scheme is patently unreasonable
because it would require the creation of new agency records, a task that the FOIA does
not obligate the government to perform.  *See NLRB v. Sears, Roebuck Co.*, 421 U.S. 132,
161 (1975); *Students Against Genocide v. Dept. of State,* 257 F.3d 828, 837 (D.C. Cir.

---

[7] On Part I of the form, filers report the number of broadband connections provided to end user customers
broken out by technology and data-transfer rates, as well as the share (*e.g.*, percentage) of connections
provided to residential end users, the share of connections provided over filers' own facilities, and the
share of connections for which the filer bills the customer directly.  *See* Feldman Decl. at ¶ 15.  Also,
incumbent local telephone companies and cable system operators report the share of residential end-user
premises able to receive the digital subscriber line (xDSL) and cable modem connections that these
companies provide in their service areas.  *Id.*  Part II of the form collects data regarding wireline and fixed
wireless local telephone service.  *Id.* at ¶ 16.  Filers report the total number of lines and wireless channels
provided to end users, as well as the shares of lines provided to competitors through various voluntary and

13

2001)*, citing Yeager v. DEA,* 678 F.2d 315, 321 (D.C. Cir. 1982) ("[i]t is well settled that

an agency is not required by FOIA to create a document that does not exist in order to

satisfy a request").  Plaintiff's suggested scheme would first require the FCC to decide

upon an appropriate range for each of the more than 100 numbers in Parts I through III of

the Forms 477.  *See* Feldman Supp. Decl. at ¶ 9-10.  Discerning appropriate ranges would

be extremely difficult in and of itself because the appropriate scales of the data fields can

be vastly different.[8]  *Id.*  The FCC would then have to redact each number and replace it

with the appropriate range, thereby creating 35,000 new "Forms 477" containing number

ranges rather than actual numbers.[9]  *Id.*  The FCC has identified no need or use for any

such records, and would be creating these records solely for purposes of responding to

plaintiff's FOIA request.  *Id.*  Plaintiff's suggested scheme would therefore require the

FCC to create extensive new records that are not mandated by law, are unnecessary, and

are not useful for the overall work of the FCC -- a task not required by FOIA.  *See*

*Weisberg v. DOJ*, 705 F.2d 1344, 1363 (D.C. Cir. 1983) ("FOIA requires an agency to do

no more than disclose nonexempt documents within its possession that are retrievable by

a reasonable search"); *Krohn v. Dept. of Justice*, 628 F.2d 195, 197-98 (D.C. Cir. 1980).

Plaintiff's reliance on *Trans-Pacific Policing Agreement v. U.S. Customs*, 177

F.3d 1022 (D.C. Cir. 1999) is misplaced.  *See* cross-motion at 11.  First, the appellants in

---

required contracting agreements.  *Id.*  On Part III of the form, filers report the number of mobile telephony
subscribers served and the share of those subscribers that the filer bills directly.  *Id.* at ¶ 17.

[8] For example, as of June 2006, the total number of aDSL connections by state, as reported by the FCC
based on Form 477 data, ranged from 32,763 in South Dakota to 4,001,529 in California, and the number
of cable modem connections ranged from 19,861 in North Dakota to 2,956,932 in California.  *See* Feldman
Suppl. Decl. at ¶ 9.

[9] The FCC would also be required to write two separate software programs to perform the redaction and

*Trans-Pacific* requested only that the U.S. Customs Service redact the last four to six

digits of a *pre-existing* Harmonized Tariff Number (HTS).  *See* 177 F.3d at 1026.  As

stated, plaintiff here requests that the FCC redact certain numbers, then devise a system

of appropriate number ranges to replace each of these numbers, and finally create 35,000

new records containing these number ranges.

