**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br><br>    Defendant. | Civil Action No. 06-01644 (ESH) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INTERVENOR-DEFENDANTS AT&T INC., VERIZON, AND THE UNITED STATES TELECOM ASSOCIATION**

**TABLE OF CONTENTS**

                                                    Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY ....................................................................................1

ARGUMENT............................................................................................................................2

I.      THE CENTER'S REQUEST FOR DISCLOSURE OF DATA IN "RANGE"
        FORMAT FAILS.................................................................................................2

II.     THE COVER PAGE DATA CONTAINS CONFIDENTIAL
        PERSONAL INFORMATION AND IS NOT INDEPENDENTLY USEFUL ...................7

III.    THE ZIP CODE DATA DISCLOSED IN FORM 477 PART V-1 IS NOT
        AVAILABLE PUBLICLY ....................................................................................9

IV.   DISCLOSURE IS LIKELY TO IMPEDE THE FCC'S EFFORTS TO OBTAIN
        ACCURATE AND COMPLETE DATA IN THE FUTURE...........................................11

V.     THE CENTER'S POLICY ARGUMENTS IN FAVOR OF DISCLOSURE ARE
        UNPERSUASIVE................................................................................................12

CONCLUSION.......................................................................................................................13

## TABLE OF AUTHORITIES

**Cases** Page

*Appleton v. FDA*, 451 F. Supp. 2d 129 (D.D.C. 2006) ................................................................. 8

*Artesian Indus., Inc. v. Department of Health & Human Servs.*, 646 F. Supp. 1004
(D.D.C. 1986) ............................................................................................................................. 11

*Davis v. DOJ*, 968 F.2d 1276 (D.C. Cir. 1992) ........................................................................... 10

*Gallant v. NLRB*, 26 F.3d 168 (D.C. Cir. 1994) ........................................................................... 8

*Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29 (D.D.C. 2002) .................................................... 2

*Journal of Commerce, Inc. v. United States Dep't of Treasury*, No. 86-1075, 1988 U.S. Dist.
LEXIS 17610 (D.D.C. Mar. 30, 1988) ........................................................................................... 7

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ........................... 3

*Lepelletier v. FDIC*, 164 F.3d 37 (D.C. Cir. 1999) .................................................................. 7, 8

*Mead Data Cent., Inc. v. Department of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) .................... 7

*National Ass'n. of Retired Fed. Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ................ 8

*Niagara Mohawk Power Corp. v. Department of Energy*, 169 F.3d 16 (D.C. Cir. 1999) ............ 9

*Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71 (D.D.C. 2001) ..................................... 9, 10

*Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996) ................................................................................. 2

*Sharyland Water Supply Corp. v. Block*, 755 F.2d 397 (5th Cir. 1985) ..................................... 11

*Skull Valley Band of Goshute Indians v. Kempthorne*, Civ. No. 04-339 (CKK), 2007 WL 915211
(D.D.C. Mar. 26, 2007) .................................................................................................................. 8

*Students Against Genocide v. Department of State*, 257 F.3d 828 (D.C. Cir. 2001) ................... 3

*Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022
(D.C. Cir. 1999) ............................................................................................................................. 4

*United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ........................................... 3

*Wilbur v. CIA*, 355 F.3d 675 (D.C. Cir. 2004) ............................................................................. 2

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ...................................................................3, 5, 6

**Statutes**

5 U.S.C. § 552 ...............................................................................................................................1

5 U.S.C. § 552(b)(4) .....................................................................................................................1

5 U.S.C. § 552(b)(6) .....................................................................................................................7

**Other Authorities**

Report and Order, *Local Competition and Broadband Reporting*, 15 FCC Rcd 7717 (2000) ..........................................................................................................................................12

Pursuant to Local Civil Rule 7(d), Intervenor-Defendants AT&T Inc., Verizon,[1] and the United States Telecom Association (collectively, "Intervenors") respectfully submit this Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Intervenors' Motion for Summary Judgment.

## INTRODUCTION AND SUMMARY

Invoking the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, plaintiff's complaint seeks public disclosure of all information submitted to the FCC on Forms 477 — a request that encompasses approximately 35,000 records submitted by hundreds of communications providers. *See* Compl. ¶ 3 (filed Sept. 25, 2006). In their motion for summary judgment filed January 8, 2007, Intervenors explained that this request includes an array of confidential information that, if disclosed, would reveal competitors' deployment strategies, their marketing successes and failures, and, perhaps most importantly, the precise broadband technologies they are using to compete in individual zip codes. Intervenors further explained that, in light of the competitive sensitivity of this information, the FCC correctly determined that it is exempt from disclosure under FOIA Exemption 4, which protects confidential commercial information, *see* 5 U.S.C. § 552(b)(4).

