UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Public Integrity, | \| |
| | \| |
| Plaintiff, | \| |
| | \| |
| v. | \| Civil Action No. 06-1644 (ESH) |
| | \| ECF |
| Federal Communications Commission, *et al.*, | \| |
| | \| |
| Defendants. | \| |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff respectfully replies as follows:

## INTRODUCTION

The Freedom of Information Act ("FOIA") facilitates public access to Government records, both paper and electronic. As there is a strong presumption in favor of disclosure of Government documents, the Federal Communications Commission ("FCC") bears the burden of justifying its failure to release to Plaintiff *any portion* of the Form 477 records it has collected semi-annually since the year 2000. As Defendants now concede, there are portions of the Form 477 that are not exempt from FOIA. In addition, a redacted version of Part V cannot be withheld under FOIA Exemption 4. The FCC has also failed to conduct an adequate search for supporting documentation about the Form 477 database.

Accompanying this Reply is the Declaration of Clair Kaye ("Kaye Decl.").

## ARGUMENT

**I.   PORTIONS OF THE DATA NOW CONCEDED TO BE NONEXEMPT**

Defendant FCC has now retreated from its position that none of the requested information is exempt and concedes that at least two segments can be released.

The FCC is now willing to release most of the information submitted on the cover pages of Forms 477 but seeks to withhold boxes 5 ("Contact person") and 6 ("Contact person telephone number and email address") based on the newly raised argument that this information is exempt on personal-privacy grounds (FOIA Exemption 6, 5 U.S.C. § 552(b)(6)). Plaintiff would argue that, because this defense was not raised in any defendant's initial responsive pleading (e.g., the FCC's Motion for Summary Judgment), this exemption has been waived. Ray v. U.S. Dep't of Justice, 908 F. 2d 1549 , 1557 (11th Cir. 1990) (failure to allege FOIA exemption in responsive pleading resulted in waiver of defense), *rev'd on other grounds sub nom.* United States Dep't of State v. Ray, 502 U. S. 164 (1991) ("Government's certiorari petition [had been denied] insofar as it sought review of that question"); Chilivis v. SEC, 673 F. 2d 1205, 1208 (11th Cir. 1982) (defendant required to allege all affirmative defenses in a responsive pleading and the failure to do so will normally result in waiver); *see also* AFGE v. U.S. Dep't of Commerce, 907 F.2d 203 , 206-07 (D. C. Cir. 1990) (question of waiver of FOIA exemptions not decided).

The FCC is also willing to release "part" and "line" numbers from Part IV for the June 2005 and later reporting periods, although Defendant-Intervenor WCAI continues to object on Exemption 4 grounds. *See* WCAI's Opp., at 4-5. If the Court accepts Plaintiff's arguments (see Pl.'s Memo, at 10-12) for redaction of the data in Parts I through III, however, WCAI's objection to release of the Part IV part and line numbers would have no force.

## II.   THE ZIP CODES WHERE A BROADBAND PROVIDER OFFERS SERVICE ARE NOT PROTECTED BY FOIA EXEMPTION 4.

The Defendants have contended that FOIA Exemption 4 requires withholding most of the information requested by Plaintiff. With respect to the information in Part V of Form 477, to the extent that the technology (e.g., asymmetric xDSL, cable modem, satellite, mobile wireless, etc.) used to deliver the broadband service is exempt information, redaction of the technology type

would obviate these concerns.[1] The remaining information – the ZIP codes, the identity of the service provider, and whether the service is broadband (Part V, columns (a) through (i)) or local telephone (column j) – would present no substantial Exemption 4 concerns.

**A.  Redaction of Technology Type Is Feasible.**

Redaction of the technology type from paper records might not be possible, but from electronic records should present no difficulty.

In the spreadsheets on which the ZIP code information is submitted to the FCC, the column location of each ZIP code denotes that a particular technology type is provided in that geographic area. *See* Feldman Decl., Attachment E, at 24. A simple redaction of the column headings would be ineffective because they are publicly available via the blank form. On the other hand, moving the ZIP code numbers so as not to disclose the associated technology type might arguably involve the creation of a new record, which of course is not required by FOIA. *See*, *e.g.*, Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 152 & n.7 (1980); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 162 (1975).

