UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL COMMUNICATIONS )<br>COMMISSION *ET AL.*, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 06-1644 (ESH) |

**DEFENDANT FEDERAL COMMUNICATIONS COMMISSION'S RESPONSE
TO THE COURT'S AUGUST 6, 2007 ORDER**

The Federal Communications Commission ("FCC") respectfully responds to the Court's August 6, 2007 Order directing the FCC to file additional pleadings in this case. The Order directs the FCC to "file a supplemental affidavit to respond to the argument presented at page ten of plaintiff's reply," explaining in more detail the Agency's search for "technical information about the structure of the…Form 477 database." *See* Order at 1. In response, the FCC attaches hereto as Exhibit 1 the Second Supplemental Declaration of Alan I. Feldman. Additionally, the Order directs the FCC to "respond to plaintiff's argument that the FCC should be required to provide redacted information from Part V of the Form 477." *Id.* at 2. The FCC responds to that argument below.

As explained in the FCC's prior filings in this case, Part V of the Form 477 requires filers to report each of the ZIP codes in which they provide at least one end-user broadband connection; the technology type that is deployed in that ZIP code; and each of the ZIP codes in which they provide wired or fixed wireless local telephone service to at least one end-user. *See* Motion for Summary Judgment at 11; Opposition & Reply at 18.

The FCC argued, and plaintiff apparently concedes in its reply brief (at 3-8), that public release of this information would cause substantial competitive harm to filers by, among other things, providing competitors with valuable insights into the filer's business operations and unfairly advantaging competitors in future business negotiations.  *See* MSJ at 16-28; Opp. & Reply at 17-22; *National Parks and Conservation Ass'n*, 547 F.2d 673, 684 (D.C. Cir. 1976), *Center for Public Integrity v. Dep't of Energy*, 191 F. Supp 2d 187, 194 (D.D.C. 2002); *Export-Import Bank*, 108 F. Supp 2d 19, 29 (D.D.C. 2000).

Plaintiff now contends for the first time in its reply brief that the FCC should be required to redact the technology type from the ZIP code data contained in Part V, and that release of the remaining ZIP code data would not competitively harm filers.  *See* Reply at 3-9.  Although it would be physically feasible for the FCC to redact the technology type from the Form 477 records contained in its electronic database, disclosure of the remaining ZIP code data would still cause competitive harm to filers for several reasons.[1]

First, even absent the information concerning technology type, a competitor would be able to match the ZIP codes to particular filers that have business operations in those ZIP codes to learn the specific geographic area(s) in which a filer gained or lost customers.  As discussed in paragraphs 27-28 and 30 of Alan I. Feldman's January 8, 2007 Declaration, this would particularly affect smaller filers and new entrants.  By tracking the ZIP code(s) in which a particular filer acquired customers and/or the ZIP code(s) in which a filer once had customers but no longer does, competitors would gain valuable information about where the filer is focusing its efforts to acquire customers and

---

[1] Release of only the Part V ZIP code data would also still impair the Commission's ability to obtain necessary information in the future for the reasons set forth in the FCC's Motion for Summary Judgment (at 18-21) and its Opposition & Reply brief (at 22-25).

2

the overall financial health of the filer. Competitors would know how many and what types of companies have successfully acquired customers in specific geographic areas. As discussed in paragraph 18 of Mr. Feldman's May 15, 2007 Supplemental Declaration, this data, particularly when analyzed over time, would "allow competitors already serving particular markets to respond to new entry or allow other competitors to free-ride on the efforts of the first new entrants to identify areas where competition is more likely to be successful."

