UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  06-01644 (ESH) |
| FEDERAL COMMUNICATIONS COMMISSION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

      The Center for Public Integrity has sued the Federal Communications Commission ("FCC") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), seeking the release of approximately thirty-five thousand records that providers of telecommunications and related services have submitted to the FCC on a semiannual basis since March 2000.  The FCC contends that much of the requested information may be withheld under FOIA Exemptions 4 and 6.  The FCC's position is endorsed by defendant-intervenors the United States Telecom Association ("USTA"), AT&T Inc., Verizon (collectively, "the joint intervenors"), and the Wireless Communications Association International ("WCA"), as well as by amici curiae the National Cable & Telecommunications Association ("NCTA") and CTIA - The Wireless Association ("CTIA").  Before the Court are cross-motions for summary judgment filed by plaintiff, the FCC, and defendant-intervenors.

## BACKGROUND

**I.  Parties and Amici**

Plaintiff is a nonprofit organization whose mission is to "conduct[] investigative research and reporting on public policy issues in the United States and around the world." (Compl. ¶ 2.) As part of an "ongoing project on the political influence of the telecommunications and media industries," plaintiff "has published an internet-based searchable database of the radio, television, newspaper and cable companies reaching any particular zip code." (*Id.* ¶ 3.) Plaintiff would like to expand its "Media Tracker" database to include broadband companies. (*Id.*)

The FCC is an agency of the United States charged with "tak[ing] action to open all telecommunications markets to competition, and seek[ing] to promote innovation and investment in those markets by all participants, including new entrants." (Def.'s Statement of Material Facts for Which There Is No Genuine Issue ["FCC's Facts"] ¶ 11.) In order to reduce barriers to entry in local telecommunications markets; to improve the FCC's ability to "develop, evaluate, and revise policy" regarding local telecommunications and broadband markets; to "assess the availability of broadband services"; and to "reduc[e] government regulation whenever possible," the FCC began collecting information in March 2000 from providers of telecommunications and related services through a standardized form known as the "Form 477." (*Id.* ¶¶ 12–13 (quoting *In the Matter of Local Competition and Broadband Reporting*, 15 F.C.C.R. 7717, 7718–19 (2000)).)

Defendant-intervenors are companies required by the FCC to complete the Form 477

(AT&T Inc. and Verizon[1]) and two trade organizations (USTA and WCA).  Amicus curiae include the NCTA, which is the "principal trade association for the cable television industry" (Br. of the Nat'l Cable & Telecomm. Ass'n as *Amicus Curiae* in Support of Def. Fed. Commc'ns Comm'n's Mot. for Summ. J. ["NCTA Br."] at 1), and the CTIA, which is "an international trade association that represents wireless carriers and manufacturers involved in broadband and advanced telecommunications services[,] . . . . including Verizon Wireless, T-Mobile USA, Sprint Nextel, and Cingular Wireless, as well as many smaller providers."  (Br. of CTIA - The Wireless Ass'n as *Amicus Curiae* in Support of Def. Fed. Commc'ns Comm'n's Mot. for Summ. J. ["CTIA Br."] at 2.)

## II.     Form 477

Companies required to submit Forms 477 ("filers") must do so twice per year and must complete a separate form for each state in which they conduct business.  (FCC's Facts ¶¶ 14, 17.)  Each form consists of a cover page and five parts.  (*Id.* ¶ 33; *see* FCC's Mot. for Summ. J. Ex. 7 ["Form 477"] at 18–24.)

The cover page must be completed by all filers.  (*See id.* at 18.)  On the first line, the filer must provide its company name.  (*See id.*)  In addition, each filer must identify the person who prepared the data contained in the form and list that person's phone number and email address.  (*See id.*)  The last line of the cover page provides a drop-down box so that filers may "request 'non-disclosure of some or all of the information in the [form] . . . because the information is

---

[1]"Verizon includes (1) the regulated, wholly owned subsidiaries of Verizon Communications Inc. and (2) Cellco Partnership d/b/a Verizon Wireless, a joint venture between Verizon Communications Inc. and Vodafone Group PLC."  (Mem. of Law in Support of Mot. for Summ. J. of Intervenor-Defs. AT&T Inc., Verizon, and the U.S. Telecom Ass'n ["Def.-Intervenors' Mem. in Supp."] at 1 n.1.)

privileged and confidential and public disclosure of such information would likely cause substantial harm to the competitive position of the filer.'" (FCC's Facts ¶ 34 (quoting the text of the cover page).)

