UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR PUBLIC INTEGRITY,   )
           )
     Plaintiff,   )
           )
     v.   )     Civil Action No. 06-1644 (ESH)
           )
FEDERAL COMMUNICATIONS   )
COMMISSION *ET AL.*,   )
           )
     Defendants.   )
_____)

**DEFENDANT FEDERAL COMMUNICATIONS COMMISSION'S OPPOSITION
TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

The Federal Communications Commission ("FCC") respectfully opposes

"Plaintiff's Motion to Alter or Amend the Judgment." Plaintiff's motion, filed pursuant

to Fed. R. Civ. P. 59(e), seeks reconsideration of one aspect of the Court's August 27,

2007 decision in this case. Specifically, plaintiff asks the Court to reconsider its

conclusion that all data contained on Part V of the FCC Form 477 is exempt from

disclosure under FOIA Exemption 4. Plaintiff asserts that the Court should instead

require the FCC to redact and disclose certain portions of that data to plaintiff. For the

reasons set forth below, plaintiff fails to satisfy Rule 59(e)'s standard for altering or

amending a judgment, and the Court's August 27, 2007 decision should stand as written.

**I.**     **STANDARD OF REVIEW**

A motion to alter or amend judgment under Fed. R. Civ. P. 59(e) "is discretionary

and need not be granted unless the district court finds that there is an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice." *See Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir.

2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Such

motions "are disfavored and relief from judgment is granted only when the moving party

establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153

F.Supp.2d 23, 28 (D.D.C. 2001); *see also Mobley v. Cont'l Cas. Co*., 405 F. Supp. 2d 42,

45 (D.D.C. 2005) ("A motion for reconsideration ... will not lightly be granted."); *Harvey

v. Dist. of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) ("[a] motion pursuant to Fed.

R. Civ. P. 59(e) to alter or amend judgment after its entry is not routinely granted," and

"the reconsideration and amendment of a previous order is an extraordinary measure").

A Rule 59(e) motion "is not simply an opportunity to reargue facts and theories upon

which a court has already ruled." *See New York v. United States*, 880 F. Supp. 37, 38

(D.D.C. 1995).  Nor is it "a vehicle for presenting theories or arguments that could have

been advanced earlier." *Burlington Ins. Co. v. Okie Dokie Inc*., 439 F. Supp. 2d 124, 128

(D.D.C. 2006); *see also Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

Rule 59(e) motions should not be granted if the court suspects that the losing party is

using the motion as an instrument for arguing the same theory or asserting new

arguments that could have been raised prior to final judgment.  *Taylor v. Dep't of Justice*,

268 F. Supp. 2d 34, 35 (D.D.C. 2003) (citations omitted).

## II.  <u>ARGUMENT</u>

Plaintiff's Rule 59(e) motion fails to establish any intervening change of

controlling law, new evidence, or need to correct a clear error or prevent manifest

injustice.  Rather, it consists essentially of plaintiff's expression of disagreement with the

Court's decision and plaintiff's presentation of a variation of its previously rejected

argument (miscast as "new evidence") that the FCC should be required to redact and

disclose certain data contained on Part V of the Form 477.  Neither constitutes a valid basis for reconsideration of the Court's decision and, both then and now, plaintiff's arguments lack merit.

As explained in the FCC's prior filings in this case, Part V of the Form 477 requires filers to report each of the ZIP codes in which they provide at least one end-user broadband connection; the technology type that is deployed in that ZIP code; and each of the ZIP codes in which they provide wired or fixed wireless local telephone service to at least one end-user.  *See* Motion for Summary Judgment (Docket No. 9) at 11; Opposition & Reply (Docket No. 35) at 18.  After initially seeking all of the Part V data, plaintiff subsequently conceded in the course of this litigation that disclosure of that data in unredacted form would threaten substantial competitive harm.  *See* Memorandum Opinion at 15.  In its reply brief, plaintiff argued for the first time that the FCC should be required to redact data regarding "technology type" from the ZIP code data contained in Part V, and that release of the remaining ZIP code data would not competitively harm filers.  *See* Reply (Docket No. 41) at 3-9.  After issuing its August 6, 2007 Order (Docket No. 42) specifically to collect evidence and argument on that question, and receiving responses from the FCC and intervenor-defendants, the Court issued its August 27, 2007 decision expressly rejecting plaintiff's argument.

