**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR PUBLIC INTEGRITY,

     Plaintiff,

     v.

FEDERAL COMMUNICATIONS
COMMISSION,

     Defendant.

Civil Action No. 06-01644 (ESH)

**OPPOSITION OF INTERVENOR-DEFENDANTS AT&T INC., VERIZON, AND THE**
**UNITED STATES TELECOM ASSOCIATION TO PLAINTIFF'S MOTION TO ALTER**
**OR AMEND THE JUDGMENT**

Pursuant to Local Rule 7(b), Intervenor-Defendants AT&T Inc., Verizon, and the United

States Telecom Association (collectively, "Intervenors") respectfully submit this opposition to

plaintiff's Rule 59(e) Motion to Alter or Amend the Judgment ("Motion").  As the FCC explains

in its opposition (at 1-2), motions to alter or amend judgment are disfavored; to prevail, plaintiff

must show "an intervening change of controlling law, the availability of new evidence, or the

need to correct a clear error or prevent manifest injustice."  *Ciralsky v. C.I.A.*, 355 F.3d 661, 671

(D.C. Cir. 2004) (internal quotation marks omitted).  Plaintiff's Motion – which is directed

exclusively at the Court's decision not to order disclosure of data in Part V of the Form 477, yet

fails to address a key aspect of the Court's reasoning supporting that decision – falls far short of

this demanding standard.

     1.     Plaintiff's Motion is directed solely at pages 15-16 of the Court's opinion, which

upheld the FCC's decision not to disclose data (from Part V of the Form 477) that reveal the

specific zip codes in which each broadband provider is serving customers.  The Court upheld that

decision for two reasons:  First, disclosure of these data "over time could reveal where customers had been acquired or lost," which in turn "could allow competitors already serving particular markets to respond to new entry or allow other competitors to free ride on the efforts of the first new entrants to identify areas where competition is more likely to be successful."  Mem. Op. at 16 (internal quotation marks omitted).  Second, "because some entities are assigned 'unique' zip codes, disclosure of zip code data would in some instances reveal the presence of an actual business relationship between a filer and a particular entity."  *Id.*  For both of these reasons, the Court concluded that disclosure would likely cause substantial competitive harm, and it thus affirmed the FCC's decision to deny disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).  *See* Mem. Op. at 16.

2.    Importantly, plaintiff's Motion offers nothing to call the Court's first rationale – the competitive harm from the disclosure of data over time – into question.  On the contrary, plaintiff simply asserts that information about where a provider currently "maintains service" is "manifestly *unlikely* to cause competitive harm."  Mot. at 3-4.  But the point is not only that the *current* data reveal where specific competitors are actually serving customers (which itself is competitively sensitive[1]) but also, and more importantly, that disclosure of data *year over year* would reveal competitively sensitive information.  For example, as Intervenors have explained,[2] by determining where a service provider has expanded its offerings over time, a competitor could

_____

[1] Plaintiff asserts (at 4) that Intervenors have "conceded" that disclosure of the information in Part V of the Form 477 is unlikely to cause competitive harm.  In fact, in the very pleading on which plaintiff relies for this supposed concession, Intervenors argued that the data *are* competitively sensitive and should *not* be disclosed.  *See* Intervenors' Resp. to Aug. 6 Order at 1-3 [Dkt. 44].  The portion of Intervenors' pleading on which plaintiff relies stated only that, if the Court were to disagree with Intervenors' position, the Court should, at a minimum, exempt from disclosure the technology type(s) offered in each zip code.  *See id.* at 4.

[2] *See* Intervenors' Resp. to Aug. 6 Order at 2-3.

deduce a service provider's strategic business plans and historical deployment patterns and, as the Court observed, "free ride" on that information. Mem. Op. at 16. In addition, with this insight into a broadband provider's approach to deploying service, a competitor could target particular areas where a provider is not yet serving customers in order to preemptively lock up potential customers before the provider starts actively to market services in those areas.

3.    As the Court recognized, the disclosure of these data over time would thus be "likely to cause substantial competitive harm to filers" and warrants protection from disclosure under Exemption 4. *See id.* (citing *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). That reasoning is well supported by precedent,[3] it is independently sufficient to uphold the FCC's determination to withhold data under Exemption 4, and plaintiff offers nothing to call it into question. The Motion should be denied for that reason alone.

4.    Plaintiff's challenge to the Court's second rationale – that disclosure could reveal "actual business relationship[s]" in "unique" zip codes – is likewise insufficient to call the Court's order into question. Plaintiff contends that "new evidence," in the form of a declaration submitted by one of plaintiff's employees, establishes that the FCC's example of a "unique" zip code – 20554, which is assigned to the FCC's headquarters – is not included in the Form 477 database. *See* Mot. at 4. But, as the FCC explains in its opposition to the Motion (at 7-9), plaintiff fails to establish that it could not have developed this evidence prior to the Court's

---

[3] *See Westinghouse Elec. Corp. v. Schlesinger*, 392 F. Supp. 1246, 1249 (D. Va. 1974) (holding mandatory EEOC reporting forms protected by Exemption 4 because "viewing the same documents over a period of time would enable a competitor to obtain a forewarning on new products and process changes being undertaken by the plaintiffs"), *aff'd*, 542 F.2d 1190 (4th Cir. 1976); *Rubbermaid, Inc. v. Kleppe*, Civ. No. B-76-1568, 1976 U.S. Dist. LEXIS 12421, at *5 (D. Md. Nov. 5, 1976) (holding Rubbermaid seniority lists protected by FOIA Exemption 4 because competitors would be able, "over time, to determine product line growth, actual total production, the labor intensity to output ratio, and shifts in production").