      Second, the proposed redaction scheme in *Trans-Pacific* purportedly retained

only a basic description of the contents of the marine containers at issue in that case, but

protected from disclosure the remaining digits of the HTS number containing "highly

specific, confidential information" that could, when associated with a particular entity,

indisputably cause substantial competitive harm.  *Id.*  Plaintiff's suggested redaction and

replacement scheme here, as discussed below, would not prevent competitive harm,

because the range of data that plaintiff seeks would still be sufficiently specific to reveal

competitively sensitive information when associated with the identities of particular

service providers.  *See* Feldman Suppl. Decl. at ¶ 11. The extent to which competitively

sensitive information is revealed would depend upon the design of the range structure.

*Id.*  If the size (or width) of the ranges was small, disclosing the range for a particular

company would be tantamount to releasing the exact number.  *Id.*  For example, if

Company X reported 45,342 asymmetric DSL (aDSL) lines in Virginia and the ranges

were constructed over 5,000 line intervals, revealing that Company X has 45,000 to

50,000 aDSL lines in VA is essentially the same as revealing the exact number.  *Id.*

      Using even the largest range possible, however -- zero/non-zero indicators --

---

replacement tasks for the current version of the form and for the version used prior to 2005.  *Id.*

would still reveal competitively sensitive information, such as purchased-connection speeds, customer mix, and deployment strategy by technology and the extent of reliance on filer-built versus leased facilities. *See* Feldman Suppl. Decl. at ¶ 12. A competitor could use that information to target particular customer segments, or even particular business customers of smaller entities, and to ascertain details of new technology deployments, particularly by smaller entities. *See* Feldman Suppl. Decl. at ¶ 12.

For example, if Company X has 50 aDSL lines in Virginia, it would be required to report this figure in Part I of the Form 477. *Id.* Even if each line item in Part I was released as either 0 or more than 0, it would still be revealed to Company X's competitors that Company X had some non-zero number of aDSL lines in VA. *Id.* Competitors would be able to discern from the remainder of the information contained in Part I the particular technologies that Company X is using to deploy broadband Internet access service in VA. *Id.* The information provided by Company X in columns (b) through (j) in Part I of the Form 477 (released also as 0 or more than 0) would reveal to competitors whether any of Company X's aDSL lines are residential, if any are over their own facilities, and into which speed-tiers the lines fall. *Id.*

Of particular value to Company X's competitors would be the ability to see how this data changes over time. *See* Feldman Suppl. Decl. at ¶ 13. For example, if Company X secured a new business contract in North Carolina in 2006, it would be required to file a Form 477 for NC showing in column (a) in Part I that it is providing a certain amount of symmetrical DSL (sDSL) lines; in column (b) that 0% of the lines are residential; in column (c) that 0% of the lines are over Company X's own facilities; in column (d) that

16

100% of the lines are billed to Company X; and in column (f) that 100% of the lines have

information transfer rates between 200 kbps and 2.5 mbps. *Id*. Even if the ranges used

for releasing the data were 0 versus more than 0, the data would show that Company X

picked up some sDSL lines in NC, that they are business lines, that they are provisioned

over "local loop" facilities leased by Company X from an unaffiliated carrier and that

they are all in the 200 kbps – 2.5 mbps. *Id*. It would thus be clear to Company X's

competitors that Company X landed the contract, what technologies were used to provide

the service, what speed tier the service falls into, and that Company X is using

leased facilities from an unaffiliated carrier to provide the service. *Id.* All of the

foregoing information is clearly competitively sensitive. Accordingly, there is no basis

for the FCC to undertake plaintiff's suggested redaction and replacement scheme.

### D.    Part V Of The Form 477 Contains Competitively Sensitive Information That Is Not Publicly Available.

Plaintiff contends that certain information contained on Part V of the Form 477 is

publicly available and thus not properly withheld under FOIA Exemption 4. Specifically,

plaintiff asserts that service providers typically release to the public on their websites

information about the geographic areas that they service by Zip Code; that "each

customer knows that his…particular service provider operates in that customer's ZIP

code area;" and that "service providers routinely inform customers of the services offered

in their area." *See* cross-motion at 12-13. For several reasons, this is an overly simplistic

assessment.