In its opposition and cross-motion, the Center for Public Integrity ("Center") now disavows its overbroad request for *all* data included on the Form 477, and it narrows its request to cover three categories of information: ranges of data that would be derived from the information submitted on Parts I-III(a) of the form; the Form 477 cover page; and data in Part V-1 of the form that reveal which competitors are offering particular broadband technologies in

---

[1] Verizon includes (1) the regulated, wholly owned subsidiaries of Verizon Communications Inc.; and (2) Cellco Partnership d/b/a Verizon Wireless, a joint venture between Verizon Communications Inc. and Vodafone Group PLC.

what zip codes. Even as narrowed, the Center's request cannot prevail: disclosure of the information in Parts I-III(a) in range form impermissibly would require the creation of new FCC records and would not in any event protect the confidentiality of the underlying data; any non-confidential information contained in the Form 477 cover page is not reasonably segregable; and the zip code information disclosed in Part V-1 is not, contrary to the Center's claim, already available publicly. Moreover, as the FCC has explained, disclosure of the information the Center seeks could impede the FCC's efforts to obtain accurate and complete data from service providers in the future. For these reasons, the subset of information collected via the Form 477 that the Center now seeks is protected from disclosure.[2]

## ARGUMENT

I.  **THE CENTER'S REQUEST FOR DISCLOSURE OF DATA IN "RANGE" FORMAT FAILS**

The Center's brief makes clear that it no longer seeks all of the information included in Parts I-III(a) of the Form 477, but rather is now asking the FCC to create "ranges" to replace data

---

[2] Intervenors' opening brief (at 2 n.4) also established that, because the Center filed its Complaint prior to the expiration of the agency's 20-day response period, the complaint was premature and should either be dismissed or supplemented via Rule 15(d). The Center responds that it "constructively exhausted" its remedies because it provided its FOIA request to an FCC employee whom the Center believed had authority to accept it. Pl. Mem. at 6-7. The question, however, is not *whether* the Center filed its request with the agency, but *when* it did so. It is undisputed that, under the FCC's rules, the Center's request was deemed filed when received by the appropriate office — in this case, on August 29, 2006, which was less than 20 days before the Center filed its Complaint. And the Center's claim that this flaw is remedied because the FCC has chosen not to assert it, *see id.* at 6, is incorrect: "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA," and a requester who fails to exhaust will "face dismissal of any lawsuit complaining about the agency's response." *Wilbur v. CIA*, 355 F.3d 675, 676-77 (D.C. Cir. 2004) (per curiam) (internal quotation marks omitted); *see Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29, 33 (D.D.C. 2002) ("A plaintiff's failure to exhaust administrative remedies precludes a federal court from exercising subject-matter jurisdiction over the party's FOIA claims."); *see also Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996) ("if 'Congress specifically mandates, exhaustion is required'") (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

in those sections. Pl. Mem. at 10-11. Under this proposal, where a provider reports that it serves, say, 12,563 broadband lines in a particular state using a particular technology, the FCC would replace that figure with a "range" (in this example, the FCC might substitute "10-15,000" for "12,563"). Contrary to the Center's position, the creation of such "ranges" cannot be required under the FOIA and would not in any event alleviate the competitive harm that would flow from the release of the competitively sensitive data on the Form 477.

    **A.**    As an initial matter, nothing in the FOIA or applicable case law suggests that the FCC can be required to transform the data reported on the Form 477 into "ranges." To the contrary, the Supreme Court has held that "[t]wo requirements . . . must be satisfied for requested materials to qualify as 'agency records.' First, an agency must either create or obtain the requested materials . . . . Second, the agency must be in control of the requested materials *at the time the FOIA request is made*." *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (internal quotation and citation omitted) (emphasis added). Accordingly, only those records that the FCC had created or obtained as of the date of the Center's FOIA request (August 29, 2006) are subject to that request.