But this difficulty does not in fact arise because the FCC maintains the ZIP code information in an electronic database. The FCC's Feldman Declaration, at ¶ 34, describes the database's structure:

> ZIP code data consists essentially of the data that filers report in Part V of the Form 477. These data are divided between ZIP codes in which filers reported serving at least one local exchange subscriber and ZIP codes in which filers reported serving at least one broadband subscriber. On the local exchange side, there is one record for each ZIP code each filer reported. On the broadband side, there is one record for each ZIP code each filer reported in rounds one through eleven (December 1999 through December 2004), and, since June 2005, for each of the nine technologies as required in Part V of the Form 477 there is one record for each ZIP code each filer reported. Because there are numerous ZIP codes in each state, there are approximately 4.8 million ZIP code records in the database.

---

[1] Plaintiff has previously presented its argument for redaction of Parts I through III. *See* Pl.'s Memo at 10-12.

In his statement, Mr. Feldman further reports that the FCC's records are stored in Microsoft Access format. Feldman Decl. at ¶ 35. Such records exist independent of the entry spreadsheets and are conventionally manipulated using Structured Query Language (SQL), a computer programming language that allows for the easy retrieval and manipulation of electronic records stored in a relational database scheme. An electronic search, or query, can be employed on such records to output a variation or redacted form without the creation of new records. *See* Schladetsch v. HUD, No. 99-0175, slip op. at 5-7 (D.D.C. Apr. 4, 2000) (electronic database searches do not amount to creation of records). There is no reason SQL language could not be used to avoid indicating which technologies are deployed in a particular ZIP code or the locations in which a provider has deployed more than one type of technology.

### B. ZIP Code Information, with Technology Type Redacted, Is Clearly Nonexempt.

Defendants' objections to releasing the ZIP code data have focused primarily on the commercial sensitivity of the technology types used by service providers in specific locations. *See* FCC's Opp. at 18; Opp. of AT&T, Verizon and USTA at 10. Redaction would meet these concerns. Defendants' remaining objections are not substantial.

Redacting the associated information about technology type from the ZIP code information associated with a broadband provider would render the data nonexempt from FOIA. In a lawsuit under the Freedom of Information Act, the government bears the burden "of showing that requested information comes within a FOIA exemption." Niagara Mohawk Power Corp. v. U.S. Dep't of Energy, 169 F.3d 16, 18 (D.C. Cir. 1999). *See also* National Ass'n of Gov't Employees v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978) (noting that the government "ultimately [has] the onus of proving that the [records] are exempt from disclosure"). Plaintiff agrees with the FCC (FCC's Opp. at 22) that the relevant inquiry is

4

whether the disclosure is likely either to impair the government's information-collection ability or "to cause substantial harm to the competitive position of the person from whom the information was obtained." Public Citizen Health Research Group v. FDA, 185 F.3d at 903 (quoting Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)). In Public Citizen, the appeals court sustained the nonexempt status of one of the five documents described because intervenors in that case did not provide sufficient evidence of substantial competitive harm, but "only conclusory assertions that disclosure would cause substantial competitive harm." 185 F.3d at 906.

While Defendants assert that there is harm in releasing the Part V ZIP code information associated with a type of broadband technology, they do not provide any evidence that the release of the ZIP code numbers, with technology types redacted, would "cause substantial harm to the competitive position of the person from whom the information was obtained." Public Citizen, 185 F.3d at 903. The substantial harm to a provider's competitive position is lacking whether the information is readily available in a public format or merely public because it is easily discoverable by a person with an intent to discover it. One ZIP code in which a broadband provider operates is known by each subscriber, and it is readily knowable by others to whom that subscriber communicates.

It is not the fact that the data is not released to shareholders, or not generally released to the public, that makes it nonexempt, as the FCC seems to argue (Opp. at 19). Rather, ZIP code numbers with technology types redacted are not exempt because its disclosure is not likely "to cause substantial harm to the [submitter's] competitive position." Nat'l Parks, 498 F.2d at 770. The arguments presented by the Defendant-Intervenor Wireless Communications Association International (Document No. 30), and by Amici the National Cable & Telecommunications

5

Association (Document No. 19) and CTIA – The Wireless Association (Document 21) each refer to the entirety of the collection of information contained in the Form 477, or, at a minimum, the linkages of technology types to specific ZIP codes.