Second, the ZIP code data standing alone could still reveal specific customer relationships. As discussed in paragraph 31 of Mr. Feldman's January 8, 2007 Declaration, the ZIP code data would permit competitors to identify a filer providing high-speed service to any customer with a unique ZIP code, *e.g.*, the FCC's ZIP code of 20554 assigned solely to its headquarters building in Washington, D.C., based upon the association of the filer's name with that particular ZIP code. In other words, the ZIP code data would reveal the presence of an actual business relationship between two specific entities. In such situations, the data unambiguously show that a filer has captured a specific customer, and is therefore significantly more revealing than whether the filer is merely advertising in that ZIP code or surrounding area(s). A competitor's knowledge of such a specific business relationship improves the competitor's ability to draw inferences about a filer's overall financial and competitive position. This knowledge would provide competitors with an advantage in designing specific competing offers to target that customer.

Even with respect to non-unique ZIP codes, in many cases a specific business relationship would be revealed by releasing the Part V ZIP code data alone. There is a

3

tremendous variance in the size and number of addresses covered by particular ZIP codes. A specific business relationship could be revealed based upon the number of addresses in a particular ZIP code that covers a small area or because of the unique distribution of residences and businesses that may exist in a particular ZIP code. For example, assume that a single large or medium-sized business is located in a particular largely-residential ZIP code. If the Part V ZIP code data reflects that a particular filer is providing high-speed service in that ZIP code, and it is well known that the filer provides only business services, *e.g.*, through the filer's name or trade press, then the ZIP code data would effectively reveal a business relationship between that filer and the particular business. Again, this would provide specific and concrete information to competitors to aid them in designing specific competing offers to target that customer.

Such ZIP code data is not readily available or easily discoverable from public sources as plaintiff suggests. It bears noting that "[plaintiff's] position here is a little odd – if the information is publicly available, one wonders, why is it burning up counsel fees to obtain it under FOIA?" *See Niagara Mohawk Power Corp. v. Dept. of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999). In any event, disclosure of the Part V ZIP code data is not analogous to a customer looking in the yellow pages of the telephone book as plaintiff suggests. *See* Declaration of Claire Kay attached to plaintiff's reply brief, at ¶ 7. The phone book will reveal some, but not necessarily all, of the companies offering high-speed service over a large area that could include thousands of ZIP codes. This does not reveal the extent to which a company has successfully acquired or lost customers in any of those ZIP codes, nor the presence of a business relationship between a specific provider and a specific customer. The knowledge that a high-speed service provider is

4

offering service in a particular county or metropolitan area may be of some benefit to a competitor, but it is not comparable to knowing the particular ZIP codes in which the provider has paying customers.

There is also a significant distinction between a service provider's advertised service area and the ZIP codes in which it actually has customers. Even if there is "near-total overlap" between the ZIP codes in which the provider advertises and the ZIP codes entered on the Form 477 as plaintiff suggests (Reply at 6), there cannot be total overlap, and it is in these locations that competitively sensitive information will be revealed upon the release of the Part V ZIP code data. Specifically, the presence of unique (or nearly unique) ZIP codes makes it impossible for all service providers that advertise in that ZIP code to have a customer in that ZIP code.

In sum, the information provided in Part V is based on and linked to other parts of the Form 477. Thus, different parts of the Form 477 function much like pieces of a puzzle – the more information that a competitor is able to view, the more complete the picture of a filer's business holdings, practices, strategies, and operations in individual state markets, including information about their service offerings and locations and customer types and counts. Redacting the technology type and releasing just the ZIP code data from Part V would clearly not obviate the competitive harm to filers from disclosure of this information. Based upon the foregoing and the record evidence in this case, the Court should deny plaintiff's motion for summary judgment and grant defendant FCC's motion for summary judgment.

                      Respectfully submitted,

                      _____
                      JEFFREY A. TAYLOR, D.C. BAR # 498610
                      United States Attorney

                      __/s/_____
                      RUDOLPH CONTRERAS, D.C. Bar # 434122
                      Assistant United States Attorney

                      __/s/_____
                      WYNEVA JOHNSON, DC Bar # 278515
                      Assistant United States Attorney

Of Counsel:

Michael Krasnow, Esq. Office of General Counsel FCC