In Part I.A of the form "filers report the number of broadband connections provided to end user customers broken out by technology." (*Id.* ¶ 35.) For example, filers must list the number of cable modem connections provided to end users separately from the number of satellite connections provided. (*See* Form 477 at 19 (sections (1)–(10)).) For each technology, filers must also separately list "the share ([*i.e.*], percentage) of connections provided to residential end users, the share of connections provided over filers' own facilities, and the share of connections for which the filer bills the customer directly." (FCC's Facts ¶ 35; *see* Form 477 (sections (b)–(d)).) In addition, with respect to the connections provided to residential end users, filers must break out the data transfer rates for each technology. (*See* FCC's Facts ¶ 35; Form 477 at 19 (sections (e)–(j)).) Finally, in Part I.B of the Form 477, "incumbent local telephone companies [("ILECs")] and cable system operators report the share of residential end-user premises able to receive the digital subscriber line (xDSL) and cable modem connections that these companies provide in their service areas." (FCC's Facts ¶ 35; *see* Form 477 at 20.)

Part II of the Form 477 addresses "wireline and fixed wireless local telephone service." (FCC's Facts ¶ 36.) Filers are required to "report the total number of lines and wireless channels provided to end users." (*Id.*) Of this aggregate number, filers are also required to report "the share provided to residential end users, the share for which the filer is the presubscribed interstate long distance carrier, the share provided via filers' own facilities, and the shares of lines provided through various types of contracting agreements." (*Id.*; *see* Form 477 at 21.)

Mobile telephone service is addressed in Part III of the form. (FCC's Facts ¶ 37; *see* Form 477 at 22.) Filers are required to "report the number of mobile telephony subscribers served and the share of those subscribers that the filer bills directly." (FCC's Facts ¶ 37; *see* Form 477 at 22.)

Part IV of the form provides blank space in which filers may include comments or explanatory notes regarding the data submitted. (FCC's Facts ¶ 38; Form 477 at 23.) Filers are directed to identify the "part" and "line" of the form to which each comment or explanatory note refers. (*See id.*)

Finally, Part V of the form directs filers reporting broadband connections in Part I to list each zip code in which they provided each type of broadband connection (*e.g.*, cable modem or satellite). (FCC's Facts ¶ 39; *see* Form 477 at 24.) In addition, filers report each zip code "in which they provide wireline or fixed wireless local telephone service to at least one end user." (FCC's Facts ¶ 39; *see* Form 477 at 24.)

### III.  Procedural History

In order to procure information for its Media Tracker database, "plaintiff submitted a FOIA request to the FCC seeking (1) '[a] database or other similar electronic copy of all records collected with FCC Form 477,' and (2) '[a]ll documentation associated with that database.'" (FCC's Facts ¶ 1 (quoting Letter from Drew Clark, Senior Fellow and Project Manager, Center for Public Integrity, to Shoko B. Hair, FOIA Public Liason, FCC Office of the Managing Director (Aug. 24, 2006)).) Plaintiff's request was hand delivered to the FCC's Washington, D.C. office on August 24, 2006, where it was accepted and signed for by Benish Shah, an employee in the Office of the Managing Director. (McGarry Decl. ¶¶ 2–3, Apr. 2, 2007.) The

request reached the FCC's FOIA Control Office on August 29, 2006, at which time it was forwarded to the custodian of the requested records: the agency's Wireline Competition Bureau ("WCB"). (*See* FCC's Facts at ¶ 2; FCC's Mem. in Supp. at 2, 3 n.1.)

The WCB treated plaintiff's request as having been filed on August 29, 2006. (*See* Feldman Decl., Jan. 8, 2007 ["Feldman Decl."], Ex. B ["FOIA Denial"] at 1 n.1.) Twenty business days later, on September 26, 2006, the WCB denied plaintiff's request in its entirety pursuant to FOIA Exemption 4. (*See* FCC's Facts ¶¶ 4–6.)