Plaintiff now asserts that the Court should alter its judgment to require the FCC to redact data regarding "technology type" *and* "unique zip codes" from Part V because (1) the Court "misapplied" the standard set forth in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974), for assessing competitive harm; and (2) plaintiff possesses "new evidence" demonstrating that the redactions are

feasible and that disclosure of the remaining data would not cause competitive harm. *See* Motion at 1-5. As set forth below, plaintiff's assertion provides no basis for altering or amending the judgment.

**A.    The Court Correctly Applied *National Parks* to Part V and Correctly Concluded that Disclosure Would Cause Competitive Harm.**

The D.C. Circuit in *National Parks* concluded that "commercial or financial matter is confidential for purposes of [FOIA Exemption 4] if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *See* 498 F.2d at 770. Plaintiff contends that "this standard cannot sustain a finding that data in Part V of Form 477, with technology type redacted, is confidential information," because disclosure of "[t]he names of the companies and the ZIP codes in which they maintain broadband or local telephone service…is not likely to cause substantial competitive harm to the competitive position of the provider." [1] *See* Motion at 2. In plaintiff's view, the Court "misapplied a test of public availability of information for the appropriate test of competitive harm." *Id.* at 3.

In fact, the Court correctly applied the *National Parks* standard to the Part V data at issue, and plaintiff merely disagrees with the Court's conclusion. Specifically, the Court concluded that:

> …as both the FCC and the joint intervenors have argued, disclosure of redacted zip code data could reveal a significant amount of information

---

[1] The FCC argued that its withholding of the Form 477 data at issue was proper based also upon the first prong of the *National Parks* standard; however the Court's decision did not address those arguments. *See* FCC's Motion for Summary Judgment at 18-21; Opposition & Reply brief at 22-25. Plaintiff's motion to alter or amend similarly addresses only the second prong of the *National Parks* standard.

that is *not* publicly available in phone books or elsewhere.  For example,
analyzing the zip code data for a particular filer over time could reveal
where customers had been acquired or lost. Such information "could allow
competitors already serving particular markets to respond to new entry or
allow other competitors to free ride on the efforts of the first new entrants
to identify areas where competition is more likely to be successful."  It
could also provide "valuable information about where [a] filer is focusing
its efforts to acquire customers and [about] the overall financial health of
the filer."  Moreover, because some entities are assigned "unique" zip
codes, disclosure of zip code data would in some instances reveal the
presence of an actual business relationship between a filer and a particular
entity.  Such information is "significantly more revealing than whether [a]
filer is merely advertising in [a] ZIP code or surrounding area(s)," since it
could "improve [a] competitor's ability to draw inferences about a filer's
overall financial and competitive position" and assist competitors in
"designing specific competing offers to target [the identified] customer."
Accordingly, because the Court finds that disclosure of even redacted data
from Part V would be likely to cause substantial competitive harm to
filers, the FCC may withhold this data under Exemption 4.

*See* Mem. Op. at 15-16 (footnotes and citations omitted).  The Court thus plainly

concluded that disclosure of the data "would be likely to cause substantial competitive

harm to filers" for purposes of FOIA Exemption 4, and explained in detail the basis for

its conclusion.  While the Court recognized at the outset of its explanation that the data is

not publicly available, that statement merely addresses plaintiff's erroneous contention,

discussed in the decision's preceding paragraph, that the data can be found "in the yellow

pages of a phone book."[2]  *Id.* at 15.  As reflected by its citations to *National Parks* and

record evidence, the Court based its conclusion not upon the fact that the data is not

publicly available, but rather upon the evidence that defendant and intervenor-defendants

submitted at the Court's direction concerning the competitive harm that would result

from disclosure of the data even in redacted form.  *See* FCC's Response to the Court's

---

[2] As the FCC noted earlier, if plaintiff indeed believed that this were true, "one wonders, why is [plaintiff] burning up counsel fees to obtain it under FOIA?"  *See Niagara Mohawk Power Corp. v. Dept. of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999).