decision. From the outset of this litigation, the FCC relied on the existence of "unique" zip codes to defend its refusal to disclose data in Part V of the Form 477, and it used the FCC's zip code as an example to illustrate the point.[4] Any evidence bearing on that claim could have been, and should have been, proffered on a timely basis in response to the FCC's claim. Under settled law, plaintiff's submission, at this late date, of evidence that could have been produced earlier is insufficient to warrant alteration or amendment of the Court's judgment under Rule 59(e).[5]

5.    Plaintiff's "new evidence," moreover, is beside the point. Plaintiff's declaration establishes, at most, that the *example* the FCC used of a unique zip code (its own) does not appear in the Form 477 database. But the Court's analysis of this issue turned not on whether the FCC's own specific zip code necessarily appears in the database, but rather on the more general fact that the database includes numerous such unique zip codes, the disclosure of which could provide competitors with sensitive information about existing business relationships. *See* Mem. Op. at 16. On this point, plaintiff's "new evidence" actually bolsters the Court's reasoning, insofar as it confirms the existence of many unique zip codes in the Form 477 database.[6]

6.    Finally, plaintiff contends that the competitive concerns arising out of disclosure of the specific providers serving particular zip codes could be addressed by redacting the data associated with unique zip codes from Form 477 data disclosed to the plaintiff. *See* Mot. at 5.

---

[4] *See* FCC Mem. in Supp. of Mot. for Summ. J. at 25-26 [Dkt. 9-1]; Decl. of Alan I. Feldman in Supp. of FCC Mot. for Summ. J. ¶ 31 [Dkt. 10].

[5] *See*, *e.g.*, *City of Moundridge v. Exxon Mobil Corp.*, Civ. No. 04-940 (RWR), 2007 WL 2137304, at *2-3 (D.D.C. July 26, 2007) (declining to grant motion to reconsider based on evidence that was not "previously unavailable"); *see generally* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995) (Rule 59(e) motions "may not be used to . . . present evidence that could have been raised prior to the entry of judgment.").

[6] *See* Decl. of Ben Welsh ¶ 17 [Dkt. 47-2] (asserting that the FCC's database includes 201 unique zip codes).

But, even assuming such redaction is feasible, it would not address the competitive harm stemming from disclosure of zip code data over time, which, as discussed above, is independently sufficient to uphold the FCC's decision.  Nor would it address the competitive concerns arising from disclosure of data from zip codes that, even if not unique to a single customer, include a particular distribution of residences and businesses which, coupled with other publicly available information, could reveal specific business relationships.[7]  Finally, and in all events, here too, plaintiff's claim comes too late.  Again, the FCC's initial motion for summary judgment in this case relied on the existence of unique zip codes as a basis for resisting disclosure under Exemption 4.  Plaintiff could have and should have raised any opposition to the FCC's claim, including any claim that the competitive concerns raised by the agency could be addressed through redaction, in its opposition to the FCC's motion.  Indeed, in that opposition, plaintiff did argue for redaction in certain circumstances,[8] and it subsequently claimed that redaction of *other* information would address *other* competitive concerns associated with the disclosure of data reported in Part V of Form 477.[9]  Plaintiff's failure to present its claim for redaction of unique zip code data on a timely basis is fatal to its effort to raise that claim now.[10]

## CONCLUSION

The Court should deny the Motion.

---

[7] *See* FCC Opposition to Plaintiff's Motion to Amend or Alter Judgment at 9-10 [Dkt. 48] ("FCC Opp.").

[8] *See* Pl's Mem. in Supp. of Cross-Mot. for Summ. J. & in Opp'n. to FCC Mot. for Summ. J. at 10-12 [Dkt. 32].

[9] *See* Pl's Reply in Supp. of Cross-Mot. for Summ. J. at 3-4 [Dkt. 41].

[10] *See*, *e.g.*, *Piper v. Department of Justice*, 312 F. Supp. 2d 17, 21 (D.D.C. 2003) ("Rule 59(e) motions are not granted if the court suspects the losing party is using the motion as an instrumentality [for] . . . asserting new arguments that could have been raised prior to final judgment"); FCC Opp. at 8-9.

Respectfully submitted,

/s/ Colin S. Stretch

Gary L. Phillips (D.C. Bar No. 334037)
AT&T INC.
1120 20th Street, N.W.
Washington, D.C. 20036
*Counsel for AT&T Inc.*

Michael E. Glover
Edward Shakin (D.C. Bar No. 450495)
William H. Johnson (D.C. Bar No. 481876)
VERIZON
1515 North Courthouse Road, Suite 500
Arlington, Virginia 22201
(703) 351-3099
*Counsel for Verizon*

September 25, 2007

_____
Colin S. Stretch (D.C. Bar No. 470193)
Lindsay A. Kelly (D.C. Bar No. 502770)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
*Counsel for AT&T Inc., Verizon, and the
  United States Telecom Association*

Jonathan Banks
UNITED STATES TELECOM ASSOCIATION
607 14th Street, N.W., Suite 400
Washington, D.C. 20005-2164
(202) 326-7300
*Counsel for United States Telecom
  Association*