First, there are significant differences between the type of consumer information

that a service provider makes available on its website to recruit and inform customers and

the confidential business information that it provides to the FCC on the Form 477.  Part V

of the form collects ZIP Code data -- for each of a filer's technologies, it reports each of

the ZIP Codes in which it provides at least one end-user broadband connection.  *See*

Feldman Decl. at ¶ 19.  Filers also report each of the ZIP Codes in which they provide

wireline or fixed wireless local telephone service to at least one end user.  *Id*.  The

information provided in Part V is therefore based on and linked to other parts of the Form

477 because filers report a ZIP Code only when one or more of the subscribers reported

in Part I or Part II of the form are located in that ZIP Code.  *See* Feldman Suppl. Decl. at

¶ 14.  Taken as a whole, this data indicates what type of broadband connections – by

technology – a particular provider has in service in particular ZIP codes.  *Id*.

        Conversely, the website printouts on which plaintiff relies reveal only limited

consumer information, which is clearly much different from that which a competitor

would obtain from review of Part V.[10]  Each of the service providers and related

associations that have intervened or are amici in this litigation make clear that the

information contained on Part V of the Form 477 is not publicly available.  *See, e.g.*,

Statement of Points and Authorities of Defendant-Intervenor Wireless Communications

Association International (Document No. 30) at 8 ("[t]his is the type of information that

is not ordinarily revealed publicly by competitive firms on a state-by-state or even more

granular zip code-by-zip code basis.); Brief of the National Cable & Telecommunications

Association (Document No. 19) at 1 ("[t]he information that companies provide to the

---

[10] Plaintiff's reliance on *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397 (5th Cir. 1985), is
unavailing.  In *Sharyland*, state law required that the information at issue in that case be made available to
a large group of people, whereas here there is no such requirement, and the information contained on the

FCC on Form 477 is far more comprehensive and detailed than the information companies make publicly available…."); Brief of CTIA – The Wireless Association (Document No. 21) at 10 ("no comparable information exists in the public domain.") Indeed, it is undisputed that even large companies with multi-state operations typically do not include data in their shareholder or SEC reports or other public documents that is as granular as the state-level information contained on the Form 477.  *See* plaintiff's statement of facts at ¶ 21.

Regardless of whether some service providers may publicly disclose where they offer certain types of service, Part V of the Form 477 reflects where providers actually have customers – not where they merely offer to provide service (with the exception of mobile wireless broadband providers, who are required to report ZIP codes that best represent their service roll-out areas).  *See* Feldman Suppl. Decl. at ¶ 15.  The ZIP codes in which a service provider offers service are not necessarily the same ZIP codes in which it actually has current customers.  *Id.*

As set forth in the FCC's motion for summary judgment (at 23), certain of the confidentiality concerns associated with the Form 477 data arise specifically because the data reveals where companies have or have not actually acquired customers, as opposed to indicating merely where they offer service.  *Id*. at ¶ 16.  Disclosure of Part V of the Form 477 could, when correlated with other parts of the form, allow competitors to determine the areas where companies have or have not acquired customers, or the

---

Forms 477, as discussed herein, is not publicly available.  *See* 755 F.2d at 399.

structure of competition, for example, if a provider has succeeded in obtaining customers in only part of the area they serve. *Id.*

Moreover, certain of the confidentiality concerns associated with the Form 477 data arise specifically because disclosure would reveal information about new market entrants. *See* Feldman Suppl. Decl. at ¶ 17. Plaintiff asserts that "every one of the ten *largest* broadband providers prominently feature some type of ZIP code search function on their Web sites to inform the public what services they offer in particular locations." *See* cross-motion at 13 (emphasis added). These companies are established market competitors. *See* Feldman Suppl. Decl. at ¶ 17. The actions of a few large, well-established competitors do not address the competitive harm associated with the disclosure of data for other smaller companies, for which the areas where they offer service might be much broader than the areas where they have customers. *Id.* As explained in the FCC's motion for summary judgment (at 25), disclosure of Part V of the Form 477 could allow competitors already serving particular markets to respond to new entry or allow other competitors to free ride on the efforts of the first new entrants to identify areas where competition is more likely to be successful. *See also* FCC's motion at 26-27 (discussing the concerns associated with the ability of competitors to observe historical trends in company-specific Form 477 data).