Moreover, "[t]he Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also id.* at 154 ("agencies generally are not obligated to provide extensive services in fulfilling FOIA requests"). That is because, as the D.C. Circuit has explained, "[t]he Act deals with agency records, not information in the abstract. A requester must take the agency records as he finds them." *Yeager v. DEA*, 678 F.2d 315, 323 (D.C. Cir. 1982) (internal quotation and citation omitted); *see also*, *e.g.*, *Students Against Genocide v. Department of State*, 257 F.3d 828, 837 (D.C. Cir. 2001)

(rejecting request that agency produce new photographs at lower resolution to mask capabilities of reconnaissance systems because agencies "are not required to create new documents"). Intervenors are aware of no case law, and the Center cites none, requiring an agency to create new records in response to a FOIA request. Because the Center does not seek existing agency records, but instead asks that the FCC create new agency records, its request must fail.

The Center characterizes its request for the creation and insertion of "ranges" as a request for "redaction." Pl. Mem. at 10-11. "Redaction," however, refers to the *deletion* of information contained within a record. If the competitively sensitive data were redacted from the Forms 477, the relevant fields of the Form 477 would be blank. This is not what the Center is requesting. Rather, the Center wants redaction of competitively sensitive information and *insertion* of *newly created information*. *See also* FCC Opp. and Reply at 13-14. There is no basis in the FOIA or case law for such a request.

In this respect, the Center's reliance (Pl. Mem. at 11) on *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022 (D.C. Cir. 1999), which the Center describes as "functionally equivalent," is misplaced. Most significantly, *Trans-Pacific* involved redaction *only*, not redaction and replacement with new information. *See id.* at 1027-28. That case therefore provides no support for the Center's claim that the FCC can be required to create new records in order to respond to the Center's FOIA request.

Beyond that, whereas the redactions at issue in *Trans-Pacific* would have protected confidential information — by redacting some portion of the ten-digit Harmonized Tariff Schedule classification corresponding to certain shipments and thereby protecting the precise character of those shipments, *see id.* — there is no comparable method for disguising the competitively sensitive information included in the Form 477 through the use of redactions. As

4

the FCC explains, where a certain provider serves, say, 45,342 broadband lines in a particular state using a particular technology, the competitive concerns associated with disclosure of that information are not lessened by replacing the precise number of lines with a "range" of, for example, 45-50,000. *See* FCC Opp. and Reply at 15; *see also infra* pp. 6-7 (discussing competitive concerns associated with use of data ranges).

Nor is it accurate, or even relevant, that the Center's revised proposal would supposedly result in a "minimal burden" on the FCC. Pl. Mem. at 11. As noted, the Center's request involves approximately 35,000 records that have been compiled over the past seven years. *See* FCC Opp. and Reply at 1. The Center provides no details as to how the "ranges" it proposes could be created, and its assertion that it could be done with "automated processes" is unsubstantiated. More importantly, regardless of whether the burden the Center seeks to impose is "minimal," the D.C. Circuit has made clear that such a request is beyond the scope of the FOIA. In *Yeager*, the plaintiff sought information in a DEA database that was exempt from disclosure. Like the Center here, the plaintiff in *Yeager* argued that the FOIA required the DEA to use computer processes to provide the requested information in a non-exempt format. *See* 678 F.2d at 315. The district court rejected this argument as "beyond the statutory directive," *id.* at 319, and the D.C. Circuit affirmed:

> The interpretation suggested by Yeager may be desirable in terms of full disclosure policy and it may be feasible in terms of computer technology; these factors notwithstanding, however, we are not persuaded that Congress intended any manipulation or restructuring of the substantive content of a record when it commanded agencies to "delete" exempt information . . . . The fact that the public is deprived of information that might otherwise have been available cannot be the basis for the imposition of greater duties than those required by the Act itself.

*Id.* at 323. Under *Yeager*, whether it is possible for an agency to create new, non-exempt records through "automated processes" or with "minimal burden" is of no import: Creation of new

5

records is "beyond the statutory directive." The Center's request for data in "ranges" should accordingly be denied. *Id.* at 319.

  **B.**  Even if the FCC could be required to replace the information submitted on the Form 477 with data in range format, the public disclosure of such data would nonetheless result in competitive harm, as the records still would reveal sensitive information as to which technologies a service provider is using to provide service to which types of customers in a given location.