Defendant FCC suggests that that the disclosure by leading broadband providers of ZIP codes where they offer service does not address the potential competitive harm to smaller companies that may be associated with disclosure of ZIP code numbers. Feldman Suppl. Decl. at ¶ 17 ("The actions of a few large, well-established market competitors do not address the competitive harm associated with the disclosure of data for other smaller companies.") The release of ZIP code numbers without an associated technology type does not cause substantial competitive harm to small companies because such "information is already available to … competitors through routine market research efforts." Kaye Decl. at para. 6. The disclosure of the ZIP codes served by each broadband provider is more analogous to "a consumer looking in the yellow pages of a phone book. Broadband providers of all sizes advertise and are listed in the phone book. Such advertisements and listings take place in the areas in which broadband providers offer service. Such advertisements and listings are not commercially sensitive information." Id. at ¶ 7.

Further, the Defendant's distinction between the ZIP code numbers in which providers have customers and the ZIP code numbers in which providers offer service is dubious. Because a company is required to report a ZIP code number in the Form 477 form upon presence of a single customer within the ZIP code, there is a high degree of likelihood that there is a near-total overlap between the ZIP codes numbers in which service by a particular company is advertised and the ZIP code numbers that are included in the Form 477 form. The government provides no evidence to dispute that wireline broadband providers, such as those companies that offer cable

modem service or DSL service, routinely report ZIP code numbers to which they claim to offer service and yet have no broadband subscribers. And the validity of the distinction itself is undermined by the FCC's instructions "requir[ing] terrestrial mobile wireless broadband service providers to list Zip Codes that 'best represent' their broadband coverage areas." *See* Notice of Proposed Rulemaking (Adopted February 26, 2007, released April 16, 2007), ¶ 10, n.30 (citing 2004 Data Gathering Order, 19 FCC Rcd at 22349-50, 22393, para. 18 & App. D (instructing such providers to report the Zip Codes in which the mobile wireless broadband service is "advertised and available to actual and potential subscribers").

The FCC fails to apprehend that disclosure of ZIP code numbers, absent any disclosure of technology type, does not cause "substantial competitive harm" to filers, when it asserts that "release of one filer's data could, when associated with publicly-available information, reveal market-specific information about data from filers that sought confidential treatment." Feldman Suppl. Decl. at para 20. Speaking specifically about ZIP code numbers without any associated technology type, the agency asserts that the commission "could not release those data without going through the burdensome process described in the FCC's motion for summary judgment (at 28-32)." FCC's Opp. at 21-22. That process would call for the agency to disaggregate "any Form 477 data that filers might not consider confidential" from "specific items of Form 477 data for which confidentiality was requested." FCC's Motion for Summary Judgment at 29. Whether or not a submitter checks the "do not release" box is immaterial to the issue of whether the release of such data is likely to cause substantial competitive harm. FOIA provides the same test for the release of information by the government obtained from companies that *think* the release of their technology-type-free ZIP code numbers causes competitive harm (but does not) and that which is obtained from companies that *do not think* the release of technology-type-free ZIP code numbers

7

causes competitive harm (and, in fact, it does not). The test of substantial competitive harm is an objective and not a subjective decision. Nat'l Parks, 498 F.2d at 766.

### C. Release of ZIP Code Information Will Not Impair Government Interests.

Especially in the absence of competitive harm, there is no reason to believe that the FCC's ability to obtain reliable information will be impaired.

The FCC maintains that it is not arguing that service providers would break the law if the requested information is released but hints vaguely that "these entities would make every effort to protect competitive information."[2] FCC's Opp. at 23. The FCC has provided no examples of what these efforts might include. But if the agency's regulations require providers to submit information, the providers cannot withhold it, falsify it, or deliberately undermine its "reliability" without breaking the law.