Meanwhile, on September 25, 2006 - - having failed to receive any response from the FCC within twenty business days of the date on which Shah had accepted hand delivery of the FOIA request - - plaintiff filed suit in this Court. (*See* FCC's Facts ¶ 8.) However, after subsequently receiving the WCB's denial of its request, plaintiff also filed an administrative appeal. (*Id.* ¶ 9.) Plaintiff's administrative appeal, which was filed on October 19, 2006, has not yet been decided.[2] (*Id.*)

---

[2] Having failed to respond to plaintiff's appeal within twenty business days, as prescribed by 5 U.S.C. § 552(a)(6)(A)(ii), the FCC concedes that, consistent with 5 U.S.C. § 552(a)(6)(C), plaintiff has constructively exhausted its administrative remedies. (*See* FCC's Mem. in Supp. at 4.) By contrast, the joint intervenors argue that the Court should dismiss this case - - or, at a minimum, require plaintiff to file a supplemental pleading pursuant to Federal Rule of Civil Procedure 15(d) - - because plaintiff filed its complaint without exhausting its administrative remedies first. (*See* Def.-Intervenors' Mem. in Supp. at 2 n.4.) In response to the joint intervenors, plaintiff argues that its complaint was timely because the FCC failed to respond to its FOIA request within twenty business days of the request's receipt by an employee of the Office of the Managing Director and that, in any event, it is questionable whether the joint intervenors have standing to raise an exhaustion defense because the primary purpose of exhaustion - - permitting top agency managers to correct mistakes by lower-level employees - - would not be advanced by allowing third parties to contest exhaustion when an agency declines to do so. (*See* Pl.'s Mem. of P. & A. in Support of Its Cross-Mot. for Summ. J. and in Opp. to FCC's Mot. for Summ. J. ["Pl.'s Mem. in Supp."] at 5–6.)

The Court rejects the joint intervenors' request to dismiss this case or require plaintiff to file a supplemental pleading. Even assuming *arguendo* that plaintiff filed its complaint

## ANALYSIS

I.  **Governing Principles of Law**

FOIA prescribes that "each agency, upon any request for records . . . , shall make the records promptly available to any person" for "public inspection and copying," unless the records fall within one of nine narrowly construed statutory exemptions. *See* 5 U.S.C. §§ 552(a)(2) & (a)(3)(A). As the legislative history reflects, FOIA was enacted "to establish a general philosophy of full agency disclosure." *EPA v. Mink*, 410 U.S. 73, 80 n.6 (1973) (quoting S. Rep. No. 89-813, at 3 (1965)). Consistent with its animating philosophy, FOIA is "broadly conceived . . . . to permit access to official information." *Id.* at 80. An agency bears the burden of justifying its decision to withhold information pursuant to a FOIA exemption. *E.g.*, 5 U.S.C.

---

prematurely, *see* 47 C.F.R. § 0.461(e) & (g) (explaining that "the custodian of the records will make every effort to act on [a] request within 20 working days after it is received *by the FOIA Control Office*," as opposed to when it "is received by the Managing Director" (emphasis added)), and that the joint intervenors have standing to raise an exhaustion defense, neither approach endorsed by the joint intervenors would in any way serve the "purposes and policies underlying the exhaustion requirement." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *see also id.* (explaining that "exhaustion of a FOIA request 'is not jurisdictional because the FOIA does not unequivocally make it so'" (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003)); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) ("[A]bsent a statutory provision to the contrary, failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing."). Upon receiving a response to its FOIA request, which was issued by the WCB the day after plaintiff filed its complaint in this Court, plaintiff lodged a timely administrative appeal. (*See* FCC's Facts ¶¶ 4, 8–9.) Although the FCC accepted plaintiff's appeal, it has failed to respond in a timely manner. (*See id.* ¶ 9 (acknowledging that the appeal remains pending).) Thus, "[plaintiff] did not bypass the administrative review process but pursued [that process] to its end." *Wilbur*, 355 F.3d at 677. Under these circumstances, judicial review does not risk "premature interference with agency processes" or deprive the Court or the parties of either "the agency's experience and expertise" or "an adequate record for review." *Id.*

§ 552(a)(4)(B). Moreover, even if some of the records requested contain exempt information, "the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of Army*, 70 F.2d 1172, 1176 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)). Challenges to agency decisions to withhold information are reviewed *de novo* by the district court. *See* 5 U.S.C. § 552(a)(4)(B).