August 6, 2007 Order (Docket No. 43); Intervenor-Defendants' Response to the Court's

August 6, 2007 Order (Docket No. 44). Plaintiff's disagreement with the Court's

decision does not constitute valid grounds for reconsideration under Rule 59(e). *See*

*State of New York v. United States of America*, 880 F. Supp. 37, 39 (D.D.C. 1995) ("a

motion for reconsideration must establish more than simply the [Plaintiffs'] belief that the

[C]ourt's decision was erroneous").

Moreover, plaintiff incorrectly characterizes the data that is the subject of the

Court's conclusion as merely "[t]he names of the companies and the ZIP codes in which

they maintain broadband or local telephone service." *See* Motion at 2. As the FCC has

explained, the Part V data reflects not the ZIP codes in which a filer "maintains" service,

but rather, among other things, the ZIP codes in which the filer has paying customers.

*See* FCC's Motion for Summary Judgment at 23-26; FCC's Opposition & Reply at 19-22;

FCC's Response to the Court's August 6, 2007 Order at 2-5. Plaintiff has presented no

evidence to rebut defendants' showing that competitive harm would result from

disclosure of the Part V data even in redacted form, and the Court correctly concluded

that it is properly protected from disclosure under FOIA Exemption 4.[3]

### B.   Plaintiff Fails to Present Any New Evidence and its Proposed Redaction Scheme Would Not Prevent Competitive Harm.

Plaintiff contends, based upon research that one of its employees purportedly

conducted "[o]n a date after August 14, 2007," that it has obtained new evidence that the

FCC's use of its own ZIP code (20554) as an example of a unique ZIP code was

---

[3] Intevenor-defendants did not concede, as plaintiff suggests (motion at 4), that disclosure of the ZIP code where a broadband company maintains service is unlikely to cause competitive harm. Rather, intervenor-defendants stated that plaintiff should be provided the names of competitors serving customers in specific ZIP codes *only if* the Court were to conclude that FOIA requires that information to be disclosed -- which the Court did not conclude. *See* Intervenor-Defendants' Response to the Court's August 6, 2007 Order at 3-4.

improper; the number of unique ZIP codes contained in Part V is *de minimus*; and data regarding these unique ZIP codes can be redacted to avoid competitive harm.  *See* Motion at 5.  In support of this contention, plaintiff proffers a declaration from one of its employees contending that he has "access to [a] similar version" of software upon which the FCC relies in creating reports derived from the Form 477 data, which he used to assess information from one such report containing data from June 2006.  *Id.,* Welsh Declaration at ¶¶ 12, 16.  Plaintiff's "new evidence" should be rejected for several reasons.[4]

First, the information to which plaintiff refers does not constitute new evidence, because it was available and could have been submitted prior to entry of judgment.  *See City of Moundridge v. Exxon Mobil Corp.*, 2007 WL 2137304 (D.D.C. 2007), at *2-3 (rejecting Rule 59(e) motion because affidavits and exhibits attached thereto were not "previously unavailable new evidence" that "could not have been submitted previously").  Plaintiff seems to suggest that it did not discover its "new evidence" until either August 14, 2007 (the date that the FCC and intervenor-defendants filed their responses to the Court's August 6th Order), or August 27th (the date that the Court issued its decision and plaintiff's declarant assumed his current position).  *See* Welsh Declaration at ¶ 27 ("until August 14, 2007, I was not aware that the FCC did not keep documentation for its Form 477 database"); ¶ 3 (stating that the declarant, employed by plaintiff since January 2006, switched positions on August 27, 2007).  The factual basis for that proposition is unclear, however, because the FCC's motion for summary judgment, which relied upon the

---

[4] Plaintiff's position that the FCC's use of its own unique ZIP code as an example is improper because that ZIP code does not appear in the Form 477 database is perplexing.  The Court's analysis and conclusions were not dependent upon whether the FCC's ZIP code appeared in its database, but rather on the fact that disclosure of Part V data could provide competitors with competitively sensitive information.

existence of unique ZIP codes as one basis for withholding the data at issue, was filed on

January 8, 2007.  *See* Motion for Summary Judgment at 26.  Similarly, to the extent that

plaintiff contends that its new evidence was dependent upon the FCC's statement that it

possessed no documentation for its Form 477 database, that fact was made clear in the

FCC's Opposition & Reply, filed on May 16, 2007.  *See* Opposition & Reply at 25.