Additionally, the website printouts of certain large broadband providers on which plaintiff relies all appear to relate to cable modem service or residential DSL service. *See* Feldman Suppl. Decl. at ¶ 18. As explained in the FCC's motion for summary judgment (at 25-26), however, certain of the confidentiality concerns associated with the Form 477

data arise specifically because the nature of the technology used reveals competitive

information. *Id*. Technology-specific data can, for example, reveal information about

the services offered to business, government, or institutional users that would allow

competitors to target those customers. *Id*.

The cable industry information to which plaintiff refers (cross-motion at 13-14)

that is released by the FCC does not reveal any comparable details about the service(s)

offered by those providers. *See* Feldman Suppl. Decl. at ¶ 19. Similarly, the FCC Media

Bureau source to which plaintiff cites (cross-motion at 14, n. 5) provides information

only about which communities have a cable TV system. Not all cable TV systems

provide cable modem service, and not all systems with cable modem service provide it

everywhere in the franchise area. *See* Feldman Suppl. Decl. at ¶ 19. Moreover, the

"operator address" information that is provided for the community (including zip code) is

typically a corporate or regional headquarters, which may actually be in a different state.

*Id*.

Further, because the FCC releases aggregate data, there are concerns about the

effects of releasing one company's data on the continued confidentiality of the data of

other companies serving that same area. *Id*. at ¶ 20. As explained in the FCC's motion

for summary judgment (at 27-28), release of one filer's data could, when associated with

publicly-available information, reveal market-specific information about data from filers

that sought confidential treatment. *Id*. Thus, even assuming *arguendo* that Zip Code data

for certain service offerings of certain large companies were not confidential, the

Commission could not release those data without going through the burdensome process described in the FCC's motion for summary judgment (at 28-32). *Id.*

Finally, *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987), cited by plaintiff, is readily distinguishable. In *CNA Financial Corp.*, it was undisputed that much of the material at issue was in the public domain. *See* 830 F.2d at 1154. *CNA Financial Corp.* does not require an agency to investigate whether information is, in fact, in the public domain. *Id.* The FCC has no obligation to conduct a nationwide search to determine whether any of the information that it reasonably believes is confidential has, at some time, somewhere, entered the public domain. Instead, the relevant inquiry where, as here, the federal government requires a private party to submit information, is whether the disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Pub. Citizen Health Research Group v. FDA*, 185 F.3d at 903 (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). Both factors support the FCC's withholding of the Forms 477 in this case.

E.    **Release Of Form 477 Information Would Impair The FCC's Ability To Obtain Necessary Information In The Future.**

Plaintiff contends that disclosure would not impair the FCC's ability to obtain necessary information in the future. *See* cross-motion at 14. As explained in the FCC's motion for summary judgment (at 18-20), disclosure and the resultant attribution of Form 477 information to particular companies would indisputably impair the FCC's ability to obtain accurate information from companies that provide it to the Commission under the

explicit understanding that such information will be treated confidentially.  The FCC

does not suggest that service providers would "break the law" as plaintiff asserts.  *See*

cross-motion at 14.  Rather, the Commission recognizes the realities of a competitive

marketplace in which providers strenuously guard confidential business information.  It is

thus entirely reasonable to presume that these entities would make every effort to protect

competitive information.  A lack of reliability of the Form 477 data would cripple the

FCC's ability to make rational decisions regarding the Form 477 information submitted,

thereby undermining the entire purpose of the data collection program and hindering the

FCC's ability to fulfill its statutory directives.

        The D.C. Circuit in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*

expressly left open the possibility that government interests other than the reliability of

data may also be implicated under the impairment prong of Exemption 4.  *See* 975 F.2d

871, 878-79 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993).  Indeed, Judge

Lamberth recognized and discussed at length in *Judicial Watch, Inc. v. Export-Import*

*Bank* the government's interests in its administrative efficiency and effectiveness, and its

interest in an agency's ability to carry out its statutory purpose.  *See* 108 F. Supp. 2d 19,

29-31 (D.D.C. 2000).  All of the foregoing interests are implicated in the FCC's

withholdings in this case.