  To take one example, in Part I.A of the form, service providers must disclose the number of broadband connections provided to end users, broken down by technology (DSL, fiber-to-the-premises technology, etc.). *See* FCC Form 477, Exh. 1 to Def.'s Mem. in Support of Mot. for Summ. J. The service provider must also disclose, in percentage terms, the various maximum authorized speeds for the services sold to the providers' subscribers, broken down by type of technology and type of customer (residential versus business). *See id.* The creation of new agency records substituting ranges for precise responses would do nothing to disguise this information. Even if the FCC were to, for example, "redact" the last three digits of the number of subscribers in each category, a competitor not only could determine what providers were using what technologies in what states — itself highly sensitive information, *see* Intervenors' Mem. Supp. Mot. for Summ. J. at 12 — but also could deduce reasonably precise subscriber information by simply adding back three zeros. Likewise, if the FCC were to "redact" the second digit of a percentage response, a competitor could add back a zero to deduce the response accurate to within ten percentage points. Contrary to the Center's position, the use of ranges in place of the information on the Form 477 would not in fact prevent public disclosure of carriers'

deployment strategies and marketing successes, nor would it mitigate the substantial competitive harm that would flow from such disclosure. *See id.* at 12-14; FCC Opp. and Reply at 15-17.

## II.    THE COVER PAGE DATA CONTAINS CONFIDENTIAL PERSONAL INFORMATION AND IS NOT INDEPENDENTLY USEFUL

The Center argues that the cover page of Form 477 contains no information that could cause competitive harm if released. *See* Pl. Mem. at 9-10. Even assuming that to be true, there are two independent grounds for protecting that information from disclosure.

*First*, as a threshold matter, the Center has pointed to no piece of information on the Form 477 cover page that is independently useful. When residual information "taken separately or together ha[s] minimal or no informational content," it is not reasonably segregable and need not be disclosed. *Mead Data Cent., Inc. v. Department of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977); *see also Journal of Commerce, Inc. v. United States Dep't of Treasury*, No. 86-1075, 1988 U.S. Dist. LEXIS 17610, at *21 (D.D.C. Mar. 30, 1988) (declining to order disclosure of non-exempt portions of import cargo manifests because remaining data "would in the end produce little in the way of useful, non-exempt material").

*Second*, and in any event, boxes 5 and 6 of the Form 477 cover page require service providers to disclose the name, telephone number, and e-mail address of the employee completing the form. *See* FCC Form 477, Exh. 1 to Def.'s Mem. in Supp. of Mot. for Summ. J. As the FCC notes, *see* FCC Opp. and Reply at 7-9, this information is properly withheld under FOIA Exemption 6, which protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[3] Exemption 6 "is designed to protect personal information in public records,

---

[3] Under the Supreme Court's broad interpretation of "similar files," all information that "applies to a particular individual" is protected under Exemption 6. *See Lepelletier v. FDIC*, 164

even if it is not embarrassing or of an intimate nature." *National Ass'n. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("*NAFRE*").

In determining whether to release such personal information, a court must determine whether "the public would learn something directly about the workings of the *Government*" in releasing the information sought, and it must balance the public interest in such disclosure against the personal privacy interests at stake. *Lepelletier*, 164 F.3d at 47 (quoting *NAFRE*, 879 F.2d at 879) (emphasis in original). Applied here, that test strongly counsels against disclosure. There is nothing the Center could hope to learn about the workings of government from the name and contact information of the individuals that happened to submit the Forms 477 to the FCC. As the D.C. Circuit has explained, in such a circumstance — when the records sought "say nothing of significance about 'what the[ ] Government is up to'" — there is *no* public interest in disclosure. *Id.* And where there is "no public interest in, and a modest personal privacy interest against, disclosure . . . . [w]e need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *NAFRE*, 879 F.2d at 879. Indeed, courts have consistently exempted from disclosure name and contact information similar to that contained on the cover page of Form 477. *See, e.g.*, *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (affirming agency withholding of names of fax recipients under Exemption 6); *Skull Valley Band of Goshute Indians v. Kempthorne*, Civ. No. 04-339 (CKK), 2007 WL 915211, at *11 n.7 (D.D.C. Mar. 26, 2007) (noting that agency "appear[ed] to have properly invoked Exemption 6 in withholding the names, telephone numbers, and cellular telephone numbers of individuals named in the records"); *Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006) (affirming

---

F.3d 37, 46 (D.C. Cir. 1999) (quoting *Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). Because the contact information is specific to the individual completing the Form 477, the information qualifies as "similar files" under the text of Exemption 6.

government withholding of records containing private employer's employee information such as names, "biographical information related to their employment," and "specific duties or titles held at the company").[4]

### III. THE ZIP CODE DATA DISCLOSED IN FORM 477 PART V-1 IS NOT AVAILABLE PUBLICLY

The Center disputes the FCC's and Intervenors' reliance on Exemption 4 to protect the granular zip-code data included in Part V-1 of Form 477. According to the Center, these data are in the public domain and are therefore not protected under Exemption 4. *See* Pl. Mem. at 12-13. "[The Center's] position here is a little odd: if the information is publicly available, one wonders, why is it burning up counsel fees to obtain it under FOIA?" *Niagara Mohawk Power Corp. v. Department of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999). In any case, the zip code information disclosed in Part V-1 of the Form 477 is *not* publicly available, and it is accordingly not subject to disclosure.