### D. The FCC Has Already Released Comparable Information About Cable Providers Without Competitive Harm.

In its Opposition, at 21, the FCC apparently misunderstands Plaintiff's previous argument concerning the information the agency has made public about cable providers. Plaintiff was *not* arguing that, because information has been released about cable providers, many of whom also provide broadband service, therefore similar information should be released about other broadband providers.

Rather, Plaintiff's point is that, just as the FCC has released information on the geographic reach of all sorts of telecommunications service providers, it can do the same for broadband providers without causing competitive harm. The Center for Public Integrity already obtains information from the FCC in sufficient detail to list the television stations, radio stations and cable providers that serve any specified location in the United States. *See* the "Media

---

[2] The FCC improperly assumes that the information is "competitive." If the information is released, it will be because, *inter alia*, this Court has found no likelihood of substantial competitive harm to the submitters.

8

Tracker" at http://www.publicintegrity.org/telecom/default.aspx. The cable industry simply provides the most apt comparison to broadband or to local telephone service.

The information disclosed by the FCC about cable providers (http://www.fcc.gov/mb/vax/registeredcuid.xls (large Excel-format file, 13MB); or state-specific data linked from http://www.fcc.gov/mb/engineering/liststate.html) does indeed identify, in the field labeled "Community Name," the geographic area each provider is licensed to serve.[3]

Plaintiff reiterates that "If the FCC has been disclosing the service areas of cable providers without causing competitive harm, then it should be able to disclose similar information for broadband and telephone service providers as well." Pl.'s Memo at 14.

### III. INADEQUATE SEARCH FOR SUPPORTING DOCUMENTATION

In its Opposition (at 25, and Feldman Suppl. Decl. at ¶22), the FCC has for the first time made the claim that it possesses no records responsive to Plaintiff's request for "documentation associated with" the FCC's database of Form 477 information.

In considering Plaintiff's FOIA request, the FCC's Wireline Competition Bureau apparently believed that Plaintiff was seeking all *documents* associated with the database, responding in part that this "request would encompass documents containing Commission analysis of submitted data," and withholding these documents under FOIA Exemption 4. Feldman Decl., Attachment B, at 2.

In its administrative appeal, Plaintiff clarified that it was seeking documentation such as "data dictionaries, database documentation, record layouts, data entry instructions and similar printed or electronic documentation materials," that is to say "documentation associated with the structure of the database, not with its contents." Feldman Decl., Attachment C, at 2-3.

---

[3] The FCC is correct in pointing out that the "operator address" is often outside the listed community or even in a different state. FCC's Opp. at 21. Nevertheless, the "Community Name," "Municipality Type," and "County Name" describe the area where service is provided.

9

Nevertheless, in the FCC's Motion for Summary Judgment, the agency made no mention of this portion of Plaintiff's request.

Now, the FCC's declarant states only that "The FCC possesses no records containing 'technical information about the structure of the FCC's Form 477 database.'" Feldman Suppl. Decl. at ¶ 22. On this record, the agency has not met its burden of demonstrating that it has made an adequate search for the requested records. *See, e.g*, Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994) (finding description of search inadequate when it failed "to describe in any detail what records were searched, by whom, and through what process").

The Court should order the FCC to undertake a new search for these requested records or to place in the record its evidence that there are none.

## **CONCLUSION**

For the reasons argued in Plaintiff's Memorandum supporting its Cross-Motion for Summary Judgment, the Court should order the Defendant FCC to release the information collected on Forms 477, including the information submitted on the cover sheets, in Parts I, II and III (redacted to appropriate ranges), Part IV (part and line numbers, with comments redacted), and Part V; as well as the requested supporting documentation.

In the alternative, the Court should order the release of any segregable non-exempt portions of this information, including at a minimum the cover sheet and Part IV information and the ZIP code numbers contained in Part V. The Court should also order a new search for the requested documentation.

                        Respectfully submitted,

                        _____/s/_____
                        Peter Newbatt Smith
                        D.C. Bar #458244
                        Center for Public Integrity
                        910 17th Street, N.W., 7th Floor
                        Washington, DC 20006-2606
                        202-481-1239
                        e-mail: psmith@publicintegrity.org

                        Attorney for Plaintiff

June 12, 2007