"At the same time, of course, it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government has in keeping certain information private, whether to protect particular individuals or the national interest as a whole." *ACLU v. FBI*, 429 F. Supp. 2d 179, 186–87 (D.D.C. 2006). "As such, [FOIA] exemptions must be given 'meaningful reach and application.'" *Id.* at 187 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

"FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). "[T]he Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are 'relatively detailed and non-conclusory[]' . . . ." *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). The affidavits or declarations must "describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [be] . . . [un]controverted,'" whether by "'contrary evidence in the record [or] . . . evidence of agency bad faith.'" *Id.* (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)). "[W]hether the Court relies on affidavits or declarations, an *in*

*camera* review of the documents, or . . . both, an agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'" *Id.* (third alteration in original) (quoting *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978)).

## II.    Adequacy of the Proposed Disclosures

Although the pleadings and exhibits in this case are voluminous, there are few disputes among the parties. Plaintiff has narrowed its original FOIA request, and the FCC is willing to produce substantial portions of the information that plaintiff now seeks. As to the remaining data, the FCC invokes Exemption 4 and, as to limited data from the Form 477's cover page, Exemption 6.

"Exemption 4 permits an agency to withhold from disclosure 'trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential.'" *Airline Pilots Ass'n, Int'l v. U.S. Postal Serv.*, No. 03-2384, 2004 WL 5050900, at *3 (D.D.C. June 24, 2004) (alteration in original) (quoting 5 U.S.C. § 522(b)(4)). As the parties and amici agree, the only question in this case is whether the requested information is "confidential." (*E.g.*, Pl.'s Mem. in Supp. at 8; Def. Fed. Commc'n Comm'n's Opp. to Pl.'s Cross-Mot. for Summ. J. and Reply to Pl.'s Opp. to Def. FCC's Mot. for Summ. J. ["FCC's Opp. & Reply"] at 3.) The parties and amici also agree that the information at issue was submitted "involuntarily" and that, accordingly, the question of "confidentiality" must be decided under the standard set forth in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974). (*E.g.*, Pl.'s Mem. in Supp. at 8; FCC's Opp. & Reply at 3 & n.2; *see* Def.-Intervenors' Mem. in Supp. at 10; NCTA Br. at 7; CTIA Br. at 8; Mot. for Summ. J. of Def.-Intervenor Wireless Commc'ns Ass'n

9

Int'l ["WCA Mot."] at 7–8 (applying the *National Parks* standard and acknowledging that "most Form 477 filings are mandatory," though suggesting that "there may also be some voluntary filers").) Thus, with respect to the information that the FCC seeks to withhold under Exemption 4, the Court will award summary judgment for the FCC and defendant-intervenors upon a showing that disclosure is likely "to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks*, 498 F.2d at 770.

"Under Exemption 6, a federal agency may withhold 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). When a FOIA requester challenges an agency's determination that Exemption 6 protects "similar files," the reviewing court "must first determine whether . . . disclosure would compromise a substantial, as opposed to a de minimis, privacy interest," which "depends upon the characteristic(s) revealed by virtue of being [listed in the files at issue], and the consequences likely to ensue" from disclosure. *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874, 877 (D.C. Cir. 1989) ("*NARFE*"). "If no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure." *Id.* at 874. If there is "a substantial privacy interest" at stake, the "privacy interest in non-disclosure [must be weighed] against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Id.*

10

### A. Cover Page

The parties have agreed that almost all of the information captured in the cover page will be disclosed. (*See* FCC's Opp. & Reply at 9–10; Mem. in Opp. to Pl.'s Cross-Mot. for Summ. J. and Reply Mem. in Support of Mot. for Summ. J. of Intervenor-Defs. AT&T Inc., Verizon, and the U.S. Telecom Ass'n ["Def.-Intervenors' Opp. & Reply"] at 9 n.4; Response of the Wireless Commc'ns Ass'n Int'l to Pl.'s Cross-Mot. for Summ. J. and Opp. to Defs.' Mots. for Summ. J. ["WCA Reply"] at 3; Pl.'s Reply to Defs.' Opp. to Pl.'s Cross-Mot. for Summ. J. ["Pl.'s Reply"] at 2.) The only disputed issue is whether the FCC may withhold the information captured in boxes five and six - - the name, phone number, and email address of the person who prepared the data for filing - - under either Exemption 4 or Exemption 6. (*See* FCC's Opp. & Reply at 7–10; Def.-Intervenors' Opp. & Reply at 7–9; WCA Reply at 3; Pl.'s Reply at 2.)