Finally, the FCC report upon which plaintiff's declarant apparently based his research

was issued in or about February 2007.  *See* http://www.fcc.gov/wcb/iatd/comp.html.  The

information that plaintiff characterizes as "new evidence" was thus clearly available prior

to the Court's entry of judgment on August 27, 2007, and plaintiff offers <u>no</u> explanation

as to why it failed to bring it forward until now.

      In reality, plaintiff's "new evidence" is merely new argument, based upon

information available prior to the Court's entry of judgment, which plaintiff could have,

but did not, advance earlier.  A motion for reconsideration "is not a second opportunity to

present argument upon which the Court has already ruled, nor is it a means to bring

before the Court theories or arguments that could have been advanced earlier."  *See*

*Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citations

omitted); *see also City of Moundridge v. Exxon Mobil Corp*., 2007 WL 2137304 (D.D.C.

2007), citing *Fox v. Am. Airlines, Inc.,* 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding no

abuse of discretion where district court refused to vacate its judgment because plaintiff

failed to provide a previously available argument) (citing *Kattan v. Dist. of Columbia,*

995 F.2d at 276 ("Ordinarily Rule 59 motions ... are not granted by the District Court

where they are used by a losing party to request the trial judge to reopen proceedings in

order to consider a new defensive theory which could have been raised during the

original proceedings."")); *Oceana, Inc. v. Evans,* 389 F. Supp. 2d 4, 8 (D.D.C. 2005) (precluding a plaintiff seeking to persuade a court to amend its judgment from "rely[ing] on arguments that could have been made at an earlier stage in the proceeding, ... for Rule 59 was not intended to allow a second bite at the apple"). The Court should thus not consider plaintiff's new argument advanced for the first time in its request for reconsideration.

In any event, even had plaintiff's argument been timely presented to the Court, it fails to establish any error with respect to the Court's conclusion that all data contained on Part V of the FCC Form 477 is exempt from disclosure under FOIA Exemption 4. First, the FCC report to which plaintiff refers, showing the number of high-speed providers by geographic ZIP code, contains only summary statistics *derived from* the Form 477 data, and thus is not indicative of the number of unique ZIP codes that in fact exist or which are included in the FCC's Form 477 database. *See*, *e.g*., FCC's Motion for Summary Judgment at 8; Opposition & Reply at 3. Moreover, even were it possible to redact unique ZIP codes, as the FCC previously explained, such redactions would not eliminate competitive harm to filers because, among other reasons:

> Even with respect to non-unique ZIP codes, in many cases a specific business relationship would be revealed by releasing the Part V ZIP code data alone. There is a tremendous variance in the size and number of addresses covered by particular ZIP codes. A specific business relationship could be revealed based upon the number of addresses in a particular ZIP code that covers a small area or because of the unique distribution of residences and businesses that may exist in a particular ZIP code. For example, assume that a single large or medium-sized business is located in a particular largely-residential ZIP code. If the Part V ZIP code data reflects that a particular filer is providing high-speed service in that ZIP code, and it is well known that the filer provides only business services, *e.g*., through the filer's name or trade press, then the ZIP code data would effectively reveal a business relationship between that filer and the particular business. Again, this would provide specific and concrete

information to competitors to aid them in designing specific competing
offers to target that customer.

*See* FCC's Response to the Court's August 6, 2007 Order at 3-4.

**III.    <u>CONCLUSION</u>**

Based upon the foregoing, plaintiff's motion to alter or amend judgment should

be denied.

Respectfully submitted,

\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____
WYNEVA JOHNSON, D. C. BAR # 278515
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4106
Washington, D.C. 20530
(202) 514-7224

Of Counsel:
MICHAEL A. KRASNOW, Esq.
Office of General Counsel
Federal Communications Commission