        The Commission's recent Notice of Proposed Rulemaking regarding its

collection and use of the broadband data collected on the Form 477 underscores these

interests.  As the Commission recognized, "[s]ince 2000, broadband data collected

pursuant to the FCC Form 477 data collection program have significantly helped the

Commission and the public understand the extent of broadband deployment nationwide."
*See* Broadband NPRM at ¶ 2.  Resolution of the instant litigation is likely to affect the
manner in which the FCC collects Form 477 data on a going-forward basis.  *See* Feldman
Supp. Decl. at ¶ 21.  If the Commission were required to disclose all company-specific
information collected on the Form 477, it might have to scale back the information that is
presently collected.  *See* Feldman Supp. Decl. at ¶ 21.  This would significantly diminish
the FCC's ability to (1) develop, evaluate, and revise policy in the rapidly changing areas
of development of local telephone service competition and the deployment of broadband
services by providing valuable benchmarks for Congress, the Commission, other policy
makers, and consumers; (2) evaluate the Commission's and states' efforts to reduce
economic and operational entry barriers into previously monopolized local
telecommunications markets; (3) assess the availability of broadband services (such as
high-speed Internet access) to better satisfy its duty to encourage the deployment of
advanced telecommunications capability as required by section 706 of the 1996 Act; and
(4) achieve the complementary goal reflected in the 1996 Act of reducing government
regulation whenever possible.  *Id.*; *2000 Data Gathering Order*, at ¶ 2, citing 47 U.S.C.
§§ 151 *et seq*., Joint Statement of Managers, S. Conf. Rep. No. 104-230, 104th Cong., 2d
Sess., at 1 (1996).

      Importantly, the FCC's demonstration that disclosure could impair its ability to
obtain reliable information in the future and to carry out its statutory purpose alone
constitutes a sufficient basis for the Court to grant summary judgment in favor of the

FCC.  *See Judicial Watch*, 108 F. Supp. 2d at 29-31 (citations omitted).[11]  The FCC's sworn declarations to this effect should be given deference insofar as the FCC is in the best position to ascertain under what circumstances its operations could be impaired. *See, e.g., Comdisco, Inc. v. GSA,* 864 F. Supp 510, 515 (E.D. Va. 1994) ("it is the *government's* interests that are protected by this first prong; thus, it follows that it is the *government* that is best situated to make the determination of whether disclosure would inhibit future submissions" (emphasis in original, citations omitted); Feldman Decl. at ¶¶ 21-22; Feldman Supp. Decl. at ¶ 21.   Plaintiff's unsupported speculation concerning impairment to government operations, on the other hand, is not entitled to any weight and should not be considered under Fed. R. Civ. P. 56(e).

> **F.**    **The FCC Possesses No Technical Information Regarding The Structure Of Its Database**.

Plaintiff contends that the FCC should disclose "technical information about the structure of the FCC's Form 477 database."  *See* cross-motion at 15.  The FCC possesses no records containing such information.  *See* Feldman Suppl. Decl. at ¶ 22.

## III.    CONCLUSION

For the foregoing reasons, this Court should deny plaintiff's motion for summary judgment and grant defendant FCC's motion for summary judgment.

---

[11] Plaintiff's attempt to distinguish *Judicial Watch* and *Comstock Int'l* is unavailing.  *See* cross-motion at 14.  While service providers certainly do not have the option of being regulated in the United States by foreign entities instead of the FCC, the Commission has demonstrated the impairment to its operations that could be expected if the Forms 477 were disclosed.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

 /s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


  /s/_____
WYNEVA JOHNSON, DC Bar # 278515
Assistant United States Attorney


Of Counsel:

Michael A. Krasnow, Esq.
Office of General Counsel
Federal Communications Commission

26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1644 (ESH) |
| | ) | |
| FEDERAL COMMUNICATIONS | ) | |
| COMMISSION *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**DEFENDANT FEDERAL COMMUNICATION COMMISSION'S REPONSE TO
PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Pursuant to Local Rules 7(h) and 56.1, the Federal Communications Commission

("FCC") hereby responds to plaintiff's Statement of Material Facts As To Which There is

No Genuine Issue.  Plaintiff sets forth four "supplemental facts" to which the FCC

responds below.