To establish that Exemption 4 is inapplicable on the ground that it has already been disclosed, the Center "has the burden of demonstrating that the information sought is *identical* to information already publicly available." *Parker v. Bureau of Land Mgmt.*, 141 F. Supp. 2d 71, 79 (D.D.C. 2001) (emphasis added). The Center has failed to meet this burden. The Center insists that, because most major broadband providers have websites that enable a would-be subscriber to enter his zip code to determine whether he can obtain service, the data revealed in Part V-1 of the form are publicly available. But Part V-1 of Form 477 does not simply reveal

---

[4] The FCC has offered to segregate and release the cover sheet data other than personal information. *See* FCC Opp. and Reply at 9-10. Intervenors do not take issue with that position. As a general matter, Intervenors similarly do not object to the FCC's offer to release, from Part IV of electronically stored forms, "the part and line numbers" that correspond to comments submitted, provided the comment text itself is redacted, *id.* at 10, although Intervenors note that the same principle noted *supra* p. 7 — that data with limited informational content are not subject to disclosure — weighs against release of this information as well.

whether a particular provider offers broadband service in a particular zip code. Rather, in Part V-1, a service provider discloses, by zip code, whether it has current customers *and* whether those customers receive broadband service via specific technologies (including (a) asymmetric xDSL; (b) symmetric xDSL; (c) cable modem; (d) optical carrier (fiber to the end user); (e) satellite; (f) terrestrial fixed wireless; (g) terrestrial mobile wireless; (h) electric power line; or (i) other, including traditional wireline). *See* Form 477, Exh. 1 to Def's Mem. in Support of Mot. for Summ. J; *see also* FCC Opp. and Reply at 17-19. As discussed in Intervenors' opening brief (at p.12), the information reported on this section of the form is highly sensitive — it reveals whether and where providers are relying on new technologies, and thus provides a roadmap to providers' deployment strategies — and it is *not* publicly available. The Center thus cannot carry its burden of "point[ing] to 'specific' information [in the public domain] identical to that being withheld." *Davis v. DOJ*, 968 F.2d 1276, 1280 (D.C. Cir. 1992).

Even as to the more limited data regarding whether a provider serves a particular zip code, the Center has pointed to no public disclosure of service providers' *aggregate* service offerings: Each of the service providers' websites requires a user to conduct a zip-code specific search to determine whether service is available *in that zip code only*. Those websites do not provide a complete list of zip codes even a single provider serves, much less a list that identifies *all* zip codes that *all* providers serve. "The fact that one could collect and analyze publicly available data . . . does not establish that the compilation and analysis, as opposed to some of the underlying data, are available publicly." *Parker*, 141 F. Supp. 2d at 80. Accordingly, the fact that individual service providers' web-based search engines provide a response to a zip-code-specific inquiry regarding service availability does not entitle the Center to the aggregate zip code data collected by the FCC via Part V-1 of the Form 477.

10

In this respect, the Center's reliance on *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397 (5th Cir. 1985), is misplaced. The plaintiff in *Sharyland* sought the *exact* records (audit reports submitted to the Farmers Home Administration pursuant to a loan application) that had been disclosed previously. *See id.* at 398. Moreover, the district court in *Sharyland* had found that, as a water supply corporation owned by its 5200 member-customers, Sharyland faced "insignificant" competition from other water suppliers. *Id.* at 399. The court thus concluded that the information sought was neither "confidential" nor competitively sensitive, and it was therefore not protected from disclosure under Exemption 4. *Id.* In contrast, the Center seeks detailed, non-public, competitively sensitive records that fall squarely within the protection of Exemption 4. Thus, even apart from the fact that this Court has concluded that "*Sharyland* is simply not correct," *Artesian Indus., Inc. v. Department of Health & Human Servs.*, 646 F. Supp. 1004, 1008 (D.D.C. 1986), *Sharyland* does not support the Center's position.