Without contesting the merits of the FCC's Exemption 6 defense, plaintiff argues that, "because this defense was not raised in any defendant's initial responsive pleading (e.g., the FCC's Motion for Summary Judgment), this exemption has been waived." (Pl.'s Reply at 2.) Plaintiff's waiver argument is without merit. *See, e.g.*, *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123–24 (D.D.C. 2006) ("In the FOIA context, an agency may waive the right to raise certain exemptions if it fails to raise them *prior to the district court ruling* in favor of the other party." (emphasis added)); *Sciba v. Bd. of Governor of Fed. Reserve Sys.*, No. 04-1011, 2005 WL 758260, at *1 (D.D.C. Apr. 1, 2005) ("[A]n agency only waives FOIA Exemptions by failing to claim them in the *original proceedings* before the district court. [The relevant D.C. Circuit] cases do not specify . . . that FOIA Exemptions must be made in the answer to the complaint." (citations omitted)); *see also Sussman v. U.S. Marshals Serv.*, --- F.3d ---, ---, 2007

WL 2176117, at *10 (D.C. Cir. 2007) ("In its opposition to Sussman's second motion for summary judgment, the Marshals Service explicitly referenced [Exemptions 6 and 7(C)], and the court needed to consider those exemptions when ruling on the motion. Thus, the invocation sufficed to avoid waiver [and preserve those defenses for appeal]."); *Piper v. U.S. Dep't of Justice*, 374 F. Supp. 2d 73, 78 (D.D.C. 2005) (agreeing to "reconsider its rulings concerning . . . six contested documents and . . . address whether the DOJ's redactions, newly justified by . . . Rule 60(b) filings, [were] proper," despite that "an agency 'generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court'" (quoting *August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003))). Moreover, as defendants have correctly argued and plaintiff does not dispute, disclosing the information captured in boxes five and six would in no way advance the public's interest in learning "what the[] government is up to." *Lepelletier*, 164 F.3d at 47 (alteration in original) (quoting *NARFE*, 879 F.2d at 879). Thus, although the Court will require the FCC to disclose most of the cover page data, the names, phone numbers, and email addresses captured in boxes five and six may be withheld under Exemption 6.[3]

### B. Parts I–III

Having initially requested the data from Parts I–III "as is," plaintiff no longer "insist[s] on production of unredacted numbers" and proposes instead that the FCC replace filers' numerical responses with either ranges (the precise contours of which could be determined by the FCC) or an indication of whether the deleted responses were "zero or greater than zero." (Pl.'s Mem. in Supp. at 10.) The FCC objects (1) that plaintiff's proposal would entail the creation of new

---

[3]Because this information may be withheld under Exemption 6, it is unnecessary to address the FCC's alternative argument that the information is protected under Exemption 4.

records; and (2) that, in any event, data reconstituted in the formats proposed by plaintiff would be protected under Exemption 4. (*See* FCC's Opp. & Reply at 13–17.)

The Court agrees that ordering the FCC to produce data in either of the forms proposed by plaintiff would amount to requiring the creation of new records, which, as plaintiff concedes, is not authorized by FOIA. (*See* Pl.'s Reply at 3 (acknowledging that the creation of new records is "of course . . . not required by FOIA").) Unlike the redaction scheme discussed with approval in *Trans-Pacific Policing Agreement v. U.S. Customs Service*, 177 F.3d 1022 (D.C. Cir. 1999), which is the only authority cited by plaintiff (*see* Pl.'s Mem. in Supp. at 10), plaintiff's proposal would require the FCC to do more than simply redact portions of the numbers contained in Parts I–III. The FCC would also have to replace the redacted numbers with new numbers, which the FCC itself would have to select. Because agencies are not required to create new records to satisfy FOIA requests, the Court is without authority to require the FCC to adopt plaintiff's proposal for the disclosure of modified data from Parts I–III. *See, e.g.*, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) ("[The plaintiff] contends that even if the agencies do not want to disclose the photographs in their present state, they should produce new photographs at a different resolution in order to mask the capabilities of the reconnaissance systems that took them. But although agencies are required to provide 'any reasonably segregable,' non-exempt portion of an existing record, they are not required to create new documents. We are therefore without authority to direct the government to adopt [the plaintiff's] 'compromise' solution." (citations omitted) (quoting 5 U.S.C. § 552(b)).