**Plaintiff's Supplemental Facts**

1.      Plaintiff's employee hand-delivered Plaintiff's FOIA Request to

Defendant FCC on August 24, 2006.  Declaration of Brendan McGarry.

**Defendant's Response**: Defendant does not dispute that plaintiff's employee

hand-delivered plaintiff's FOIA request to an FCC employee on August 24, 2006, but

notes that the FCC's rules require FOIA requests to be addressed to its Managing

Director.  *See* 47 C.F.R. § 0.461(d)(1); FCC's website at http://www.fcc.gov/foia/*; see

also Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986) (FOIA

requests must be filed in accordance with the agency's rules), *citing* 5 U.S.C. §

552(a)(3)(B).  Plaintiff's FOIA request was addressed to Shoko Hair, FOIA Public

Liaison, and not the FCC's Managing Director. Even though plaintiff's FOIA request did not comply with the FCC's rules, it was forwarded to the FCC's FOIA Control Office, where it was received, date-stamped and assigned to WCB on August 29, 2006. *See* FCC's motion at 3, n.1; Attachment A to Feldman Decl.

      2.      The information called for on the cover page of FCC Form 477 is not confidential. *See* Attachment D to the Declaration of Alan I. Feldman, at 18.

      **Defendant's Response**: Defendant disputes this statement. The information contained in boxes 5-6 of the Form 477 cover pages is properly withheld from disclosure pursuant to FOIA Exemptions 4 and 6. *See* Feldman Suppl. Decl. at ¶¶ 3-4.

      3.      It is common for broadband providers to advertise the availability of their services within a particular geographic area and to allow potential customers to verify the availability of service via a search tool on the provider's Web page. *See* Exhibit 2.

      **Defendant's Response**: Defendant does not dispute that certain large broadband providers may advertise certain services (*e.g.*, cable modem service or residential DSL service) and allow consumers to verify the availability of certain services within a particular geographic area. Defendant disputes that such information is comparable to the information contained on the Form 477. *See* Feldman Decl. at ¶ 12; Feldman Suppl. Decl. at ¶¶ 14-20; Statement of Points and Authorities of Defendant-Intervenor Wireless Communications Association International (Document No. 30) at 8; Brief of the National Cable & Telecommunications Association (Document No. 19) at 1; Brief of CTIA – The Wireless Association (Document No. 21) at 10; plaintiff's statement of facts at ¶ 21.

      4.      The FCC makes publicly available information about the geographical area in which cable service providers operate. *See* http://www.fcc.gov/mb/vax/registeredcuid.xls (large Excel-format file, 13MB); or http://www.fcc.gov/mb/engineering/liststate.html.

      **<u>Defendant's Response</u>**: Defendant does not dispute that the FCC makes publicly available certain information about the geographic area in which cable service providers operate, but notes that the cable industry information to which plaintiff refers (cross-motion at 13-14) does not reveal comparable details about the service(s) offered by those providers. *See* Feldman Suppl. Decl. at ¶ 19. Similarly, the FCC Media Bureau source to which plaintiff cites (cross-motion at 14, n. 5) provides information only about which communities have a cable TV system. *Id.* Not all cable TV systems provide cable modem service, and not all systems with cable modem service provide it everywhere in the franchise area. *Id.* Moreover, the "operator address" information that is provided for the community (including zip code) is typically a corporate or regional headquarters, which may actually be in a different state. *Id.*

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_ /s/_____
WYNEVA JOHNSON, DC Bar # 278515
Assistant United States Attorney

Of Counsel:

Michael A. Krasnow, Esq.
Office of General Counsel
Federal Communications Commission

4