## IV. DISCLOSURE IS LIKELY TO IMPEDE THE FCC'S EFFORTS TO OBTAIN ACCURATE AND COMPLETE DATA IN THE FUTURE

As discussed in Intervenors' opening brief and the FCC's opening and reply briefs, the Center's request also fails because public disclosure of the data the Center seeks would impair the FCC's ability to collect reliable data in the future. *See* Intervenors' Opening Br. at 15; FCC Mem. Supp. of Mot. for Summ. J. at 18-20; *see also* FCC Opp. and Reply at 22-24.

The Center objects that this contention is tantamount to an assertion that "companies would break the law" by failing to provide information in accordance with the FCC's directives. Pl. Mem. at 14. Neither the FCC nor the Intervenors have made any such assertion. The point, rather, is that communications service providers zealously guard their confidential business information. In the FCC's view, if the information provided to the FCC on the Form 477 were subject to public disclosure as the Center requests, providers may take that into account in

11

determining the scope and volume of data they provide, within the bounds of what the FCC's rules mandate. *See* Report and Order, *Local Competition and Broadband Reporting*, 15 FCC Rcd 7717, 7760, ¶ 91 (2000); FCC Opp. and Reply at 23.

Beyond that, the Center has no answer to the point that, if the FCC is forced to choose between, on the one hand, collecting detailed information that is necessarily made public irrespective of its competitive sensitivity, and, on the other hand, limiting its data collection efforts, the FCC might well choose the latter. As the agency points out, public disclosure of competitively sensitive information undermines competition in the industry. *See* FCC Opp. and Reply at 5. If collection of such information leads inexorably to public disclosure of such information — as the Center appears to contend — the FCC, quite reasonably, may elect to "scale back the information that is presently collected" rather than harm the markets it is charged with regulating. *Id.* at 24. For this reason as well, the Center's request to obtain access to the confidential information collected on the Form 477 should be rejected.

## V.     THE CENTER'S POLICY ARGUMENTS IN FAVOR OF DISCLOSURE ARE UNPERSUASIVE

To support its argument for public disclosure of information on the Form 477, the Center relies on quotes from various members of congress and FCC commissioners expressing a need for *the FCC* to improve its collection and analysis of broadband data. *See* Pl. Mem. at 2-3. There is a difference between, on the one hand, a federal agency obtaining accurate and granular broadband data to facilitate sound policy-making and, on the other, the public dissemination of competitively sensitive data. As noted immediately above, the latter, which is what the Center seeks here, would *undermine* competition and deployment in the broadband industry by disclosing confidential information to a service provider's competitors, and it would thereby

impede the public policy objective, noted at the outset of the Center's brief, of widespread broadband deployment.

The Center also claims that disclosure here "would help give citizens a more complete understanding of who they could turn to for high-speed access." Pl. Mem. at 3. But broadband providers have ample incentives to inform consumers of their product offerings and service availability: if consumers are not aware of those services, they will not buy them. Indeed, the very service provider web search engines discussed by the Center, *see id.* at 12; *supra* p. 10, are designed for that precise purpose. Contrary to the Center's claim, the public disclosure of information submitted on the Form 477 is accordingly not necessary to inform consumers of their broadband service options.

## **CONCLUSION**

The Court should deny the Center's cross-motion for summary judgment and should grant summary judgment to the FCC and Intervenors.

Respectfully submitted,

/s/ Colin S. Stretch

_____

| | |
|---|---|
| Gary L. Phillips (D.C. Bar No. 334037) | Colin S. Stretch (D.C. Bar No. 470193) |
| AT&T INC. | KELLOGG, HUBER, HANSEN, TODD, |
| 1120 20th Street, N.W. |   EVANS & FIGEL, P.L.L.C. |
| Washington, D.C. 20036 | 1615 M Street, N.W., Suite 400 |
| *Counsel for AT&T Inc.* | Washington, D.C. 20036 |
| | Telephone: (202) 326-7900 |
| Michael E. Glover | Facsimile: (202) 326-7999 |
| Edward Shakin (D.C. Bar No. 450495) | *Counsel for AT&T Inc., Verizon, and the* |
| William H. Johnson (D.C. Bar No. 481876) |   *United States Telecom Association* |
| VERIZON | |
| 1515 North Courthouse Road, Suite 500 | Jonathan Banks |
| Arlington, Virginia 22201 | UNITED STATES TELECOM ASSOCIATION |
| (703) 351-3099 | 607 14th Street, N.W., Suite 400 |
| *Counsel for Verizon* | Washington, D.C. 20005-2164 |
| | (202) 326-7300 |
| | *Counsel for United States Telecom* |
| |   *Association* |

14