## C. Part IV

Although plaintiff originally requested not only the "part" and "line" numbers listed in

Part IV but also the comments and explanatory notes themselves, plaintiff no longer "insist[s] on production of the text of any of the Part IV comments." (Pl.'s Mem. in Supp. at 10–11.) Both the FCC and the joint intervenors agree that, for the reporting periods as to which data are stored in the FCC's electronic databases (June 2005 through June 2006), disclosure of the part and line numbers is appropriate.[4] (*See* FCC's Opp. & Reply at 10–11; Def.-Intervenors' Opp. & Reply at 9 n.4.) The only objecting party is the WCA:

> [I]dentification of the fact that a comment exists for a particular part and line reveals the existence of a non-zero response to that particular line and item - - thereby indicating that a filer is providing a particular service. For the same reasons [that] a zero/non-zero range [for data in Parts I–III] would be protected from disclosure, . . . the existence of a response to a particular line and item is protected by Exemption 4.

(WCA Reply at 5.)

The WCA's argument is unpersuasive. Although it is plausible that the production of zero/non-zero ranges for *every* line in Parts I–III "would . . . reveal competitively sensitive information, such as purchased-connection speeds, customer mix, . . . deployment strategy by technology[,] and the extent of reliance on filer-built versus leased facilities" (*see id.* (quoting FCC's Opp. & Reply at 16)), disclosure of the part and line numbers listed in Part IV is not equivalent to providing zero/non-zero ranges for every line in Parts I–III. (*See* Form 477 at 10 (requiring filers to provide comments only "[i]f there is a non-zero entry in column (a) of Line A.I-10 of Part I of a form," without requiring comments or corresponding part and line numbers for non-zero entries in any other column or line in Parts I–III).) Given that neither the FCC nor

---

[4]Plaintiff does not contest the FCC's argument that disclosure is not required as to the part and line numbers for the reporting periods December 1999 through December 2004, since these numbers are not maintained in the FCC's electronic databases. (*See* FCC's Opp. & Reply at 11–12; Pl.'s Reply at 2.)

the joint intervenors fear competitive harm from disclosure of the part and line numbers in Part IV, and absent any evidence that such harm is likely to occur, disclosure of the data is warranted.[5] *See National Parks*, 498 F.2d at 770.

### D.     Part V

Finally, although effectively conceding that the disclosure of unredacted data from Part V would threaten substantial competitive harm, plaintiff contends that the FCC should be required to disclose zip code data after redacting the associated technology type. (*See* Pl.'s Reply at 4 ("Defendants' objections to releasing the ZIP code data have focused primarily on the commercial sensitivity of the technology types used by service providers in specific locations. Redaction would meet these concerns. Defendants' remaining objections are not substantial." (citations omitted)).) According to plaintiff, the disclosure of redacted zip code data would not threaten competitive harm because, absent associated technology types, zip code data merely reveal where filers offer service, which makes the data "analogous to [information available] ' . . . in the yellow pages of a phone book.'" (*Id.* at 6 (quoting Kaye Decl. ¶ 7, June 12, 2007).)

However, as both the FCC and the joint intervenors have argued, disclosure of redacted zip code data could reveal a significant amount of information that is *not* publicly available in phone books or elsewhere. (*See* Response of Intervenor-Defs. AT&T Inc., Verizon, and the U.S. Telecom Ass'n to the Court's August 6, 2007, Order ["Def.-Intervenors' Surreply"] at 2–3; Def. Fed. Commc'ns Comm'n's Response to the Court's August 6, 2007 Order ["FCC's Surreply"] at

---

[5]The WCA does not argue, and the Court does not find, that disclosure of the part and line numbers from Part IV will in any way hinder the FCC's "ability to obtain necessary information in the future." *National Parks*, 498 F.2d at 770.

2–5.)[6]  For example, analyzing the zip code data for a particular filer over time could reveal where customers had been acquired or lost.  (*See* Feldman Decl. ¶ 16, May 15, 2007 ["Feldman Supp. Decl."]; FCC Surreply at 2.)  Such information "could allow competitors already serving particular markets to respond to new entry or allow other competitors to free ride on the efforts of the first new entrants to identify areas where competition is more likely to be successful."  (*Id.* at 3 (quoting Feldman Supp. Decl. ¶ 17).)  It could also provide "valuable information about where [a] filer is focusing its efforts to acquire customers and [about] the overall financial health of the filer."  (*Id.* at 2–3.)  Moreover, because some entities are assigned "unique" zip codes,[7] disclosure of zip code data would in some instances reveal the presence of an actual business relationship between a filer and a particular entity.  (*See* Def.-Intervenors' Surreply at 3; FCC's Surreply at 3.)  Such information is "significantly more revealing than whether [a] filer is merely advertising in [a] ZIP code or surrounding area(s)," since it could "improve [a] competitor's ability to draw inferences about a filer's overall financial and competitive position" and assist competitors in "designing specific competing offers to target [the identified] customer."  (*Id.*; *see* Def.-Intervenors' Surreply at 3.)  Accordingly, because the Court finds that disclosure of even redacted data from Part V would be likely to cause substantial competitive harm to filers, the FCC may withhold this data under Exemption 4.  *See National Parks*, 498 F.2d at 770.

---

[6]Because the disclosure of redacted zip code data was proposed for the first time in plaintiff's reply, the Court directed defendant and permitted defendant-intervenors to file five-page responses to plaintiff's newly raised arguments.  *See Center for Pub. Integrity v. FCC*, No. 06-01644, Order (D.D.C. Aug. 6, 2007).

[7]For example, the zip code "20554" is assigned solely to the FCC's headquarters in Washington, D.C.  (*See* Feldman Decl. ¶ 31; FCC's Surreply at 3.)

### III.   Adequacy of the Search

In addition to substantive data from the Form 477, plaintiff has asked the FCC to provide any "records that describe the structure, purpose, operation, maintenance, and data requirements" of the database in which Form 477 data are stored.  (Feldman Decl. Ex. C at 2 (quoting a definition of "documentation" from the *American Heritage Dictionary of the English Language*).)  Initially, the FCC's only response to plaintiff's request was to state: "The FCC possesses no records containing 'technical information about the structure of the FCC's Form 477 database.'"  (Feldman Supp. Decl. ¶ 22.)  However, the FCC has since provided the following supplemental statement from the acting chief of the Industry Analysis and Technology Division of the WCB:

> As stated [previously], the FCC possesses no records containing "technical information about the structure of the FCC's Form 477 database."  Given the nature of the FCC's electronic Form 477 database, it was unnecessary to search any files or records to arrive at this conclusion.  I instead met with all of the technical staff associated with the programming aspects of the FCC Form 477, *e.g.*, the process of building the dataset, inputting the data, and using the database to generate FCC reports, operation, maintenance, or data requirements for any computer program, operating system, or hardware device associated with the structure of the FCC Form 477 database had been created.  The consensus was that no such documentation exists.  Rather, the database was created using off-the-shelf Microsoft Access and Excel software, with no customized programming or software alterations.

(Feldman Decl. ¶ 3, Aug. 14, 2007.)  Because this supplemental response reflects a reasonable and systematic approach to locating the requested documents, the Court finds that the FCC's search was adequate.  *Cf. Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[A]gency affidavits that 'do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized' are insufficient to support summary

17

judgment." (second alteration in original) (quoting *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980))).

## CONCLUSION

For the foregoing reasons, the Court concludes that the FCC has properly invoked Exemption 6 to withhold the data from boxes five and six of the Form 477 cover page; properly invoked Exemption 4 to withhold all data from Parts I–V, except for the part and line data from Part IV for June 2005 through June 2006; and conducted an adequate search for records regarding the structure of the Form 477 database.  Thus, except to the extent that the WCA seeks to prevent the disclosure of part and line data from Part IV and that the FCC and joint intervenors initially sought to withhold that data and all cover page data, the Court will grant summary judgment in favor of the FCC and defendant-intervenors.  Plaintiff's motion for summary judgment will be denied, except as to the cover page data (excluding the data from boxes five and six) and the part and line data from Part IV.  A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 27, 2007